**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **CTD NETWORKS LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **MICROSOFT CORPORATION**, <br><br> Defendant. | No. 6:22-cv-01049-XR |

**MICROSOFT CORPORATION'S MOTION FOR**
**SANCTIONS AGAINST RAMEY LLP**

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................................ 1

**STATEMENT OF FACTS** ................................................................................................. 2

    I.   CTD Files a Deficient Complaint ............................................................................ 2
    II.  Plaintiff's Law Firm: Ramey LLP ........................................................................... 5

**ARGUMENT** ........................................................................................................................ 7

    I.    Legal Standards ....................................................................................................... 8
    II.   CTD's Counsel Filed an Amended Complaint It Knew was Meritless .................... 9
    III.  CTD's Counsel Displayed a Reckless Disregard of The Duty to Investigate ... 11
    IV.  CTD is Likely Judgment-Proof ............................................................................. 13

**CONCLUSION** ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Browning v. Kramer*,
  931 F.2d 340 (5th Cir. 1991) .................................................................................................8

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ...............................................................................................................9

*Edwards v. Gen. Motors Corp.*,
  153 F.3d 242 (5th Cir. 1998) .........................................................................................8, 9, 10

*Emed Techs. Corp. v. Repro-Med Sys., Inc.*,
  2019 U.S. Dist. LEXIS 196994 (S.D.N.Y. Nov. 12, 2019) ....................................................7

*Escapex IP LLC v. Google LLC*,
  No. 22-cv-08711-VC, 2023 U.S. Dist. LEXIS 143626 (N.D. Cal. Aug. 16, 2023) ................6

*F.D.I.C. v. Calhoun*,
  34 F.3d 1291 (5th Cir. 1994) ..................................................................................................8

*F.D.I.C. v. Maxxam, Inc.*,
  523 F.3d 566 (5th Cir. 2008) ..................................................................................................9

*Greer v. Richardson Indep. Sch. Dist.*,
  471 Fed. Appx. 336 (5th Cir. 2012) ........................................................................................8

*Jenkins v. Methodist Hosps. of Dallas, Inc.*,
  478 F.3d 255 (5th Cir. 2007) ..................................................................................................9

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
  420 F.3d 1369 (Fed. Cir. 2005)...............................................................................................8

*Missed Call, LLC v. Freshworks, Inc.*,
  No. 1:22-CV-00739 (D. Del. June 6, 2022)............................................................................6

*Morrison v. Walker*,
  939 F.3d 633 (5th Cir. 2019) ............................................................................................8, 10

*NetSoc, LLC v. Chegg Inc.*,
  No. 18-CV-10262 (RA), 2020 U.S. Dist. LEXIS 232321 (S.D.N.Y. Dec. 10, 2020) ...............7

*NimitzTechs. LLC v. Cnet Media, Inc.*,
  No. 21-1247-CFC, 2022 U.S. Dist. LEXIS 215395 (D. Del. Nov. 30, 2022) .........................7

*Phonometrics, Inc. v. Westin Hotel Co.*,
    350 F.3d 1242 (Fed. Cir. 2003) ..................................................................................7

*Raylon LLC v. Complus Data Innovations*,
    700 F.3d 1361 (Fed. Cir. 2012) ..............................................................................9, 13

*Raylon LLC v. Complus Data Innovations Co.*,
    No. 6:09-CV-00355, 2015 WL 11121530 (E.D. Tex. May 4, 2015) ................................12, 13

*Travelers Ins. Co. v. St. Jude Hosp.*,
    38 F.3d 1414 (5th Cir. 1994) ..................................................................................8

*Traxcell Techs, LLC v. AT&T Corp. & AT&T Mobility LLC*,
    No. 2:17-CV-00718-RWS-RSP (E.D. Tex. Jan. 19, 2023) ...........................................6

*Traxcell Techs., LLC v. AT&T Corp.*,
    No. 2:17-CV-00718-RWS-RSP, 2022 U.S. Dist. LEXIS 56997 (E.D. Tex. Mar. 29, 2022)....6

