# EXHIBIT C

EXHIBIT C

1

```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE WESTERN DISTRICT OF TEXAS
                            SAN ANTONIO DIVISION


CTD NETWORKS, LLC,                  .

            PLAINTIFF,              .

        vs.                         . DOCKET NO. 6:22-CV-1034-XR
                                    .
AMAZON.COM, INC.,                   .
                                    .
            DEFENDANT.              .
                                    .
                                    .
CTD NETWORKS, LLC,                  .
                                    .
            PLAINTIFF,              .

        vs.                         . DOCKET NO. 6:22-CV-1039-XR
                                    .
CISCO SYSTEMS, INC.,                .
                                    .
            DEFENDANT.              .
                                    .
                                    .
CTD NETWORKS, LLC,                  .
                                    .
            PLAINTIFF,              .

        vs.                         . DOCKET NO. 6:22-CV-1042-XR
                                    .
GOOGLE, LLC,                        .
                                    .
            DEFENDANT,              .
                                    .
                                    .
CTD NETWORKS, LLC,                  .
                                    .
            PLAINTIFF,              .
                                    .
        vs.                         . DOCKET NO. 6:22-CV-1049-XR
                                    .
MICROSOFT CORPORATION,              .
                                    .
            DEFENDANT.              .
```

```
 1
 2              TRANSCRIPT OF MOTION HEARING PROCEEDINGS
                BEFORE THE HONORABLE XAVIER RODRIGUEZ
 3                  UNITED STATES DISTRICT JUDGE
                          APRIL 10, 2023
 4
 5   APPEARANCES:
     FOR THE PLAINTIFF:       KYRIL VLADIMIR TALANOV, ESQUIRE
 6                            RAMEY LLP
                              5020 MONTROSE BOULEVARD
 7                            SUITE 800
                              HOUSTON TX 77006
 8
     FOR THE DEFENDANT:       NEIL G. ANDERSON, ESQUIRE
 9   AMAZON.COM, INC.         HUESTON HENNIGAN LLP
                              620 NEWPORT CENTER DRIVE
10                            SUITE 1300
                              NEWPORT BEACH CA 92660
11
12   CISCO SYSTEMS INC.       CHAOXUAN CHARLES LIU, ESQUIRE
                              WINSTON & STRAWN/CHICAGO
13                            1900 NORTH PEARL STREET
                              SUITE 1500
14                            DALLAS TX 75201
15                            CHAD B. WALKER, ESQUIRE
                              WINSTON & STRAWN LLP
16                            2121 N. PEARL STREET
                              SUITE 900
17                            DALLAS TX 75201
18
19   GOOGLE, LLC              ERICA BENITES GIESE, ESQUIRE
                              JACKSON WALKER, LLP
20                            112 E. PECAN STREET
                              SUITE 2400
21                            SAN ANTONIO TX 78205
22
23
24
25
```

```
 1

 2                                ADAM W. KWON, ESQUIRE
                                  ZACHARY M. BRIERS, ESQUIRE
 3                                MUNGER, TOLLES & OLSON LLP
                                  350 SOUTH GRAND AVENUE
 4                                50TH FLOOR
                                  LOS ANGELES CA 90071
 5

 6  MICROSOFT CORPORATION  JONATHAN J. LAMBERSON, ESQUIRE
                                  WHITE & CASE LLP
 7                                3000 EL CAMINO REAL, TWO PALO ALTO SQ.
                                  SUITE 900
 8                                PALO ALTO CA 94306

 9                                JAMES TRAVIS UNDERWOOD, ESQUIRE
                                  GILLAM & SMITH
10                                102 N. COLLEGE
                                  SUITE 800
11                                TYLER TX 75702

12

13

14

15  REPORTED BY:          GIGI SIMCOX, RMR, CRR
                                  OFFICIAL COURT REPORTER
16                                UNITED STATES DISTRICT COURT
                                  SAN ANTONIO, TEXAS
17

18

19

20

21

22

23

24

25
```

1       (*San Antonio, Texas; April 10, 2023, at 10:30 a.m., in*
2  *open court.*)
3          THE COURT:  22 civil 1034, CTD Networks versus Amazon
4  and then other related cases.
5          How are we going to do this?  Are we going to do one
6  at a time, or is someone going to argue on behalf of
7  everybody, or what's the plan?
8          MR. ANDERSON:  Your Honor, it's my belief that Amazon
9  would proceed first and then there would probably be some
10  follow-on argument by the other parties.
11          THE COURT:  That's fine.
12          So then 22 civil 1034, who do we have for the
13  plaintiffs?
14          MR. TALANOV:  Good morning, Your Honor, Kyril Talanov
15  with Ramey LLP here on behalf of plaintiff CTD Networks.
16          THE COURT:  Thank you.
17          And for Amazon.
18          MR. ANDERSON:  Neil Anderson on behalf of Amazon.
19          THE COURT:  Thank you.
20          So we have two pending motions.  We have Amazon's
21  motion to dismiss for failure to state a claim.  We have
22  plaintiff's motion for leave to amend complaint.
23          I guess I should start off with the plaintiff's
24  motion for leave to amend the complaint.  It's opposed.  The
25  problems I guess I have with your motion for leave to amend

1    complaint is I don't know how it fixes anything.

2           Counsel, do you want to address that?

3           MR. TALANOV:  Yes, Your Honor, if I may.  Once again,

4    Kyril Talanov on behalf of plaintiff.

5           As sort of preluded in the motion itself, essentially

6    the complaint provides amended claim charge that provide

7    further evidence to add additional detail to support the facts

8    that defendant Amazon complains is missing in its motion to

9    dismiss.

10          And specifically, Your Honor, there are three points

11    I believe that all defendants made.  I will —— we'll obviously

12    start with Amazon.  But essentially the number one, first and

13    foremost complaint was that CTD's complaint named multiple

14    products and did not point a specific single product, or in

15    the alternative explain that multiple defendant's products

16    work together in an integrated fashion as a whole, thereby

17    providing benefit to the defendant as required under the

18    *Centillion-Grecia* litany of cases.

19          Number two, Your Honor, I believe was a complaint

20    that certain elements of the claims were not charted.

21    Evidence was not provided.  I believe that was addressed as

22    well.

23          And number three, I believe all defendants also made

24    an argument that defendants merely provide software;

25    therefore, they cannot implement the entire system as a whole,

1  put it into use, and therefore obtain benefit from each and

2  every element.

3          Defendants argue that their software is simply one

4  component.  They don't provide hardware.  It's the end

5  customer that has to download and put this antivirus or

6  defense software into use, and therefore, defendants argue

7  that they cannot possibly directly infringe.

8          And Your Honor, we believe that the amended

9  complaints, the proposed amended complaints for the motion to

10 leave address each one of these three points and I'm happy to

11 elaborate on each one of them.

12         THE COURT:  So let me hear from the defendant.

13         MR. ANDERSON:  Yes, Your Honor, if I may.

14         THE COURT:  Yes.

15         MR. ANDERSON:  Yes, I would like to discuss Amazon's

16 motion to dismiss along with this countermotion.

