**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **CTD NETWORKS, LLC,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 6:22-cv-01049-XR** |
| **v.** | ) | |
| | ) | |
| **MICROSOFT CORPORATION** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S RESPONSE TO MICROSOFT'S MOTION FOR ATTORNEYS' FEES**

# TABLE OF CONTENTS


I. INTRODUCTION AND BACKGROUND .....1

II. RELEVANT LAW .....2

III. ARGUMENT .....4

A. The Court Should Defer Deciding the Motion for Fees Until the Conclusion of CTD's Appeals .....4

B. CTD Modified its Pleadings Based on the Court's Instructions .....4

C. CTD's Complaints Were Not Exceptional .....8

1. Plaintiff conducted an adequate pre-suit investigation .....8

2. CTD attempted to revise the complaint in line with the Court's Order .....10

D. Microsoft's Allegation that CTD Made No Changes to the Amended Complaint Belies Belief .....10

E. Microsoft Fails to Offer any Evidence of an Abusive Pattern of Litigation .....11

F. Fees are Not Warranted .....12

G. Sanctions Under §1927, Rule 11 or the Court's Inherent Power are not Warranted .....13

IV. CONCLUSION .....13

# TABLE OF AUTHORITIES

## Cases

*Bayer CropScience AG v. Dow AgroSciences LLC*., 851 F.3d 1302 ......................13

*Browning v. Kramer,* 931 F.2d 340 (5th Cir.1991) ....................................................3

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011) .........................................................................................................4, 7

*Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ..........................................................................................................................3

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371 (Fed. Cir. 2017) .... 11, 13

*Edwards v. Gen. Motors Corp.,* 153 F.3d 242 (5th Cir.1998)..............................3, 13

*Fed. Deposit Ins. Co. v. Maxxam, Inc.,* 523 F.3d 566, 580 (5th Cir. 2008) ...............4

*Grecia v. McDonald's Corp.,* 724 F. App'x 942 (Fed. Cir. 2018) .............................4

*Gust, Inc. v. Alphacap Ventures*, LLC, 905 F.3d 1321 (Fed. Cir. 2018)...................3

*Jenkins v. Methodist Hosp. of Dallas,* 478 F.3d 255 (5th Cir. 2007) .........................4

*Mankes v. Vivid Seats Ltd.*, 822 F.3d 1302 (Fed. Cir. 2016)....................................3

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545 (2014) ......2, 12

*Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137 (9th Cir. 1951) ........................2, 12

*Stitt v. Williams,* 919 F.2d 516 (9th Cir.1990).........................................................3

## Constitutional Provisions & Statutes

28 U.S.C. § 1927 .........................................................................................3

35 U.S.C. § 285 ..........................................................................................2

## Rules & Regulations

Fed. R. Civ. P. 11(b)(1).............................................................................4

CTD Networks, LLC ("CTD") files this Response to Defendant Microsoft Corporation's ("Microsoft") Motion For Attorneys' Fees[1] ("Defendant's Motion for Fees") showing the Court that it should be denied because nothing rare happened in this case, it was normal litigation, the sanction of dismissal was adequate and no further sanction under Section 285 is warranted.:

## I. INTRODUCTION AND BACKGROUND

Plaintiff CTD Networks LLC ("CTD") sued Defendant Microsoft on October 6, 2022, alleging that Microsoft infringes U.S. Pat. Nos. 8,327,442 ("the '442 Patent"), 9,438,614 ("the '614 Patent"), 9,503,470 ("the '470 Patent"), 11,171,974 ("the '974 Patent"), and 9,402,158 (collectively, the "Patents-in-Suit").[2] On December 30, 2022, Microsoft filed a Motion to Dismiss CTD's Complaint for Failure to State a Claim ("Microsoft's Motion").[3] The Court granted Microsoft's Motion with leave to amend.[4] Microsoft filed a Motion to Dismiss the First Amended Complaint un May 22, 2023 ("Microsoft's Second Motion").[5] The parties had a hearing on June 29, 2023 and the Court took Microsoft's Second Motion to Dismiss under advisement.[6] On August 22, 2023, the Court granted Microsoft's Second Motion to Dismiss.[7] Microsoft's Motion for Fees followed.[8] Microsoft also file a Motion for Sanctions against Ramey LLP.[9] On September 21, 2023, the Court terminated Microsoft's Motion for Sanctions against Ramey LLP pending the resolution of Plaintiff's appeals.[10] Plaintiff appealed the Court's dismissal.[11]