*WPEM, Inc. v. SOTI Inc.*,
    No. 2:18-CV-00156-JRG, 2020 U.S. Dist. LEXIS 17449 (E.D. Tex. Feb. 4, 2020), *aff'd*,
    *WPEM, LLC v. SOTI Inc.*, 837 F. App'x 773 (Fed. Cir. 2020) ..................................7

*ZT IP, LLC v. VMware, Inc.*,
    No. 3:22-CV-0970-X, 2023 U.S. Dist. LEXIS 19165 (N.D. Tex. Feb. 6, 2023) ......................7

## STATUTES AND RULES

28 U.S.C. § 1927 ................................................................................................ passim

35 U.S.C. § 285 ...........................................................................................2, 13, 14

## MISCELLANEOUS

Federal Rule of Civil Procedure 11(b) ...................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................3

**INTRODUCTION**

In a co-pending motion, Microsoft explains why this case is exceptional, and why Plaintiff CTD Networks LLC ("CTD") should pay Microsoft its reasonable attorneys' fees incurred in moving to dismiss CTD's First Amended Complaint. Through this separate motion, Microsoft respectfully requests that the Court further order that CTD's counsel, Ramey LLP, be held jointly and severally liable under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11(b) for any fees awarded. While such sanctions should be used sparingly, they are necessary here given the specific facts of this case.

Put simply, Ramey LLP has built a business around filing frivolous patent lawsuits such as this one and then collecting nuisance-value settlements—settlements far less than the cost of reaching the merits. While Ramey LLP has only seven lawyers, it filed 222 patent cases in the last 10 months, with 162 of those cases directed at this judicial district. Of those 222 cases, 114 have already resolved, with an average case length of just 3.5 months. Cases do not resolve that quickly if the plaintiff is seeking more than a nuisance-value settlement. This case is typical—Mr. Ramey and CTD sought low-dollar-value settlements, which many defendants took. Mr. Ramey has also sued Microsoft nine times in the past two years. Microsoft takes this request for sanctions very seriously and files this motion only because it has become necessary to deter Ramey LLP from repeatedly filing baseless, nuisance-value suits against Microsoft and others.

Because Ramey LLP seeks quick, nuisance-value settlements for its clients, it need not worry about the merits. This has led district courts around the country to issue sanctions against Ramey LLP and its clients on multiple occasions. For example, a district court in California awarded sanctions against a Ramey LLP client and said Mr. Ramey was "lucky" that the defendant in that case did not ask the Court to impose sanctions on Mr. Ramey himself. A district court in

Delaware wrote that it has had "numerous concerns" about the cases Mr. Ramey handled. And at least six published decisions awarded fees against Ramey clients for pursuing claims that were objectively baseless. Again, this case is typical—for each case where this Court reached the merits, it issued an order of dismissal and is now considering fee awards.

Furthermore, because Mr. Ramey represents shell companies with little or no assets, he and his clients do not need to worry about such fee awards. During a hearing involving sanctions for other Ramey LLP clients, Mr. Ramey said that any money his clients receive (for example, through settlements) are paid out to litigation funders (the entities who provided funds to pursue to pursue the lawsuit) and to Ramey LLP, leaving nothing for the client itself. This means that even though CTD obtained some settlement money from other defendants, those funds are likely long gone. CTD's only assets are the asserted patents—which are effectively worthless because no company uses that technology and they expire in a month—along with other expired patents covering that same technology.

In sum, Mr. Ramey and CTD had no concern about maintaining this case because they knew there were no consequences in doing so. Even if Microsoft obtained fees, CTD could simply refuse to pay, or declare bankruptcy. Under such circumstances, applying the fee award against Ramey LLP is the only way to accomplish the deterrent effect that a fee award under 35 U.S.C. § 285 is supposed to provide, and both 28 U.S.C. § 1927 and Rule 11(b) provide legal support for such an award.