17         I believe CTD's counsel has mischaracterized at least

18 Amazon's argument.  In Amazon's case CTD -- Amazon's primary

19 complaint with respect to the infringement contention charts

20 was that actually no product was identified as the accused

21 product.

22         So this amendment we see here, we believe it confirms

23 that Amazon's motion to dismiss should be granted.  We believe

24 it should be also granted with prejudice.  There's really no

25 valid justification that exists for this proposed amendment,

1 and I want to make clear this isn't a situation in which some
2 information was provided with respect to how Amazon
3 purportedly infringed in the original complaints.
4       This is a case where an entirely new infringement
5 theory has been brought, unfortunately, for the first time
6 this last Friday. These new claim charts bear absolutely no
7 resemblance to the claim charts that were provided with the
8 original complaint, or the first-amended complaint, or the
9 infringement contentions that CTD served in early January.
10       So this is really a completely new infringement case
11 that accuses a product for the first time. CTD has had six
12 months plus in order to -- six months plus of opportunities in
13 order to amend its complaint in order to identify a product
14 and we believe this motion to amend is untimely and
15 unjustified in this situation.
16       THE COURT: So Mr. Talanov, I mean, I'm looking at
17 your proposed amended complaint. I'm looking at paragraph 18,
18 the accused instrumentalities or the accused products, and you
19 already start off with a problem. You go "by way of example
20 and without limitation." I mean, how is a defendant supposed
21 to know which product is infringing with a phrase like that?
22       MR. TALANOV: Forgive me, Your Honor. Perhaps that
23 language was -- should have been corrected; however, the
24 complaint specifically points to the charts for the underlying
25 evidence.

1      THE COURT:  Well, but let me stop you here.  What is

2  the accused product?  You say in your proposed amended

3  complaint it's the Amazon Cloud Security System.  Is that a

4  product, or what is that?

5      MR. TALANOV:  Your Honor, the accused product or

6  system in this case is Amazon CloudWatch and that name appears

7  up front on the first page of the appended infringement charge

8  which are incorporated by reference in the complaints.

9      THE COURT:  Well, that's what I'm trying to get at,

10  is like, I can't figure out what exact product you're

11  complaining about.  So Amazon offers a lot of things, and so

12  if you look at those websites that you've prompted us to it

13  talks about Cognito, Guard Duty, AWS Identity and Management,

14  Key Management Service, WAF.

15      So what is the exact product you're complaining of?

16      MR. TALANOV:  Your Honor, the exact accused product

17  is Amazon CloudWatch and Amazon itself describes it as a

18  unified security agent and we have provided specific evidence

19  of that in the claim chart.  I'm happy to walk the Court

20  through that, but again, just to rebut what opposing counsel

21  has just argued, this specifically points to one product.

22      I believe counsel argued that plaintiff has not

23  identified a single product.  In this case, it is a single

24  product or system, if you may, that Amazon itself calls a

25  unified agent for implementing this distributed security

1 system in a computer network.

2       And Your Honor, we apologize —

3       THE COURT:  Go ahead.

4       MR. TALANOV:  We apologize if perhaps the language of

5 that statement that Your Honor points to in the complaint,

6 it — we're happy to revise it to state specifically that

7 we're accusing Amazon CloudWatch, but Your Honor, our belief

8 was that by pointing specifically to the claim charts that say

9 at the very top that the product, the one and only product or

10 system that's being accused is the Amazon CloudWatch and its

11 components that all work together as a whole, is what is being

12 accused.

13       THE COURT:  So I'm looking at your various exhibits

14 that you have to the proposed amended complaint and you talk

15 about Key Management Service, WAF, Regions and Availability

16 Zones.  If I give you leave to amend the complaint, what I'm

17 expecting to see is just an allegation against CloudWatch and

18 a new claim chart, but not all this — this practical guide.

19       I mean, if I understand this right the practical

20 guide is not even an Amazon practical guide.  So I don't even

21 know what that's doing, other than taking up pages?

22       MR. TALANOV:  Yes, Your Honor.

23       If plaintiff is granted leave to amend, we will

24 correct the language in the complaint itself to specifically

25 point to the one product being accused in this case which is

1  Amazon CloudWatch and we will carefully make sure that only
2  Amazon evidence is pointed to.
3      THE COURT:  So how are you going to be prejudiced at
4  this stage of the litigation with me just granting leave to
5  amend a complaint that just references an allegation against
6  CloudWatch?
7      MR. ANDERSON:  Well, Your Honor, CTD has had six
8  months' opportunity to amend its complaint to accuse a
9  product.  Amazon has essentially had to litigate for six
10 months against a black box.  Amazon was required to bring —
11 essentially its hands were tied.
12     It was required to bring the instant motion to
13 dismiss and CTD had many opportunities to during briefing.
14 You know, CTD obviously opposed Amazon's motion and then on
15 the eve of this hearing which had been scheduled for a month
16 CTD makes this move to seek to amend.
17     Amazon would seek attorney fees and costs related to
18 its expenses in conjunction with bringing its motion to
19 dismiss.
20     THE COURT:  So I was going to say, I mean, why isn't
21 that cured by me not granting that right now but at an
22 appropriate time in this litigation engaging in cost shifting
23 for whatever expenses were incurred as a result of this motion
24 to dismiss?  Doesn't that cure any prejudice?
25     MR. ANDERSON:  I believe that addresses the majority

1 of the prejudice.

2          Nevertheless, we believe that any dismissal here

3 should be with prejudice for the simple reason that CTD has

4 not been diligent.  There's no real logical or valid

5 explanation for its actions here, and also because we believe

6 CTD's proposed amendment would be futile for some of the same

7 reasons that Amazon has already briefed in its briefing with

8 respect to the first-amended complaint.

9          THE COURT:  Well, the futility, though, if he's just

10 going to bring now a claim against CloudWatch, I mean, at this

11 point I'm expecting to see — we won't have the problems with

12 integrated — the failure to establish elements for each of

13 the integrated products because we're not going to have

14 products, plural, we're just going to have one product being

15 alleged to infringe.

16          So how is there futility there?

17          MR. ANDERSON:  Well, Your Honor, if I could share

18 some slides here.  Many of the same arguments that Amazon

19 advanced in its motion to dismiss —

20          THE COURT:  Okay.  Well, now, I grant to you the

21 willfulness.  So those other two points, yes, but I guess I

22 was focusing just on the direct infringement.