In summary, Plaintiff filed a complaint, Defendant moved to dismiss, the Court held a

---

[1] See Doc. No. 49.
[2] Doc. No. 1
[3] Doc. No. 13.
[4] April 10, 2023, Hearing Transcript at 43-44; Doc. No. 34, April 10, 2023 Minute Entry granting Doc. No. 31.
[5] Doc. No. 40.
[6] Doc. No. 43.
[7] Doc, No. 44.
[8] Doc. No. 49.
[9] Doc. No. 50.
[10] September 21, 2023, Text Order terminating Doc. No. 50.
[11] Ramey Decl. at ¶21 and Ex. E thereto.

hearing providing guidance on amendments the complaint required, specifically granting leave to amend, Plaintiff substantially modified its complaint in an attempt to follow the Court's guidance, Defendant filed another motion to dismiss, and the Court held that Plaintiff's complaint was not sufficient and dismissed the case. No discovery occurred. No motions were filed by Plaintiff. The case was very short lived, less than one year. In sum, nothing makes this case rare as it does not stand out from the rest. This was normal litigation. The sanction of dismissal was adequate and no further sanction under Section 285 or otherwise is warranted.

## II. RELEVANT LAW

The Patent Act provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* A nonexclusive list of factors to consider includes frivolousness, motivation, objective unreasonableness as to facts or legal components of the case, and the need in particular circumstances to advance considerations of compensation and deterrence. *See Octane Fitness*, 572 U.S. at 554 n.6. The prevailing party must prove an "exceptional case" by a preponderance of the evidence. *See Id*. at 557-58.

Fees are not to be awarded "as a penalty for failure to win a patent infringement suit." *Octane Fitness*, 572 U.S. at 548-49 (quoting *Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)). In areas of evolving law, "it is particularly important to allow attorneys the latitude necessary to challenge and thus solidify the legal rules without the chill of direct economic

sanctions." *See, e.g., Gust, Inc. v. Alphacap Ventures*, LLC, 905 F.3d 1321, 1329 (Fed. Cir. 2018). A case is not necessarily exceptional necessitating a fee award even where a court determines the party applied an incorrect legal standard. This is especially true in areas where the law is changing or where the party's pleadings can be taken as a good faith effort to change the law[12] or a reasonable basis under then existing law.

Section 1927 provides that a court may require an attorney to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred" when the attorney "multiplies the proceedings in any case unreasonably and vexatiously."[13] However, a lawyer should not be sanctioned for failing to abandon his client's case at the drop of a motion, unless there is no colorable defense to the motion that can be advocated and no possible merit to any argument that can be advanced.[14] The Supreme Court has cautioned that court's must find fraud or abuse of the judicial process sufficiently beyond 'exceptional' before it can invoke its inherent sanctioning power.[15] The Fifth Circuit requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."[16] Section 1927 only authorizes shifting fees that are associated with "the persistent prosecution of a meritless claim."[17]

Rule 11 expressly requires that an attorney presenting a pleading, motion, or other paper before a court certify that the attorney has performed "an inquiry reasonable under the circumstances" such that he can verify that (1) "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," (2) "the claims ... are warranted by existing law or by a nonfrivolous argument for extending, modifying,

---

[12] *Mankes v. Vivid Seats Ltd.*, 822 F.3d 1302, 1312 (Fed. Cir. 2016).
[13] 28 U.S.C. § 1927.
[14] *Stitt v. Williams,* 919 F.2d 516, 528 (9th Cir.1990).
[15] *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).
[16] *Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir.1998).
[17] *Browning v. Kramer,* 931 F.2d 340, 345 (5th Cir.1991).

or reversing existing law;" (3) "the factual contentions have evidentiary support or, ... will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."[18] The Fifth Circuit "has been emphatic" that the Rule 11 analysis is a strictly objective inquiry and "expressly rejected any inquiries into the motivation behind a filing."[19]

## III. ARGUMENT

### A. The Court Should Defer Deciding the Motion for Fees Until the Conclusion of CTD's Appeals

To conserve judicial resources, after all the briefing is complete, this Court should defer deciding Defendant's Motion until after the resolution of Plaintiff's appeal.[20] The Federal Circuit's decision will have direct impact on who is the prevailing party and thus any award under Section 285. Accordingly, the Court should defer ruling on Defendant's Motion for Fees.