## STATEMENT OF FACTS

### I. CTD Files a Deficient Complaint

A full recitation of the facts surrounding Microsoft's motions to dismiss can be found in Microsoft's co-pending Motion for Attorneys' Fees. In brief, CTD appears to be a legal entity created solely to assert patents; it filed a certificate of formation with the Secretary of the State of

Delaware on July 25, 2022, and then filed this patent infringement lawsuit a little over two months later, on October 6, 2022. Huang Decl.,[1] Ex. A; Dkt. 1 ("Original Complaint").

CTD's Original Complaint contained a number of flawed legal theories, which Microsoft moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Dkt. 13 ("First MTD"). During an April 10th hearing ("First MTD Hearing"), this Court explained that both CTD's Original Complaint and its proposed amendment were deficient at least because they failed to identify any single Microsoft product that allegedly practices all the limitations of an asserted claim. Huang Decl., Ex. C ("First Hearing Tr."), at 43:21-44:9. The Court directed CTD to "pick one product for your amended complaint and see if you can get around the deficiencies." *Id.* The Court also cautioned CTD that, "[t]o the extent that the amended complaint fails to cure the deficiencies identified in Defendant's motion to dismiss 13, the Court will entertain a motion for the reasonable expenses Defendant incurs in responding to the pleading, including reasonable attorneys' fees." Text Order Granting in Part and Denying in Part Docket 31 (Apr. 10, 2023).

On April 21, 2023, CTD filed a First Amended Complaint. Dkt. 39 (the "FAC"). The FAC, however, failed to fix the deficiencies Microsoft and the Court identified in the Original Complaint. Specifically, CTD maintained its "mix and match" theory of infringement, accusing at least ten different Microsoft software products of infringing but failing to allege that any single product alone or any set of programs when used in combination practiced all elements of any asserted patent claim. *See* Dkt. 40 ("Second MTD") at 6-13. While CTD added an allegation that three Microsoft products were sold together as an "integrated suite," CTD never explained how those products allegedly operated in combination to perform all the elements of any patent claim.

---

[1] "Huang Decl." refers to the Declaration of Henry Huang, filed in support of Microsoft's Motion for Attorneys' Fees.

3

*See id*. at 11-13.  CTD also still failed to address limitations of the '442 and '470 patents.  *Id*. at 13-14.  CTD also still failed to allege that Microsoft performed infringing acts under *Centillion*.  *Id*. at 14-18.  Finally, CTD added a single paragraph raising a claim of indirect infringement of the '442 Patent that lacked any recitation of relevant facts.  *Id*. at 18-20.

On April 25, 2023, Microsoft sent CTD a letter pointing out the deficiencies in the FAC.  Microsoft asked CTD to dismiss the FAC, and said that if it did so by May 2, 2023, Microsoft would not seek its costs or attorneys' fees in bringing a second motion to dismiss.  Huang Decl., Ex. B ("April Letter") at 3.  Other than acknowledging receipt, CTD never responded to Microsoft's letter.

On May 22, 2023, Microsoft filed the Second MTD, raising all of the above deficiencies.  CTD's opposition largely repeated arguments that the Court had already rejected.  *See* Dkt. 41.  CTD dedicated only a single sentence of its opposition to its new theory that Microsoft's products were "integrated," but it never explained how those products operated together to practice any asserted claim.  *Id*. at 5.  CTD also failed to address indirect infringement, instead discussing willful infringement.  *Id*. at 7-8.  CTD even referenced a patent that is not at issue in this case, and that does not appear to be owned by CTD.  *Id.* at 1 (discussing U.S. Patent No. 9,402,158).  CTD also requested leave to amend, though it never said what it would change in a new amended complaint.  *Id.* at 8.