23          MR. ANDERSON:  Yes, Your Honor.

24          As Amazon made clear in its briefing, CTD's patent

25 claims require agents or distributed agents that perform the

 1  specific security functions that are recited in each of the
 2  claims.
 3          Here — excuse me, I'll skip forward.
 4          Here, for the first time, CTD has identified an agent
 5  which it identifies as the CloudWatch agent, but then in
 6  various claim limitations that agent seems to disappear from
 7  their contentions in their claim charts.  All of a sudden, we
 8  are talking about Amazon CloudWatch as a service as a whole,
 9  as opposed to an actual agent that's distributed on individual
10  computers in a network.
11          In addition, many of the claim limitations — much of
12  the evidence that they provide in support of claim limitations
13  really provides no evidence of infringement of that specific
14  claim limitation.
15          For example, this limitation here, Limitation 1H of
16  the '442 patent describes agents that schedule associated
17  individual computers for different antiviral software updates
18  based on different levels of probabilities of an intrusion or
19  attack.
20          Nothing in this claim chart mentions or describes an
21  antivirus update.  And more than that, aside from the fact
22  that they don't talk about antivirus updates anywhere in this
23  claim chart, the automated actions that they point to as
24  purported evidence clearly are scheduled not by an agent, an
25  agent on individual computers, but by the users of the

1 software.  So there still are these problems of futility of

2 their amendment, Your Honor.

3       In addition, the *Centillion* case provides an

4 additional argument.  CTD really has not pled anything in

5 their amended complaint or claim charts to describe how Amazon

6 purportedly uses the system.

7       Use of a system for purposes of infringement under

8 *Centillion* requires that a party must put the invention into

9 service.  It must control the system as a whole and obtain

10 benefit from it and there's nothing in the complaint

11 describing that.

12       Also making a system under *Centillion* requires that

13 Amazon would need to put all of the components, including the

14 individual computers in the network into service, and there's

15 no contention that Amazon performs that limitation either.

16       So there still are these issues of futility.

17       Your Honor addressed willfulness and presuit damages.

18 We believe that CTD's second-amended complaint clearly shows

19 that those issues should be dismissed with prejudice.

20       I don't know if Your Honor has any further questions

21 with respect to that.

22       THE COURT:  No.  Thank you, Mr. Anderson.

23       Go ahead.

24       MR. ANDERSON:  I was just going to say, so regarding

25 timing, CTD's motion has requested kind of an indefinite stay

1  of the litigation.  We believe that, you know, that this brand

2  new infringement theory that's been disclosed for the first

3  time does require providing Amazon some additional time in

4  order to evaluate the case.

5  Amazon would propose an extension of discovery

6  deadlines here for approximately three months to allow Amazon

7  to evaluate the new case that CTD is bringing or attempting to

8  bring, and also for the parties adequately to brief whether

9  CTD should even be granted leave to bring this amendment.

10  THE COURT:  Thank you.

11  So let's go back to Mr. Talanov.

12  This proposed amended complaint that I may allow you

13  to do, why should the willfulness and the presuit be dismissed

14  without prejudice?

15  MR. TALANOV:  Your Honor, if I may, so we will

16  stipulate to — I believe the way we have seen this done in

17  other courts in this district is we may — plaintiffs

18  sometimes are given the opportunity to replead if discovery

19  allows facts to support presuit knowledge.

20  Your Honor, we will agree to dismiss allegations of

21  willfulness at this point and reserve the right to replead

22  them should discovery show presuit knowledge if Your Honor

23  permits.

24  THE COURT:  Yeah.  Thank you.

25  So here's the rulings on the Amazon case.  The motion

1   to dismiss for failure to state a claim is granted in part,
2   denied in part.  That's Docket Number 14.  The willfulness and
3   presuit is dismissed without prejudice.
4          Otherwise, Amazon's motion to dismiss is also mooted
5   in light of the fact that I'm granting leave to amend
6   complaint, but that leave to amend complaint is granted with
7   the following conditions.
8          We're only going to have an amended complaint against
9   CloudWatch, and the practical guide is going to not be
10  included in any amended complaint.  And we're going to need —
11  so Mr. Talanov, they have identified for you all the specifics
12  of what you're going to see for the next round of a motion to
13  dismiss, and so you best be prepared to address those round
14  two.
15         Otherwise, I'll take up this whole thing about the
16  scheduling order once I take care of all four.
17         MR. ANDERSON:  And just a point of clarification,
18  Your Honor.  Is the court suggesting that CTD should revise
19  its second-amended complaint and withdraw its current motion
20  so that we don't have to respond to two separate motions to
21  amend?
22         THE COURT:  I'm not sure I follow you.
23         MR. ANDERSON:  Is the court instructing CTD to revise
24  its motion to seek a second-amended complaint?
25         THE COURT:  Yeah.  So they are granted leave to file

1   an amended complaint but it's with conditions.  So the

2   conditions is the amended complaint is only going to allege

3   allegations against CloudWatch.  We're not going to see all

4   this vagueness and generality we saw on the first-amended

5   complaint.  So that's the ruling on that.

6           MR. ANDERSON:  Understood.  Thank you, Your Honor.

7           THE COURT:  Okay.  22-1039, CTD versus Cisco.

8           We still have Mr. Talanov.

9           And who do we have for Cisco?

10          MR. LIU:  Your Honor, Charles Liu for Cisco.

11          THE COURT:  Thank you.

12          So we have here Cisco's motion for judgment on the

13  pleadings and plaintiff's motion for leave to file an amended

14  complaint.

15          Let's start, I guess, with the amended complaint.

16          We have the same problems here, Mr. Talanov.  How do

17  you suggest you're going to try to cure something on an

18  amended complaint?

19          MR. TALANOV:  Yes, Your Honor.

20          So similarly to what we just discussed with respect

21  to Amazon, plaintiff's amended — proposed amended complaint,

22  and specifically the claim chart, points to one product or

23  system called Cisco Secure Workload, formerly known as

24  Tetration and Cisco's own documents in this case refer to it

25  as a unified platform, and that is the product or system that

1  we are specifically accusing or would like to seek leave to

2  accuse.

3         THE COURT:  Thank you.

4         So, yeah, that was the same problem though because

5  the current complaint says, again, "by way of example and

6  without limitation Cisco's Cloud Solution System," and then

7  your various exhibits reference Cloud Analytics, Security

8  Intelligence Operations, Secure Access by Duo, Umbrella,

9  ThousandEyes, and you also reference Tetration.

10         So if I grant you leave to amend complaint I'm only

11  going to see something on Secure Workload formerly Tetration,

12  is that what I'm hearing from you?

13         MR. TALANOV:  Yes, Your Honor.

14         THE COURT:  So Mr. Liu, why doesn't that take care of

15  things?

16         MR. LIU:  Your Honor, the amended allegations against

17  the Cisco Secure Workload would be futile because they still

18  do not plausibly allege that this product meet all the

19  elements of any patent claim that's asserted.

20         THE COURT:  So you know, what I'm expecting to see

21  this next go-around is him attempting to cure those

22  deficiencies, and if not, I'm going to shift costs related to

23  your motions in this case if I have to go that far.  Why

24  doesn't that cure any prejudice that your client might suffer?

25         MR. LIU:  Your Honor, I believe that would cure most

1    of the prejudice.

2            THE COURT:  Yeah.  So with regard to this case the

3    motion for judgment on the pleadings, Docket 24, is granted in

4    part, denied in part, mooted in part.

5            Plaintiff's motion for leave to file an amended

6    complaint, 38, is granted in part, denied in part.