### B. CTD Modified its Pleadings Based on the Court's Instructions

CTD's First Amended Complaint was dismissed with leave to amend at the hearing on April 10, 2023. Counsel for CTD informed the Court that it was relying on *Grecia v. McDonald's Corp.*[21] for its position that the hardware components were "merely part of the environment" and not necessary for direct infringement.[22] The Court provided instructions for CTD should it file an amended complaint.[23]

Based on those instructions, CTD substantially revised its claim charts and identified what

[18] Fed.R.Civ.P. 11(b)(1)–(3).

[19] *Fed. Deposit Ins. Co. v. Maxxam, Inc.,* 523 F.3d 566, 580 (5th Cir. 2008) ; *Jenkins v. Methodist Hosp. of Dallas,* 478 F.3d 255, 264 (5th Cir. 2007).

[20] Declaration of William P. Ramey, III ("Ramey Decl.") at ¶19.

[21] 724 F. App'x 942, 946 (Fed. Cir. 2018) ("We concluded in *Uniloc* that a single party can still use, and thus directly infringe under § 271(a), a claimed system even when that system requires multiple parties to function. 632 F.3d at 1309 ("That other parties are necessary to complete the environment in which the claimed element functions does not necessarily divide the infringement between the necessary parties. For example, a claim that reads 'An algorithm incorporating means for receiving e-mails' may require two parties to function, but could nevertheless be infringed by a single party who uses an algorithm that receives emails.")).

[22] April 10, 2023, Hearing Transcript at 32-34.

[23] April 10, 2023, Hearing Transcript at 43-46.

Microsoft sold as an integrated product for infringement.[24] For example, with reference to claim 1 of the '442 patent, CTD originally proposed that Microsoft provides various cloud products that were the accused product for element [1a].

Microsoft Corporation ("Microsoft") provides various cloud products and services with a focus on security, through their Microsoft Azure and Microsoft Security services. *See* https://azure.microsoft.com/en-us/ and https://www.microsoft.com/en-us/security.

Microsoft Defender for Endpoint is an endpoint security platform that contains behavioral sensors. These sensors are the agents that are distributed across the endpoints in the network. Microsoft Defender for Identity also contains proprietary sensors. [25]

However, after the hearing, CTD substantially revised the claims charts and limited the allegation to what Microsoft described as an integrated entity, providing a web link:

Microsoft Corporation ("Microsoft") provides an integrated SIEM and XDR solution suite comprising Microsoft Sentinel, Microsoft 365 Defender, and Microsoft Defender for Cloud, known as Microsoft SIEM and XDR. *See* https://www.microsoft.com/en-us/security/business/solutions/siem-xdr-threat-protection.

Our combined SIEM and XDR solution enables SecOps teams to detect, investigate, respond to, and defend against threats with a fully integrated and comprehensive set of capabilities—including security information and event management (SIEM), security orchestration, automation, and response (SOAR), behavioral analytics (UEBA), extended detection and response (XDR), and global threat intelligence. [26]

that displays:

Integrated SIEM and XDR: Your ally against cyberthreats

Uncover and defend against advanced cyberthreats across your entire digital estate with a unified detection, investigation, and response experience. [27]

[24] Doc. No. 39-1 at 69/148: https://www.microsoft.com/en-us/security/business/solutions/siem-xdr-threat-protection.
[25] Doc. No. 1-1 at 69/152.
[26] Doc. No. 39-1 at 69/148.
[27] https://www.microsoft.com/en-us/security/business/solutions/siem-xdr-threat-protection.