On June 29, 2023, at the hearing on the Second MTD, the Court found that the FAC had the same deficiencies as the Original Complaint, and the Court stated that it was "leaning to granting all the motions to dismiss."  Huang Decl., Ex. D ("Second Hearing Tr.") at 16:3-12.  The Court reiterated that it would consider cost shifting related to "re-briefing of all these secondary motions to dismiss," and advised CTD to explore other options for resolving the case.  *Id.* at 16:13-

21 ("I caution you that if I do end up granting this motion to dismiss there could be cost shifting . . . . [Y]ou may want to consider your other options here in the interim."). CTD did not dismiss the case, and on August 22, 2023, the Court granted Microsoft's Second MTD, dismissing the case with prejudice. *See* Dkt. 44, 45. The dismissal order expressly granted leave to seek reasonable attorneys' fees. Dkt. 44 at 19-20.

II.    **Plaintiff's Law Firm: Ramey LLP**

Ramey LLP is a Texas law firm that lists as partners William P. Ramey III, Jeffrey E. Kubiak, and Daniel Krueger, along with four other attorneys who are listed as Counsel. Huang Decl., Ex. H. Despite having only seven total attorneys, Ramey LLP is one of the most prolific patent plaintiffs' firms in the United States, having appeared as counsel in 222 patent cases filed during the 10 months between the commencement and dismissal of this lawsuit. Huang Decl., Ex. F. Of those, 162 cases were filed in this judicial district. *Id*. Mr. Ramey has sued Microsoft nine times in the past two years. *Id.*, ¶ 10.

Ramey LLP represents non-practicing entities seeking nuisance-value settlements—settlements for values far less than the cost of reaching the merits. For example, of the 222 cases Ramey LLP filed in the past 10 months, 114 of those cases have already terminated, with an average case length of about three-and-half months. *Id.*, ¶ 9. In this case, Mr. Ramey asked Microsoft to pay a lump-sum settlement far less than the cost of defending a patent infringement lawsuit. *See* April Letter. Four other CTD cases (against AT&T, Inc., IBM Corp., Akamai Technologies, Inc., and Palo Alto Networks, Inc.) all settled quickly, prior to any meaningful litigation activity.[2] This suggests CTD sought and obtained nuisance-value settlements from these defendants as well.

---

[2] The AT&T case was dismissed by CTD prior to any filing responsive to the Complaint, following

5

Moreover, Mr. Ramey's demonstrated practice is to represent shell entities that have little or no assets other than the asserted patents. For example, during a hearing involving another Ramey LLP client, Mr. Ramey explained that any money received by his client is paid to litigation funders (the entities who provide funds to pursue the lawsuit), as well as to Ramey LLP, with nothing left for the client itself. *See Missed Call, LLC v. Freshworks, Inc.*, 1:22-cv-00739 (D. Del. June 6, 2022), Dkt. 34 at 17:16-18:5; *see also Traxcell Techs, LLC v. AT&T Corp. & AT&T Mobility LLC*, 2:17-cv-00718-RWS-RSP (E.D. Tex. Jan. 19, 2023), Dkt. 548 at 3, 9 (Ramey LLP representing that its client Traxcell would be rendered insolvent by posting a bond for a fee award pending appeal). This means the entities Mr. Ramey represents are effectively judgment-proof. In other words, any money they receive (for example, by way of settlements) is paid to third parties such as litigation funders and Ramey LLP, leaving nothing to satisfy any subsequent fee awards or sanctions awarded against such entities.[3]

Mr. Ramey and his clients have been the subject of multiple sanctions decisions issued by district courts around the country. *See, e.g.*, *Escapex IP LLC v. Google LLC*, No. 22-cv-08711-VC, 2023 U.S. Dist. LEXIS 143626 (N.D. Cal. Aug. 16, 2023) (awarding sanctions against Ramey client EscapeX and stating "[t]he attorneys for EscapeX are lucky that Google did not separately ask the Court to impose sanctions on them"); *Traxcell Techs., LLC v. AT&T Corp.*, No. 2:17-cv-

---

a stay for settlement purposes. *See* Dkts. 12 and 13 in 6:22-cv-01038. The IBM case was dismissed via stipulation shortly after the filing of an Answer. *See* Dkts. 26 and 27 in 6:22-cv-01044. The Akamai case was dismissed by CTD following a Notice of Settlement less than six weeks after the filing of a motion to dismiss. *See* Dkts. 18, 24, and 25 in 6:22-cv-01302. The Palo Alto Networks case was dismissed by CTD prior to any filing responsive to the Complaint, following a stay for settlement purposes. *See* Dkts. 10 and 11 in 6:22-cv-01304.