7            I expect to see in an amended complaint just an

8    allegation against Secure Workload, formerly Tetration.  All

9    the other vague generalities and vague references to other

10   products of Cisco's is not going to be allowed.  And I'm

11   expecting the new claim charts to have specificity, and if

12   they fail the next go-around, then there will be cost shifting

13   for motions that are incurred.

14           Okay.

15           MR. LIU:  Your Honor, I would just seek some

16   clarification.  Similar to the Amazon case we believe the

17   schedule in the Cisco case would need to be expanded to allow

18   defendant's sufficient time to respond to this -- to the next

19   amended complaint.

20           THE COURT:  Yeah.  Thank you.

21           Oh, and by the way, the willfulness and presuit are

22   also dismissed without prejudice as to Cisco.

23           Let me take up the whole scheduling order after all

24   four.

25           MR. LIU:  Thank you.

1 THE COURT:  Thank you.

2 1042, Google.

3 Who do we have for Google?

4 MR. BRIERS:  Good morning, Your Honor, Zachary

5 Briers, and I'm joined by my colleague Adam Kwon who will be

6 arguing the futility point.  I would like to address the

7 prejudice point, Your Honor.

8 THE COURT:  Thank you.

9 Now, here we get a little more specificity,

10 Mr. Talanov.  At least there seems to be four identified

11 products:  Chronical; either I misspelled it or it's Simplify

12 Soar, S-O-A-R; Google Web Risk; and Google Cloud Armor.  Are

13 those the four that you are alleging or are you alleging

14 infringement by other Google products?

15 MR. TALANOV:  Your Honor, what we are accusing is the

16 single security suite.  Using Google's own words, it's a

17 security suite called Chronical Security Operations, and it

18 comprises of several components, including Chronical SIEM,

19 Chronical Soar, Threat Intelligence, and I believe the

20 components that Your Honor mentioned.

21 But the point here is that we're pointing to a single

22 system called the Chronical Security Operation.  So similar to

23 other cases we would like an opportunity to replead

24 specifically against this security suite system known as a

25 Chronical Security Operations.

1          THE COURT:  So Mr. Briers, why don't you help me

2  here?  Google has a lot of products.  Is that a product or is

3  this another conglomeration of various different products?

4          MR. BRIERS:  Plaintiff's initial allegations were an

5  amalgamation of different products to meet different elements

6  of the claim.

7          THE COURT:  So he's amending his complaint.  If I

8  understand him correctly, is he alleging a specific product or

9  is this still the same amalgamation problem?

10          MR. BRIERS:  The amended complaint itself still

11  identifies an amalgamation of products.  The claim chart

12  that's been attached to it, it seems, based on our review of

13  this over the weekend, that plaintiff is trying to identify

14  specifically Chronical.

15          So I believe that to be an amendment to their

16  infringement allegations where they are no longer alleging

17  that the three other products that are identified and still

18  identified in paragraph 18 of their complaint infringe but

19  instead they are pivoting to now argue that a single product,

20  Chronical, meets all of the elements of the asserted patent

21  claims.  That's my best reading of plaintiff's infringement

22  contentions.

23          MR. TALANOV:  Your Honor, may I just briefly?

24          THE COURT:  Go ahead.

25          MR. TALANOV:  Forgive me, Your Honor.  I just wanted

1   to clarify my previous statements.

2         So Page 1 of the, I guess, appended charts, it's the

3   same issue as with the other cases, the language of the

4   complaint itself needs to be cleaned up; however, the chart

5   itself points to this one specific suite.

6         I wouldn't call it —— whether it's a product or a

7   system, it's called Chronical Security Operations and it

8   includes three components, and this is, again, this is

9   Google's language out of their —— from their website.

10        It says, "Chronical Security Operations comprises

11   Chronical S-I-E-M, Chronical S-O-A-R, and Threat

12   Intelligence," so that is the system, Your Honor, the single

13   system that we would like to replead to accuse.

14        MR. BRIERS:  Just factually, Your Honor, that's not

15   correct.

16        Those three systems are —— true, they fall under a

17   business unit at Google and they are sometimes advised to

18   customers to use for various aspects of their business.

19        They are products that are sold individually that

20   individuals subscribe to individually.  They are individual

21   products.  So plaintiff can't identify, for example, Soar and

22   SIEM and piece them together in a way that they allege, one,

23   meets one element of the claim limitation, another one meets

24   another element of the claim limitation and argue that two or

25   multiple products somehow infringe.

1    It does appear that that's what plaintiff's trying to
2 do.
3    There are other reasons why plaintiff's proposed
4 amendments would be futile that my colleague will address.  I
5 wanted to address the prejudice point, which I know Your Honor
6 has been focused on because I think there are some specific
7 facts about our case that are different from the other cases.
8    THE COURT:  So I'm still trying to figure out which
9 product --
10    MR. BRIERS:  I understand.
11    THE COURT:  -- the plaintiff is arguing against.
12    So I understood Chronical.
13    Mr. Talanov, I'm not going to let you go with piecing
14 together different products though.  So pick a product and
15 tell me what product that is.
16    MR. TALANOV:  Your Honor, if I may just quote, again,
17 this is Google's language that we have included in our claim
18 chart if I may just read the sentence altogether.
19    It says, "Chronical Security Operations" -- which is
20 the product we are accusing -- "comprises Chronical SIEM,
21 Chronical Soar, and Threat Intelligence is a modern Cloud
22 native suite that enables security teams to detect,
23 investigate, and respond to cyber threats," et cetera, et
24 cetera.
25    So what we would like to -- the single product that

1  we are accusing is Chronical Security Operations.

2          THE COURT:  But so I think we are talking over each

3  other though.  You are going to want an amended complaint

4  saying Chronical Security Operations and then I'm fully

5  expecting that you're going to start throwing in products and

6  so I want to know what specific products you're going to

7  complain against in another amended complaint.

8          MR. TALANOV:  Well, Your Honor, I guess, if I may,

9  our position is that under *Centillion* this Chronical Security

10  Operations system which comprises obviously several

11  subcomponents or products, it worked together as a whole, as a

12  single system that Google put together into use and obtains

13  benefits from each and every element.

14          I'm happy to explain how and why, but, again, our

15  position is that this is completely appropriate.  This is a

16  unified system and under Federal Circuit case law what can be

17  accused is either a single product or if it's multiple

18  products it needs to be an explanation how they work together

19  as a whole which is what we would provide in the amended

20  complaint should we be provided leave to amend, Your Honor.

21          THE COURT:  So here's where I'm trying to give you

22  some leeway to file an amendment but if you're going to do

23  this, this services, which you are wanting to do plural not

24  singular, you have to identify that you've met all the

25  limitations of any asserted claim, and that's not where -- I

1 haven't seen you do that for multiple products amalgamated

2 together.  Where have you done that in this proposed amended

3 complaint?