In total, CTD made 239 changes[28] to the chart of claim 1 of the '442 patent.[29] CTD substantially modified the claim chart in an attempt to comply with the Court's Order. CTD completely removed reference to the multiple Microsoft products.

Similar changes were made to the chart for claim 10 of the '614 patent, limiting the accused product to what Microsoft describes as an integrated entity.[30] In total, 169 changes were made to the chart of claim 10 of the '614 patent.[31]

Likewise, similar changes were made to the chart for claim 1 of the '470 patent, limiting the accused product to what Microsoft describes as an integrated entity.[32] In total, 224 changes were made to the chart of claim 1 of the '470 patent.[33]

Lastly, similar changes were made to the chart for claim 1 of the '974 patent, limiting the accused product to what Microsoft describes as a single entity.[34] In total, 225 changes were made to the chart of claim 1 of the '974 patent.[35]

In short, CTD went to great lengths to comply with the Court's Order after the First Amended Complaint was dismissed, even providing a weblink to show the products are integrated:

---

[28] Comprising replacements, insertions, and additions.
[29] Declaration of William P. Ramey, III ("Ramey Decl."), Ex. A at 1.
[30] Compare Doc. No. 39-1 at 91/148 with Doc. No. 1-1 at 92/152.
[31] Ramey Decl., Ex. C at 1.
[32] Compare Doc. No. 39-1 at 108/148 with Doc. No. 1-1 at 109/152.
[33] Ramey Decl., Ex. B at 1.
[34] Compare Doc. No. 39-1 at 129/148 with Doc. No. 1-1 at 132/152.
[35] Ramey Decl., Ex. D at 1.

Integrated SIEM and XDR: Your ally against cyberthreats

Uncover and defend against advanced cyberthreats across your entire digital estate with a unified detection, investigation, and response experience.[36]

At the Hearing on the Second Motion to Dismiss, counsel for CTD emphasized that the parties are only at the pleading stage, that 2 of the four patents have method claims and that CTD fully intended to present infringement contentions with all asserted claims from the patent, but this is the pleading stage:[37]

> Right now we're merely at the period in the litigation where we provide notice to the defendants on what we're accusing them of infringing and we think we've done that.[38]

Counsel for CTD further provided that the *Centillion*[39] case made clear what it takes to infringe a system claim, it did not change the pleading standard.[40] *Centillion* was at the summary judgment phase, after discovery of evidence.[41] At the close of the hearing, the Court took the motions under advisement.[42]

---

[36] Doc. No. 39-1 at: https://www.microsoft.com/en-us/security/business/solutions/siem-xdr-threat-protection.
[37] June 29, 2023, Hearing Transcript at 5-6.
[38] June 29, 2023, Hearing Transcript at 6.
[39] *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).
[40] June 29, 2023, Hearing Transcript at 10.
[41] *Centillion Data Sys., LLC*, 631 F.3d at 1284.
[42] June 29, 2023, Hearing Transcript at 16, 18.

On August 22, 2023, the Court dismissed CTD's complaint.[43] The Court's Order concluded with:

> Because Plaintiff fails to plausibly allege that Defendant sells, offers for sale, or imports into the United States any claimed system, inclusive of the claimed hardware components, the Plaintiff's claims of direct infringement must be dismissed. Accordingly, the Court does not reach Defendant's argument that Plaintiff's allegations overlook material claim limitations in each of the Patents-in-Suit.[44]

### C. CTD's Complaints Were Not Exceptional

#### 1. Plaintiff conducted an adequate pre-suit investigation

Microsoft claims Plaintiff's claim charts attached to the First Amended Complaint failed to identify each and every element of the claimed invention.[45] However, Plaintiff made over 800 changes to the 4 claim charts in an effort to comply, showing that Microsoft referred to the products as integrated[46] and Microsoft does not identify what elements are missing. Plaintiff's amended claims charts attempted to identify Microsoft's "integrated products"[47] of Microsoft SIEM and XDR as supplying all of the elements. For the '442 patent, CTD attempted and intended to chart Microsoft's fully integrated SIEM and XDR solution for each element.[48] For the '614 patent, CTD attempted and intended to chart Microsoft's fully integrated SIEM and XDR solution for each element.[49] For the '470 patent, CTD attempted and intended to chart Microsoft's fully integrated SIEM and XDR solution for each element.[50] For the '974 patent, CTD attempted and intended to