[3] Mr. Ramey himself will sometimes act as both funder and law firm, providing "non-recourse funding" for his clients. *See Missed Call*, Dkt. 34 at 18:14-19:22. CTD's Certificate of Interested Parties identified Ramey LLP as an entity "financially interested in the outcome of the case." Dkt. 4.

00718-RWS-RSP, 2022 U.S. Dist. LEXIS 56997, at *16 (E.D. Tex. Mar. 29, 2022) (awarding fees against Ramey client for "pursuit of objectively baseless infringement theories"); *ZT IP, LLC v. VMware, Inc.*, No. 3:22-CV-0970-X, 2023 U.S. Dist. LEXIS 19165, at *7 (N.D. Tex. Feb. 6, 2023) (finding Ramey client "had ample opportunities to recognize the frivolousness of its position"); *WPEM, Inc. v. SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 U.S. Dist. LEXIS 17449 (E.D. Tex. Feb. 4, 2020), *aff'd*, *WPEM, LLC v. SOTI Inc.*, 837 F. App'x 773 (Fed. Cir. 2020) (awarding fees against Ramey client based on the "frivolous nature of WPEM's infringement position . . . an issue that could have easily been foreseen with an adequate pre-suit investigation"); *NetSoc, LLC v. Chegg Inc.*, No. 18-CV-10262 (RA), 2020 U.S. Dist. LEXIS 232321, at *18 (S.D.N.Y. Dec. 10, 2020) (awarding fees against Ramey client based on "a considerable flaw in their filings"); *Emed Techs. Corp. v. Repro-Med Sys., Inc.*, 2019 U.S. Dist. LEXIS 196994, at *13 (S.D.N.Y. Nov. 12, 2019) (awarding fees against Ramey client for an infringement case that was "objectively unreasonable"); *NimitzTechs. LLC v. Cnet Media, Inc.*, No. 21-1247-CFC, 2022 U.S. Dist. LEXIS 215395, at *20 (D. Del. Nov. 30, 2022) ("I had numerous concerns with respect to the cases being handled by Messrs. Chong and Ramey.").

## ARGUMENT

Microsoft's concurrent fee motion explains why this case is exceptional, and why Microsoft's attorneys' fees are reasonable. In addition to the relief sought in that motion, by this separate motion, Microsoft respectfully requests that the Court hold plaintiff's counsel, Ramey LLP, jointly and severally liable under § 1927 and Rule 11(b) for any fee award. *See Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1247-48 (Fed. Cir. 2003) (affirming joint and several liability against plaintiff and plaintiff's counsel).

I.  **Legal Standards**

"Under 28 U.S.C. § 1927, an 'attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Greer v. Richardson Indep. Sch. Dist.*, 471 Fed. Appx. 336, 339 (5th Cir. 2012). Regional circuit law governs fee shifting under § 1927. *See e.g., MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1382 (Fed. Cir. 2005). Conduct is "unreasonable and vexatious" if there is evidence of the "persistent prosecution of a meritless claim" and of a "reckless disregard of the duty owed to the court." *Morrison v. Walker*, 939 F.3d 633, 637–38 (5th Cir. 2019) (citations omitted); *Greer*, 471 Fed. Appx. at 339 (attorney's conduct is considered unreasonable and vexatious where there is evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court) (citing *Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir. 1998)).