4 　　　　　MR. TALANOV:  Your Honor, so again, we believe that

5 the claim chart in multiple -- the claim chart attached to the

6 proposed amended complaint in multiple places points to

7 Google's own language from their own websites and documents

8 that describes this as a unified suite that works together,

9 functions together, and because of its functioning together it

10 obtains additional benefits.

11 　　　　　In other words, had it just been one part of this

12 Chronical Security Operation system alone or apart from others

13 the entire system would not have gained all the benefits.

14 　　　　　And a layman's sort of analogy, if I may provide for

15 Your Honor, you know, I have terrible allergies here in

16 Houston and my doctor prescribes me three different allergy

17 medications, not because they do the same thing but each one

18 covers a different spectrum but they all work as a system to

19 protect me.

20 　　　　　So same thing here, Your Honor.  This is essentially

21 an antivirus security software and each one provides, covers a

22 certain spectrum but they work together as a whole.  This is a

23 system that Google has implemented, put together into use and

24 obtains benefit from each one of these elements, so that's --

25 　　　　　THE COURT:  Yeah.  I guess I have a problem with your

1  analogy now.

2          I mean, so if you're given one drop for mold — you

3  can tell I have allergies too, right — and you get one drop

4  for cat dander, you get another one for cedar, you've got to

5  prove that there's infringement on one or all three of the

6  drops.  You can't amalgamate everything together.  That seems

7  to be what you're doing.

8          I'll let you think about that —

9          MR. TALANOV:  Your Honor —

10         THE COURT:  — and let me hear from Mr. Kwon.

11         MR. KWON:  Thank you, Your Honor.

12         And if I may, I have one point as well.

13         What I'm hearing Mr. Talanov say about the claim

14  charts that have been proposed for the second-amended

15  complaint, the header of it does identify this branch of

16  Google products called Chronical Security Operations, but it

17  even, in the header, it identifies three, Chronical SIEM;

18  Chronical Soar; and Threat Intelligence, but if you look at

19  the claim charts themselves, Threat Intelligence is never

20  actually tied to any claim element in that whole claim chart.

21  So even that header is overbroad, so that's part of the

22  problem that we are identifying.

23         In terms of the idea that this motion for leave to

24  amend moots the motions in general, we don't agree with that

25  and the reasons why is because Google has raised four

1   arguments in our motion and this purported amendment — or the

2   amendment purports to address the first issue but completely

3   ignores the other three.

4           I have prepared some slides as well, if I should

5   connect them to the Zoom or I have a paper copy as well for

6   you.

7           So as Your Honor is aware, our first argument is the

8   argument we've just been discussing, and that comes from

9   *Centillion* as well, and it appears plaintiff concedes that at

10  least Google's first point was a good one.

11          So I'll go straight to the second argument, which

12  also comes *Centillion* and I think that's an important point to

13  raise here.  There's been a lot of discussion about *Centillion*

14  but what's being overlooked is that *Centillion* stands for a

15  lot of things.

16          Number one is that plaintiff can't mix and match

17  these product features, but importantly for Google's case at

18  least, it also stands for the proposition that when a patent

19  claim contains or requires hardware and software, a claim

20  against the software manufacturer for only providing software

21  is legally insufficient because it's an incomplete theory of

22  infringement.  And that's what's occurred here.

23          Specifically, the patents themselves require hardware

24  and that is not a matter of interpretation.  That's not a

25  factual argument.  The patents themselves say it.  The

1   specifications of three of them say, "It is assumed that these
2   systems consist of hardware."
3          And the fourth specification has slightly different
4   language but it says in the section titled both "Review of
5   Hardware" that this system can be comprised of any viral
6   configuration of hardware that's required.
7          And if there's any doubt the claims themselves also
8   require hardware, it says, "A system comprising individual
9   computers."  That is what is being claimed by these purported
10  inventions.
11         So the problem here is that even if Google is accused
12  of providing some software that can be used for these systems,
13  that Google is not actually being accused of providing a
14  complete infringing system.  And that is the —— actually the
15  bigger point in *Centillion*, and *Synchronoss*, and the *Traxcell*
16  case from the Northern District of California that Google
17  cited in our motions.
18         More importantly, the reason why this dismissal
19  should actually be with prejudice is because plaintiff
20  actually concedes that the way that these systems work is that
21  they require hardware.
22         And in the allegations themselves, plaintiff accuses
23  Google of providing a software that together with various
24  equipment collectively includes a system that supposedly
25  infringes, but plaintiff's whole theory is that Google sells

1    this software to customers and the end customers deploy it by

2    themselves.

3           So the reason why dismissal should be with prejudice

4    is this, because even if they have leave to amend, it would be

5    futile.  And in fact, we now have a proposed second-amended

6    complaint to look at and it doesn't address this whatsoever.

7    So that's actually the bigger point and the reason why

8    granting the motion for leave to amend doesn't actually make

9    sense because we'll just be here again and we'll dismiss it

10   eventually.

11          The third argument that we raise in our motion is

12   similar and it also results in a dismissal with prejudice in

13   our point of view, but that's for two of the patents, not all

14   four.  The '470 and the '974 patents specifically, what they

15   include is actually a second idea in their claimed inventions

16   which is the idea of a counteroffensive measure.

17          And the important thing to note there is that in the

18   patents themselves it distinguishes between a defensive

19   countermeasure and a counteroffensive measure.  And the only

20   counteroffensive measures that it discusses in the patent

21   involve, number one, sending some virus, Trojan virus or

22   malware to the attacker's computer to destroy and wipe their

23   hardware; or number two, well, what it actually says about

24   that is that there is a lot of risk involved in that because

25   you might accidentally wipe the hardware or the device of

1  somebody who is not actually an attacker, so in the event of a
2  false trigger that would be a mistake.
3          So the solution that is proposed by the '470 and the
4  '974 patents is to simply send something that disables the
5  operating system of the attacker's computer until they can
6  prove they are not an attacker.
7          And the whole point of that is the patent actually
8  says it, the effects to the attacker is the same as if you
9  wiped, destroyed their computer, but in the events that they
10 are not an attacker, that they can prove it with a password
11 and you can release their computer.  And that is the
12 counteroffensive measure that is required by every single
13 claim in the '470 and the '974 patents.
14         Now, number one, putting aside the fact that's a
15 pretty outlandish requirement and Google obviously does not
16 sell any software that accomplishes that because I'm pretty
17 sure that would be illegal, the allegations, which is why
18 we're here, the allegations don't even say that.
19         What they actually allege is that plaintiff, the
20 plaintiff alleges that Google provides a software that allows
21 a customer to quarantine an infected computer from the rest of
22 its network when a computer gets attacked.  That's nothing
23 close to a counteroffensive measure as the claims require.
24         So that's our argument for that and why the
25 allegation theory here is incomplete and based on an

1  implausible theory because it requires an implausible

2  interpretation of the patent.  And the authority for that

3  comes from the *AK Meeting* case, the *ALD Social* case, which are

4  the subjects are of Google's notices of supplemental

5  authority, the cases that recently got issued.