---

[43] Doc. No. 44.
[44] Doc. No. 44 at 15.
[45] Doc. No. 49 at 8.
[46] *Compare*, Ex. C at 1; D at 1; E at 1; and, E at 1.
[47] https://www.microsoft.com/en-us/security/business/solutions/siem-xdr-threat-protection.
[48] For element [1a], Doc. No. 39-1 at 69/148; For element [1b], Doc. No. 39-1 at 74/148; For element [1c], Doc. No. 39-1 at 75/148; For element [1d], Doc. No. 39-1 at 78-79/148; For element [1e], Doc. No. 39-1 at 79-80/148; For element [1f], Doc. No. 39-1 at 83-84/148; For element [1g], Doc. No. 39-1 at 85/148; For element [1h], Doc. No. 39-1 at 86/148; and, For element [1i], Doc. No. 39-1 at 87/148.
[49] For element [1a], Doc. No. 39-1 at 91/148; For element [1b], Doc. No. 39-1 at 93-94/148; For element [1c], Doc. No. 39-1 at 97-97/148; For element [1d], Doc. No. 39-1 at 100/148; For element [1e], Doc. No. 39-1 at 101/148; and, For element [1f], Doc. No. 39-1 at 105/148.
[50] For element [1a], Doc. No. 39-1 at 108/148; For element [1b], Doc. No. 39-1 at 110/148; For element [1c], Doc.

chart Microsoft's fully integrated SIEM and XDR solution for each element.[51] That the Court decided otherwise does not make the case exceptional, this is common and ordinary, not rare, litigation.

Plaintiff has attached as Exhibits A-D, comparison reports of the amended claim charts compared to the original claim charts.[52] Attempted compliance with the Court's Order is shown by making substantial amendments to address what the Court said needed to be changed. This is not a case where CTD presented the same infringement charts after being told by the Court each was defective. Rather, this is a case where CTD took the Court's Order and applied it. CTD acknowledges the Court determined that the changes were not sufficient. However, simply because a party loses does not make a case exceptional.

Plaintiff conducted a detailed pre-suit investigation. William Ramey of Ramey, LLP worked with Eric Morehouse and Erik Lund in preparing the charts.[53] Morehouse is a licensed attorney in Virgina now practicing with Whitestone Law, 1850 Towers Crescent Plaza, Suite 550, Tysons, VA 22182, with over 20 years as a patent attorney drafting claim charts and comparing infringing products.[54] Lund is a licensed attorney in Virgina also practicing with Whitestone Law with years drafting claim charts and comparing infringing products.[55]

AiPi provided litigation support, but no suit was filed until Ramey decided the claim charts

No. 39-1 at 113-114/148; For element [1d], Doc. No. 39-1 at 117/148; For element [1e], Doc. No. 39-1 at 118-119/148; For element [1f], Doc. No. 39-1 at 119-120/148; For element [1g], Doc. No. 39-1 at 120/148; For element [1h], Doc. No. 39-1 at125 /148; For element [1i], Doc. No. 39-1 at 126/148; and, For element [1i], Doc. No. 39-1 at 127/148.

[51] For element [1a], Doc. No. 39-1 at 129/148; For element [1b], Doc. No. 39-1 at 131-132/148; For element [1c], Doc. No. 39-1 at 134-135/148; For element [1d], Doc. No. 39-1 at 138/148; For element [1e], Doc. No. 39-1 at 139-140/148; For element [1f], Doc. No. 39-1 at 140-141/148; For element [1g], Doc. No. 39-1 at 141-142/148; For element [1h], Doc. No. 39-1 at 145-146/148; and, For element [1i], Doc. No. 39-1 at 148/148.

[52] Ramey Decl. at ¶¶3, 13-16.

[53] Ramey Decl. at ¶¶3-7.

[54] Ramey Decl. at ¶¶3.