District courts have discretion to award fees against attorneys if they announce the sanctionable conduct giving rise to its order and make specific findings to permit effective appellate review of the validity and amount of fees. *Id.* (stating § 1927 rulings are reviewed for abuse of discretion); *see also FDIC v. Calhoun*, 34 F.3d 1291, 1300 (5th Cir. 1994) ("[C]ourt must make a separate determination on both the issue of the reasonableness of the claims and the purpose of the purpose for which suit was instituted.").

Awards under § 1927 are punitive in nature. *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991). Even though the statute should be construed so that it does not "dampen the legitimate zeal of an attorney in representing his client," *Greer*, 471 Fed. Appx. at 339 (citing *Travelers Ins. Co. v. St. Jude Hosp.*, 38 F.3d 1414, 1416 (5th Cir. 1994)), it is warranted when counsel conducts

litigation in an "irresponsible manner" leading to "multiple needless proceedings," *id.* at 340 (citations omitted).

Regarding Rule 11, the Supreme Court has stated that its "central purpose [] is to deter baseless filings . . . . Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact [and] legally tenable . . . ." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). This rule requires litigants to stop and think before making any legal or factual contention. *Raylon LLC v. Complus Data Innovations*, 700 F.3d 1361, 1366-67 (Fed. Cir. 2012); *see also Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 265 (5th Cir. 2007). In the Fifth Circuit, the rule follows an objective standard. *Raylon*, 700 F.3d at 1366-67 (citing *FDIC v. Maxxam*, 523 F.3d 566, 580 (5th Cir. 2012)). The rule can also be imposed on pleadings brought for an improper purpose such as causing unnecessary delay or needless increase in the cost of litigation, even if they have some merit. *Maxxam*, 523 F.3d at 577.

## II. CTD's Counsel Filed an Amended Complaint It Knew was Meritless

An attorney that willfully continues a lawsuit that they know to be meritless acts in bad faith under 28 U.S.C. § 1927. *Edwards*, 153 F.3d at 247. Likewise, sustaining litigation where no reasonable litigant could expect success is sanctionable under Rule 11. *Raylon*, 700 F.3d at 1371. Here, following the First MTD Hearing, CTD's counsel knew or should have known that CTD could not support its claim for patent infringement.

During the First MTD Hearing, this Court clearly instructed CTD and its lawyers to "**pick one product** for your amended complaint and see if you can get around the deficiencies." Huang Decl., Ex. C at 43:21-44:9 (emphasis added). CTD and its counsel did not pick "one product," they picked ten. *See* Dkt. 39-1. While CTD and its counsel added an allegation that three

9

Microsoft products were sold together as an "integrated suite" (namely Microsoft Sentinel, Microsoft 365 Defender, and Microsoft Defender for Cloud), this supposedly "integrated suite" only covered three of the ten products CTD accused of infringing, and even those three products did not cover all the claim limitations—CTD still needed other, unrelated products to fill out its infringement claim chart. *See id*.

CTD and its counsel also made no effort to support direct infringement theories against Microsoft. Specifically, while CTD asserted only direct infringement for three of the four asserted patents, it never identified any purported act of direct infringement that Microsoft itself performed (such as making, using, selling, or importing the infringing system). *See* FAC ¶¶ 20, 29, 36, 43. CTD and its counsel also made no effort to support an indirect infringement theory; the FAC never identified any actual act of indirect infringement. *See id.* ¶ 24. Indeed, during the briefing on Microsoft's Second MTD, CTD never even addressed indirect infringement. Instead, CTD addressed willful infringement—a different legal doctrine. Second MTD at 7-8. CTD and its counsel also ignored the Court's clear guidance not to include willful infringement in the FAC, and to avoid broad accusations using language such as "by way of example and without limitation." Dkt. 44 ("Dismissal Order") at 5-6.