6          And those cases cite to Federal Circuit precedent,

7  *Ottah* and *Juniper Networks*, these cases all say you dismiss,

8  and you should dismiss, at the pleading stage if the

9  allegations are incomplete or rely on an implausible

10  construction of the claims.  And that's the argument here for

11  why the '470 and the '974 patent claims should be dismissed

12  with prejudice.

13          The last argument that Google raised in our motion is

14  related only to the '442 patent and this one is a similar

15  argument to the counteroffensive measure issue, which is that

16  this is a material claim element that plaintiff has failed to

17  allege infringement of.

18          The '442 patent claims require -- it's actually quite

19  long, but it requires scheduling custom antivirus software to

20  printing on the threat level that has been perceived for that

21  individual computer across every single network.

22          And on top of that, any time any computer in the

23  whole network is attacked or threatened, every single computer

24  gets updated with custom software, antivirus software tailored

25  to that particular computer's vulnerability level.

1    What has been alleged is that a customer can use one

2  of the Google products to write a custom script to then

3  instruct the program to essentially operate like an electronic

4  trigger and that trigger will then trigger a third-party

5  antivirus software, like McAfee, to update its own generic

6  antivirus update.  And our position is that that doesn't come

7  anywhere close to what the claim requires as well.

8    So for those reasons Google moves to dismiss the

9  first-amended complaint, and for the second and third argument

10 at least we would move for dismissal with prejudice.

11     THE COURT:  Thank you.

12     Mr. Talanov, would you like to respond?

13     MR. TALANOV:  Oh, absolutely, Your Honor.

14     First and foremost, let me just point out that this

15 lengthy presentation which we just heard is exactly the

16 inappropriate type of merits arguments and attempted claim

17 construction of various terms that is not appropriate at the

18 pleading stage.  This is a notice type pleadings and

19 plaintiff's -- what plaintiff proposes, again, provides -- you

20 know, plausibly pleads each and every element.

21     I think one of the initial first argument was that

22 Google, and for that matter all defendants I believe made that

23 argument, provide solely the software, but, Your Honor, that

24 is not the case.  The whole gee-whiz of this invention is that

25 it relates to a system of computers in a network and it

1  doesn't — the software doesn't focus on just one particular

2  computer.  What it does is it collects data and intelligence,

3  and that data and intelligence is analyzed in back-end

4  defendant's processors and servers then determine the

5  appropriate warnings and countermeasures.

6        You know, all those elements that counsel just argued

7  were missing from the claim charts or from the complaint, but,

8  Your Honor, that is entirely the point is that the claims

9  focus on the system and it is defendant's, Google in this

10 case, in particular who provides this entire system that works

11 together.  Google provides a software but it's not just

12 software directed to one particular computer.

13       The entire point is that it collects intelligence and

14 sends it back to this neuron to the brain that then interprets

15 what it means based on multiple users.  If multiple users are

16 being attacked that means certain action needs to be taken.

17       As such, Your Honor, this case is more closely

18 related to *Grecia v McDonald's*, a Federal Circuit opinion, 724

19 Federal Appendix 942, where the Federal Circuit has held that

20 *McDonald's* in that case, I guess terminals were sending

21 customer security card data back to Visa, were not really part

22 of the operating claims because they were merely — and this

23 is the Court's language — "merely part of the environment,"

24 because the claims really focused on what Visa did.

25       And same analogy was made with Microsoft in the

1 *Uniloc* case, also cited in *Grecia*, where the end users,

2 Microsoft's end users were merely and their computers were

3 merely part of the environment because the claims themselves

4 really focused not on the users downloading or opening their

5 software but really what happens with that software, what

6 Microsoft does.

7        And similarly here, Your Honor, what really matters

8 and what the claim is directed to is what Google does with the

9 information it gets from the individual user's computers and

10 then processes and essentially applies some artificial

11 intelligence to then determine corrective causes of action

12 predictive logic and then responses, correct responses and

13 warnings.

14        And I believe the other point that counsel made, I

15 believe they complain that several terms were missing, but the

16 new charts, Your Honor, include that.  They specifically, for

17 the server limitation, they point out that this data is

18 collected and processed to provide feedback.

19        Again, we believe that the charts fully address all

20 of the complaints the defendant had just pointed out.  And

21 again, I just wanted to stress that these are just notice

22 pleadings and we think that at this stage plaintiff has

23 plausibly pleaded its case.

24        THE COURT:  So I agree with you in part and disagree

25 with you in part.  So again, we have the same problem in your

1  proposed amended complaint here.

2          You say that the accused products refer, "by way of

3  example," and again "without limitation," so I have a

4  heartburn with that language.  And then you begin to name a

5  whole bunch of different products, and at this motion to

6  dismiss stage if that's what you're going to do you're going

7  to have to tie in the limitations to each of these products

8  and you failed to do that.

9          And so in your proposed amended complaint you talk

10 about -- I heard you talk about in this presentation that the

11 accused product was Chronical Security Operations, but in your

12 proposed amended complaint you talk about Simplify, Soar, Web

13 Risk, Cloud Armor.  I'm going to let you -- I'm going to grant

14 you leave to amend.

15         So 36 is granted in part and denied in part.

16         You're going to need to pick your one product and so

17 if your one product is going to be Chronical Security

18 Operations then the claim chart has got to be limited to that

19 and you're going to need to identify.

20         So now, the hardware issues and everything else, I

21 mean, I'm not sure where you're going to go with this.  This,

22 of course, is not a ruling but I don't know how you overcome a

23 summary judgment point because this isn't hardware but we're

24 at a motion to dismiss stage right now.

25         MR. KWON:  Your Honor, if I may.

1    THE COURT:  Yeah.

2    MR. KWON:  On the point that this is a motion to

3  dismiss stage and perhaps claim construction seems premature

4  in some issues, I don't believe this is one of those cases for

5  a few reasons.

6    Number one, the prevailing Federal Circuit precedent

7  actually comes from the Supreme Court case, *Teva*, "Claim

8  construction is a matter of law that only sometimes depends on

9  underlying subsidiary factual disputes," and I don't see a

10  factual dispute here precluding that decision now.

11    The other thing that I wanted to note about that is

12  that in this case we have agreed to defer discovery until

13  after claim construction.  So functionally and practically

14  speaking this pleading stage and the claim construction stage

15  is not much different.

16    The only difference is that they don't want to argue

17  it now but I think that it's definitely ripe for adjudication.

18    THE COURT:  So I'm going to give them one last

19  chance.  Like I said, 16 is granted in part and denied in

20  part.