[55] *Id.*

were sufficient and the complaint adequate.[56]

As the case was filed in the Waco Division of the Western District of Texas, the standing orders of the court would require dismissal of the indirect claims until discovery. It was always Plaintiff's intent to add those claims back in at discovery.[57]

**2. CTD attempted to revise the complaint in line with the Court's Order**

After CTD's First Amended Complaint was dismissed, Ramey worked with his trusted litigation support service to revise the claim charts.[58] Over 800 changes were made in total to the four claim charts.[59]

To cure the deficiencies in the willfulness allegations, Plaintiff included a power point sent to Microsoft as an exhibit to its response to the motion to dismiss.[60] The chart was not included with the amended complaint, but it does exist to be used in discovery.

**D. Microsoft's Allegation that CTD Made No Changes to the Amended Complaint Belies Belief**

Microsoft's statement that there is no Dispute that the First Amended Complaint is substantially like the Original complaint is a gross misstatement of fact.[61] Plaintiff made over 800 total changes and focused the charts on Microsoft's integrated SIEM and XDR solution.[62] Concerning the amended charts supplied with its motion for leave before the April 10, 2023 hearing, CTD was attempting to address Microsoft's concerns without court intervention and align the complaint with the infringement contentions served on Microsoft.[63] CTD was attempting in good faith to remedy Microsoft's issues without court intervention. Microsoft's allegation without

[56] Ramey Decl. at ¶7.
[57] Ramey Decl. at ¶7.
[58] Ramey Decl. at ¶11.
[59] *Compare*, Ex. A at 1; B at 1; C at 1; and D at 1.
[60] Ramey Decl. at ¶17.
[61] Defendant's Second Motion to Dismiss at 9-10.
[62] *See* footnotes 48-51, *supra*.
[63] Doc. No. 31 at 2-3.

evidence that CTD never sent the proposed amended complaint is puzzling as the proposed amended complaint was filed with the motion for leave and Microsoft had indicated that it would oppose a motion for leave. In short, CTD attempted to comply with the Court's Order by making substantial changes to the claim charts after being granted leave by the Court to file an amended complaint.

**E. Microsoft Fails to Offer any Evidence of an Abusive Pattern of Litigation**

Defendant's Second Motion to Dismiss make the grand statement that filing patent infringement actions for the sole purpose of extracting settlements with no intention of testing the merits, can be a factor a court considers in the Section 285 context.[64] As is prudent, CTD made a settlement offer on Microsoft on October 22, 2022, based on the infancy of the case.[65] The settlement offer could hardly be called nuisance value, especially given the stage of the case. As is common practice, Ramey LLP would typically adjust its settlement offers before any hearing in an attempt to resolve.[66] Microsoft's statement that the offer suggests that CTD is more interested in nuisance value settlements is without support. If CTD were forced to further litigate the case, its settlement demand would increase proportionately.[67] There simply is no evidence that CTD was not willing to test the merits of its claims. In fact, all evidence is to the contrary.[68]

Microsoft then makes the evidentiary leap that because other defendant from other cases settled quickly, the values must be nuisance level. However, Microsoft cites no authority for this position and no evidence. In fact, Microsoft offers no evidence from the settled Defendants that they did not view CTD's patents as strong. A patent is presumed valid and an allegation of

---

[64] Doc. No. 49, 10-11.
[65] Ex. F, October 22, 2022, e-mail to Nicholas Kim.
[66] Ramey Decl. at ¶20.
[67] Ramey Decl. at ¶20.
[68] Ramey Decl. at ¶21.

infringement is presumed in good faith.[69] Microsoft's attorney conjecture does not overcome these presumptions and is made without any evidentiary basis.

Microsoft then attempts to say the Court should consider the number of cases filed by Ramey LLP as a factor in considering whether to assess fees under Section 285.[70] However, Microsoft provides no support that this is a relevant factor for a court's consideration, nor could it, because such authority does not exist. Microsoft's true complaint is that it does not like spending money for defending patent infringement claims. However, acknowledging that this Court dismissed CTD's lawsuits, Microsoft has not shown that any other lawsuit filed by Ramey LLP did not have merit. Nor could it as each of those other cases concerned other unrelated plaintiffs and patents.[71] Microsoft cites no caselaw supporting the consideration of other unrelated cases in a section 285 context. Such consideration violates CTD's due process rights as they have not had a chance to respond to the unrelated party's conduct in the other cases.