CTD and its counsel knew of all these deficiencies when filing the FAC, since they were all raised in the First MTD and discussed in the First MTD Hearing. But if there were any doubt about knowledge, Microsoft sent CTD's counsel a letter pointing out the deficiencies in the FAC shortly after it was filed. Microsoft asked CTD's counsel to dismiss the FAC, and said that if it did so by May 2, 2023, Microsoft would not seek its costs or attorneys' fees in bringing a second motion to dismiss. April Letter at 3. CTD and its attorneys never responded to Microsoft's letter. Accordingly, CTD and its counsel knew, and certainly should have known, that the FAC had no

hope of succeeding on the merits. Much like the plaintiff's counsel in *Edwards,* CTD's counsel "knew that [it] had no case as a matter of fact," but "kept [the suit] alive, hoping to extort a nuisance-value settlement." 153 F.3d at 246-47.

**III.     CTD's Counsel Displayed a Reckless Disregard of The Duty to Investigate**

An attorney acts with "reckless disregard" of his duty to investigate when that attorney advances a baseless claim despite clear evidence undermining their factual contentions. *Morrison*, 939 F.3d at 638. Here, that failure to investigate is reflected in CTD's failure to plead even the most basic facts required for patent infringement, and in a clear lack of understanding of Microsoft's software products.

Both the Original Complaint and the FAC rely on mixing and matching distinct Microsoft software products to assert infringement. For example, focusing on the asserted '470 patent, the Original Complaint relied on portions of 10 different Microsoft software applications, without alleging that any single application met every limitation of the asserted claim:

| Claim | MDE | MDI | ADP | Sentinel | MDC | MDC Apps | DVM | AA | Defender SS | ISG |
|---|---|---|---|---|---|---|---|---|---|---|
| 1a | x | | | | x | | | | | |
| 1b | x | x | | | | | | | | |
| 1c | x | x | x | x | x | | | | | |
| 1d | | x | x | x | x | | | | | |
| 1e | | x | x | x | | | | | | |
| 1f | x | x | | | | | | | | |
| 1g | | | | | | x[4] | x | | | |
| 1h | | | | | | x | x | x | | |
| 1i | | | | | | x | | | x | |
| 1j | x | | | | | | | | x | x |

---

[4] For '470 patent limitations 1g, 1h, and 1i, CTD's claim charts refer to Defender for Cloud, but the cited screenshots discuss Defender for Cloud Apps, which is a different product.

(Dkt. 1-1, Ex. G).[5] In the FAC, even though the Court told CTD to focus on a single accused product, CTD merely changed its list of 10 accused products:

| Claim | MD 365 | MDE | MDI | Sentinel | MDC | MDC Apps | MD Anti-virus | MD VM | MD SS | ISG |
|---|---|---|---|---|---|---|---|---|---|---|
| 1a | x | x | | x | x | | | | | |
| 1b | x | x | x | | | | | | | |
| 1c | | x | x | x | x | | | | | |
| 1d | | | x | x | x | | | | | |
| 1e | | | x | x | | | | | | |
| 1f | | x | | | | | | | | |
| 1g | | | | | | x[6] | | x | | |
| 1h | | | | | | x | | x | | |
| 1i | | | | | | x | | | | |
| 1j | | | | | | | x | | x | x |

(Dkt. 39-1, Ex. G).[7] Again, no single product was alleged to meet every limitation.

CTD brought these deficient infringement allegations in spite of clear descriptions of the accused products in public documents available on Microsoft's website. In fact, both of Microsoft's motions to dismiss relied on CTD's own cited evidence to show that CTD was mixing and matching multiple unrelated products to make its infringement allegations. *See* First MTD at 11; Second MTD at 12. Had CTD's counsel performed even a minimum amount of pre-suit investigation and diligence, and had counsel listened to the guidance it received from this Court

---

[5] MDE = Microsoft Defender for Endpoint; MDI = Microsoft Defender for Identity; ADP = Azure DDOS Protection; MDC = Microsoft Defender for Cloud; DVM = Defender Vulnerability Management; AA = Azure Attestation; Defender SS = Defender Smart Screen; ISG = Intelligent Security Graph.

[6] For '470 patent limitations 1g, 1h, and 1i, CTD's claim charts refer to Defender for Cloud, but the cited screenshots discuss Defender for Cloud Apps, which is a different product.