21    The motion to dismiss the first-amended complaint is

22  granted to the extent that all these other infringing products

23  are not alleged with sufficiency.  The willfulness and the

24  presuit are also dismissed but the plaintiff will be granted

25  leave to amend his complaint to allege as to Chronical

1 Security Operations to the extent they can so 36 is granted in
2 part.
3       And again, same thing on possible cost shifting if
4 it's unsuccessful the next go-around and we get to that stage.
5       MR. BRIERS:  Can I make reference just to that one
6 point, Your Honor?  And I'll be brief.
7       We have seen this playbook before and we anticipated
8 that in this case and so we tried to make every effort to give
9 plaintiff an opportunity to amend their complaint with
10 imposing as least cost as possible on the defendants, and
11 these are some specific facts from our case but we sent
12 plaintiff an email back on December 22 identifying these
13 deficiencies.
14       And then on January 5th we sent a six-page letter to
15 the plaintiff's counsel identifying these deficiencies.  It's
16 not in the record because we didn't want to put it in the
17 record but I brought a copy for Your Honor today.  And we met
18 and conferred with plaintiff before filing our motion to
19 dismiss.
20       So we've given them plenty of opportunities to raise
21 this.  They waited until the last business day before this
22 hearing to file that motion.  So we do believe that at least
23 in the Google case, given the number of opportunities and the
24 number of times we've raised this, it would be appropriate to
25 give plaintiff the option of if they decide to pursue a

1    second-amended complaint to be required to cover the fees

2    associated with the motions to dismiss, at least in our case,

3    given that history.

4            THE COURT: So you know, I'll take into account that

5    history if we need to go to the next point of this case.

6            My hands are kind of tied. I mean, on a motion to

7    dismiss it's not a summary judgment motion, and in every case,

8    not just patent cases but all cases, everybody files motions

9    to dismiss and procedurally I'm bound by certain limitations

10   and so I'm sort of stuck.

11           Now, Mr. Talanov, though, I think the defendants are

12   raising, and I'm pointing out to you all the deficiencies you

13   have to cure the next go-around. I mean, this next go-around

14   we're going to be on one product and it's going to simplify

15   that claims chart, and if you can't make it then we've got

16   some issues.

17           MR. TALANOV: Your Honor, if I may.

18           We completely understand that we need to address all

19   the alleged deficiencies and to that point may we have an

20   order for the defendants to provide copies of their

21   presentations made today that were not provided, just to make

22   sure that plaintiff has a fair opportunity to address all of

23   those as it prepares its amendments?

24           THE COURT: I'm sure we don't need an order for that.

25   They will be more than happy to give those to you.

1    MR. TALANOV:  Thank you.

2    THE COURT:  Okay.  Let's move to 1049, Microsoft.

3    MR. LAMBERSON:  Good morning, Your Honor, Jonathan

4    Lamberson for Microsoft and Travis Underwood is here with me

5    as well.

6    Not much to add, Your Honor.  I think it's similar

7    issues, particularly similar to the Google case, Your Honor.

8    As I understand the amended complaint they are now

9    saying they are going to accuse three products which is the

10   Defender for Cloud, Microsoft Sentinel, and I believe they are

11   trying to accuse Defender for Endpoint, although it's not

12   entirely clear.

13   They talk about this 365 product, but I believe they

14   mean the Endpoint piece of it because that is how they map

15   some of the agent limitations on the device sitting on, for

16   example, on the table here today.

17   THE COURT:  So let me stop you here, Mr. Lamberson.

18   So let's make sure all three of us understand which

19   products are being accused on this amended complaint because I

20   didn't even get what you said.  I thought he was, in the

21   amended complaint, accusing Azure and Microsoft Security

22   Systems and just those two.

23   What are you intending to lodge against, Mr. Talanov?

24   MR. TALANOV:  Again, Your Honor, we will correct the

25   language in the complaint itself which appears to be not the

1  language that is in the claim charts but pointing to the first
2  page of the claim charts against Microsoft attached to the
3  complaint.  It's the integrated SIEM XDR Suite Solution,
4  that's what we are accusing.
5          Again, it comprises of Microsoft Sentinel, Microsoft
6  365 Defender, and Microsoft Defender for Cloud, but the name
7  for it, it is known as Microsoft SIEM and XDR.
8          THE COURT:  So if you are going to allege more than
9  one product, do we still have the same problem that you're not
10 specifying in your claim charts all the elements?
11         MR. TALANOV:  Your Honor, we believe the products as
12 stated in Microsoft's website that we pointed to in our charts
13 is SIEM-XDR Threat Protection Suite Solution.
14         THE COURT:  So is that one product or more than one
15 product?
16         MR. LAMBERSON:  It's three products, Your Honor, and
17 if I could explain further.
18         The 365 Defender has an Endpoint product and which
19 would be something that would run on a device.  It's called an
20 Endpoint meaning but it's -- it could be a user device.  It
21 could be a device you have sitting on your desk there.
22         There's also a Cloud product that protects the Cloud
23 which is servers remote.
24         And then there's another product, Century or
25 something -- Sentinel, which is monitoring traffic, for

1   example, watching who is communicating with what.

2          All that they have cited is a document that says if

3   you want to really secure your organization you could deploy

4   these three things, but that doesn't make them one product.

5   They are still three separate independent products.

6          And in some ways I think the eye drop analogy is a

7   good one because, you know, the idea is these are three

8   separate products and Microsoft doesn't combine them into one

9   drug, if you will.  In fact, they don't want people to do

10   that.

11          The reason they are effective is precisely because

12   they are separate products.  And you know --

13          THE COURT:  Well, they are effective because you make

14   us buy three things.

15          MR. LAMBERSON:  Well, no, but Microsoft didn't make

16   anybody buy anything if they wanted to make a claim against

17   the doctor or against the end person.

18          Microsoft makes a suite of products available.

19   Somebody can buy whichever products they like, but the claim

20   is does Microsoft make something that has all three?  No.

21   Does Microsoft use a system that has all three?  No.  It is up

22   to the user.

23          I mean, Your Honor's computer sitting there, I'm sure

24   some wonderful IT person put some software on there.  It

25   wasn't Microsoft that made that computer with that software or

1　that uses that computer with that software.  That's the issue

2　and that's what's pled.  That is the allegation that is pled.

3　　　　　THE COURT:  Go ahead, Mr. Talanov.

4　　　　　MR. TALANOV:  Your Honor, may I just read one

5　sentence?  Again, this is quoting Microsoft website for

6　SIEM-XDR Threat Protection web page, and it reads, "Our

7　combined SIEM and XDR solution" —— referring to it as a single

8　solution —— "enables security operations teams to detect,

9　investigate, respond to and defend against threats with fully

10　integrated" —— fully integrated, again, e-term —— "and

11　comprehensive set of capabilities including security

12　information and event management, security orchestration

13　automation," et cetera, et cetera.  And he refers to it as a

14　single fully integrated combined solution.

15　　　　　THE COURT:  So I haven't looked at the Microsoft

16　website but, I mean, it seems to be marketing fluff, right?

17　Don't they sell the 365 as, you know —— well, I guess that's a

18　bad analogy.  365 includes Excel and Word and everything else,

19　so they are sort of —— that is one product.

20　　　　　Never mind.  My analogy is bad.

21　　　　　MR. TALANOV:  Forgive me, Your Honor, if I may just

22　again point out to, you know, what I've already argued.