Ramey LLP responds to the reasonableness of the attorneys fees by providing that if Ramey LLP had not made substantial changes after receiving the Court's guidance from the April 10 Hearing, Microsoft's motion to dismiss would have been the same. However, Microsoft wrote an entirely new motion, with entirely new evidence. Microsoft should not be allowed to have it both ways. The work Microsoft spent to respond to CTD's amended complaint supports CTD's position that it substantially modified the charts in an attempt to comply with the Court's Order.[72]

**F. Fees are Not Warranted**

Microsoft failed to argue that it did not infringe the features of any of the asserted claims of the Patents-in-Suit throughout these brief proceedings. CTD litigated in a timely and reasonable

[69] *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017).
[70] Doc. No. 49 at 10-11.
[71] Ramey Decl. at ¶22.
[72] *See* footnotes 48-51, *supra*.

matter responding to the Court's instructions. Fees are not to be awarded "as a penalty for failure to win a patent infringement suit." *Octane Fitness,* 572 U.S. at 548-49 (quoting *Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)). Here, CTD tried at every turn to modify its complaint as directed by the Court. This is not a case where CTD litigated meritless positions but rather a case that is still in the pleading stage. Even though the Court found the pleadings deficient, the sanction of dismissal was adequate and no further sanction under Section 285 is warranted.

### G. Sanctions Under §1927, Rule 11 or the Court's Inherent Power are not Warranted.

Microsoft has made no showing that counsel for CTD should be independently sanctioned.[73] There is simply no "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."[74] Here, the case it at the pleading stage. The Court dismissed the pleading. Two law firms got together and revised the claim charts in an effort to comply with the Court's Order.[75] However, the Court decided that the amended charts were not sufficient.[76] Plaintiff has appealed that order.[77] This is routine litigation and there is no evidence to the contrary. Microsoft's request for sanctions against counsel for CTD is designed to have a chilling effect on Ramey LLP and its ability to file lawsuits, is inappropriate and without legal basis. Microsoft has presented no evidence to the Court that Ramey LLP's conduct (or the conduct of its lawyers) warrants sanction under Section 1927, the inherent power of the Court or Rule 11. There simply no evidence to overcome the presumption that the lawsuit was filed in good faith.[78]

## IV. CONCLUSION

[73] Ramey LLP is aware that the Court took Microsoft Motion for Sanctions off-docket (Doc. No. 50) but includes this portion for completeness and reserves the right to fully respond to Microsoft's Motion for Sanction against Ramey LLP is needed.
[74] *Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir.1998).
[75] Ramey Decl. at ¶¶11-16.
[76] Doc. No. 49.
[77] Ramey Decl. at ¶21.
[78] *Checkpoint Sys., Inc.*, 858 F.3d at 1376.

Microsoft's Motion fails to show: (1) that the plaintiff did not conduct an adequate pre-filing investigation or exercise due diligence before filing suit; or (2) that CTD should have known its claim was meritless and/or lacked substantive strength. See *Bayer CropScience AG v. Dow AgroSciences LLC*.[79] Defendants have simply not proven an "exceptional case" by a preponderance of the evidence. For all the foregoing reasons, Defendants Motion for Fees should be denied.

Respectfully submitted,

**RAMEY LLP**

*/s/ William P. Ramey, III*
William P. Ramey, III
Texas State Bar No. 24027643
wramey@rameyfirm.com
5020 Montrose Blvd., Suite 800
Houston, TX 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)

***Attorneys for CTD Networks, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2023, a true and correct copy of the foregoing document was served electronically, via ECF, on all counsel of record who are deemed to have consented to such service under the Court's local rules.

By: */s/ William P. Ramey, III*
William P. Ramey, III

[79] No. 12-256, 2015 WL 1197436, at *4 (D. Del. Mar. 15, 2015), aff'd, 851 F.3d 1302 (Fed. Cir. 2017.