[7] MD365 = Microsoft 365 Defender; MDE = Microsoft Defender for Endpoint; MDI = Microsoft Defender for Identity; MDC = Microsoft Defender for Cloud; MDC Apps = Microsoft Defender for Cloud Apps; MD Antivirus = Microsoft Defender Antivirus; Azure DDOS = Azure DDoS Protection; MDVM = Microsoft Defender Vulnerability Management; MDSS = Microsoft Defender SmartScreen; ISG = Intelligent Security Graph.

during the First MTD Hearing, and from Microsoft in its Rule 11 letter, counsel would have seen that it was not presenting a coherent infringement theory.

## IV. CTD is Likely Judgment-Proof

Sanctions against an attorney are important in situations where the plaintiff is likely judgment-proof and proceeds to file baseless pleadings with no fear of sanctions. For example, in *Raylon LLC v. Complus Data Innovations Co.*, 6:09-cv-00355, 2015 WL 11121530 (E.D. Tex. May 4, 2015), the plaintiff sued multiple defendants over patent infringement, relying on a particular construction of the patent claims that was objectively unreasonable. *Id.* at *1. The defendants sought sanctions under 35 U.S.C. § 285, 28 U.S.C. § 1927, and Rule 11(b). On a remand from the Federal Circuit, reversing an initial denial of sanctions, the district court was left with assessing sanctions under Rule 11 and 35 U.S.C. § 285.[8] *Id.* at *2. However, by then, "Defendants abandoned their § 285 claims against Raylon because Raylon was insolvent." *Id.*

Raylon conducted a patent assertion campaign that netted its counsel a profit of around $300,921.25, obtained from settlements. *Id.* at *6. The lawsuits that originated those settlements "were based on the same frivolous infringement theories." *Id.* at *7. The district court reasoned that, "at minimum, Raylon's counsel should not be permitted to profit from their pursuit of frivolous claims. Any sanction that would allow Raylon's counsel to walk away in a better financial position than when they started risks encouraging others to file baseless lawsuits." *Id.* The sanctions awarded by that court was a disgorgement of profits plus a 50% penalty, totaling about $450,000. *Id.*

---

[8] The Federal Circuit did not review the denial of sanctions under § 1927 noting that it "implicates a higher level of culpability than Rule 11." *Id.* at *2 n.3.

While Microsoft seeks attorneys' fees instead of disgorgement, the same facts supporting the fee award in *Raylon* are present here. Ramey LLP initiated a patent assertion campaign against multiple parties with the purpose of extracting nuisance value settlement amounts. Moreover, following the First Hearing, CTD and its counsel knew CTD's legal theories were objectively unreasonable, but decided to pursue those claims anyway. Based on Mr. Ramey's representations in other cases, it is reasonable to conclude that CTD has no assets other than the patents themselves, which are effectively worthless since no company uses that technology and since they are either expired or expire in a month. That is likely why Mr. Ramey and his client had no concerns about refusing to dismiss the case despite the Court's warning—because there were no consequences in pursuing it. In this particular case, applying the fee award to Ramey LLP is the only way to accomplish the deterrent function that a fee award under § 285 is meant to provide.

## CONCLUSION

For these reasons, Microsoft respectfully requests this Court hold plaintiff's counsel, Ramey LLP, jointly and severally liable for the fees incurred in preparing and presenting the Second MTD and the fee motion filed concurrently.

Dated: September 19, 2023

Respectfully submitted,

*/s/ Jonathan Lamberson*
Jonathan J. Lamberson
Henry Huang
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306
Tel: (650) 213-0300
Fax: (650) 213-8158
lamberson@whitecase.com
henry.huang@whitecase.com

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

*Attorneys for Defendant Microsoft Corporation*

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 19, 2023, the foregoing was filed with the Clerk of Court via the Court's CM/ECF system, which will send notification of such filing to all counsel of record, all of whom have consented to electronic service in this action.

*/s/ Henry Huang*
Henry Huang