23　　　　　Again, this is a pleading stage.  Discovery hasn't

24　yet taken place into how these products actually work, how

25　many of them there are, but on its face we have plausibly

1  pleaded whether or not this is marketing language. You know,
2  respectfully plaintiff believes that this at least puts
3  together some evidence that this is, in fact, one system or
4  product that works together.
5       So again, Your Honor, we believe that's under
6  *Higby-Twombly-Iqbal* plausibility pleading notice standard. We
7  have definitely met that standard.
8       MR. LAMBERSON: If I could bring up one of my slides,
9  just for a moment, Your Honor, and we are happy to share these
10 of course.
11      Just to be clear, having separate products or even a
12 single product is a different question from what are we
13 talking about with these claims. And what these claims say is
14 that you have a distributed system with multiple computers and
15 then on each computer you're going to have an agent.
16      And one of those agents on an individual computer is
17 going to do various things, but that agent, that single agent
18 has to do all of those things. And so just saying, well,
19 Microsoft sells stuff for the Cloud that does, you know, Thing
20 A, and they sell something for a desktop that does Thing B,
21 and they say you could do both things.
22      Well, that is not having an agent on a computer doing
23 both things. They are two separate questions. And that is
24 what they are struggling with and what Your Honor is
25 struggling with, is can they find something, some product that

1  does all the things required by this claim.

2          And at least for Microsoft they absolutely cannot

3  because they have to, for their contention against Microsoft

4  they have to go to both the end-user device and the Cloud.

5  And the minute they do that with two different products

6  running in two different places, they cannot meet this claim

7  which says you have an agent on a computer doing these things,

8  not multiple agents in multiple places doing multiple things.

9          THE COURT:  Mr. Talanov.

10          MR. TALANOV:  Yes, Your Honor.

11          I will just say that, again, this is exactly the same

12  type of impermissible merits arguing claim construction type

13  arguments that should not be -- the Court should not allow at

14  this stage, whether it's an agent, a single agent, whether

15  it's one component, the entire system, that is to be

16  determined.  Claims construction is simply inappropriate at

17  this stage.

18          And again, Your Honor, we believe we have plausibly

19  pleaded in the amended complaint what we needed to do with

20  respect to Microsoft and I will just leave it at that.

21          THE COURT:  So 13, the motion to dismiss the claim is

22  granted in part, denied in part, mooted in part.

23          Any allegations of willfulness and presuit, that's

24  dismissed without prejudice.

25          It's granted in part to the extent that the current

1  complaint fails to put Microsoft on notice of what products

2  are accused.

3         This is a closer call for me because you seem to be

4  holding onto, Mr. Talanov, that you want to, on your motion

5  for leave to file an amended complaint, tie in products,

6  plural.  I'm real hesitant to let you do that.  And I'm not

7  going to let you do that.  So you're going to pick one product

8  for your amended complaint and see if you can get around the

9  deficiencies that defendants believe exist.

10         Okay.

11         MR. TALANOV:  Yes, Your Honor.

12         THE COURT:  With that addressed, let's talk about the

13  scheduling order.  How much time do you need to file amended

14  complaints, Mr. Talanov?

15         MR. TALANOV:  We believe a week should be sufficient.

16         THE COURT:  A week?  Did I hear you right?

17         MR. TALANOV:  Yes, Your Honor.

18         THE COURT:  So in the next week or so we'll see

19  amended complaints.

20         In light of that, what do we need to do with the

21  scheduling order from all your perspectives?

22         MR. LAMBERSON:  Well, Your Honor, we at least need to

23  push out, you know, the deadline for the invalidity

24  contentions, for example, which are due I believe -- let me

25  look.  May 25th is the current deadline but obviously those

1  critically hinge on what is accused and what is the scope of
2  the infringement case.

3           I would think, you know, when we are going to have to
4  potentially — I mean, the reality here, Your Honor, what I
5  have seen and heard is that all of these defendants are likely
6  going to have additional 12(b) motions.  My proposal would be
7  that we basically push out the entire schedule for a period
8  of, let's say, three months so that we can resolve those
9  motions.

10          I'm not confident that these issues can be resolved,
11  Your Honor, so why do a bunch of contentions when this issue
12  may be dispositive?

13          THE COURT:  Yeah; I sort of agree with that.

14          Mr. Talanov, your thoughts?

15          MR. TALANOV:  Your Honor, plaintiff is amenable to
16  doing the three-month extension on all the deadlines I guess
17  that are currently at issue as defendants have proposed.

18          THE COURT:  But how do we tackle the fact that I'm
19  fully expecting another round of motions to dismiss to be
20  filed?  Do we stay all discovery right now, just have a
21  deadline for the amended complaints and the motions to dismiss
22  and then perhaps then we take up the issue of scheduling
23  orders after that?  Maybe that's the answer.

24          MR. LAMBERSON:  We've already agreed, Your Honor, the
25  parties, that we're not going to do discovery until after

1  claim construction so that's not really an issue here.

2       THE COURT:  Well, what about just not doing anything

3  at all until we get amended complaints and then motions to

4  dismiss and then a briefing deadline for a response and a

5  reply?  Maybe that's all we should do at this point.

6       What's your thoughts on that?

7       MR. LAMBERSON:  That's fine for defendants.

8       THE COURT:  Anybody from a different idea?

9       What about Mr. Talanov, what do you think of that?

10      MR. TALANOV:  I think that makes sense, Your Honor.

11      THE COURT:  So then why don't you-all work out

12  together what's going to be the deadline for the amended

13  complaints.  Seven to ten days seems to be what Mr. Talanov

14  thinks he can do.

15      Then you-all talk and submit to me when the motions

16  to dismiss should be filed, a response and reply and we vacate

17  everything else.

18      What else do we need to take up today?

19      Anything else from the plaintiff?

20      MR. TALANOV:  No, Your Honor.

21      THE COURT:  Anybody here?

22      MR. LAMBERSON:  Just to clarify, Your Honor, I think

23  if we're vacating the existing schedule that also addresses

24  the separate issues we had sent in a notice on, so I'm just

25  going to assume those are going to be dealt with down the

1  road.

2        THE COURT:  Right.  Everything else is vacated until

3  we figure out what survives.

4        MR. LAMBERSON:  Thank you, Your Honor.  Then nothing

5  else for Microsoft, Your Honor.

6        THE COURT:  Thank you.

7        Anybody else?

8        MISS GIESE:  Nothing else for Google, Your Honor.

9        MR. ANDERSON:  Nothing for Amazon.

10       MR. LIU:  Nothing for Cisco.

11       THE COURT:  Thank you.  We'll see you-all.

12       *(Concludes proceedings)*

13                           -oOo-

14     I certify that the foregoing is a correct transcript from

15  the record of proceedings in the above-entitled matter.  I

16  further certify that the transcript fees and format comply

17  with those prescribed by the Court and the Judicial Conference

18  of the United States.

19

20  Date:  04/12/23            /s/  *Gigi Simcox*
                               United States Court Reporter
21                             262 West Nueve Street
                               San Antonio TX 78207
22                             Telephone:  (210)244-5037

23

24

25