**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| **CTD NETWORKS LLC**, <br><br> Plaintiff, <br><br> **v.** <br><br> **MICROSOFT CORPORATION**, <br><br> Defendant. | No. 6:22-cv-01049-XR |

**MICROSOFT CORPORATION'S RENEWED MOTION FOR
<u>SANCTIONS AGAINST RAMEY LLP</u>**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 3

   I.   Procedural History ............................................................................... 3
   II.  Ramey LLP ........................................................................................... 6

ARGUMENT ................................................................................................................. 9

   I.   Legal Standards .................................................................................... 9
   II.  Ramey LLP Unreasonably and Vexatiously Multiplied Proceedings ............................ 11
   III. The Second Amended Complaint Was Meritless ............................................. 11
   IV. CTD's Counsel Displayed a Reckless Disregard of The Duty to Investigate ................. 13
   V.  CTD is Judgment-Proof ...................................................................... 14
   VI. Microsoft's Fee Request is Reasonable ................................................... 15

CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Browning v. Kramer*,
931 F.2d 340 (5th Cir. 1991) ................................................... 10

*Centillion Data Sys., LLC v. Qwest Commnc'ns Int'l Inc.*,
631 F.3d 1279 (Fed. Cir. 2011) ................................................... 3

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ................................................... 10

*Dunkin' Donuts, Inc. v. Mercantile Ventures, Inc.*,
1994 WL 720236 (W.D. Tex. Aug. 11, 1994) ................................... 17

*Edwards v. Gen. Motors Corp.*,
153 F.3d 242 (5th Cir. 1998) ................................................. 10, 11, 13

*Emed Techs. Corp. v. Repro-Med Sys., Inc.*,
2019 U.S. Dist. LEXIS 196994 (S.D.N.Y. Nov. 12, 2019) .......................... 9

*Escapex IP LLC v. Google LLC*,
No. 22-cv-08711-VC, 2023 U.S. Dist. LEXIS 143626 (N.D. Cal. Aug. 16, 2023) ........ 8

*Escapex IP LLC v. Google LLC*,
No. 22-cv-08711-VC, 2024 U.S. Dist. LEXIS 26607 (N.D. Cal. Feb. 12, 2024) ........... 8

*EscapeX, LLC v. Google LLC*,
No. 3:22-cv-08711-VC, Dkt. 57 (N.D. Cal. Aug. 16, 2023) ......................... 17

*FDIC v. Calhoun*,
34 F.3d 1291 (5th Cir. 1994) ................................................... 10

*FDIC v. Maxxam*,
523 F.3d 566 (5th Cir. 2012) ................................................. 10, 11

*Greenfield v. U.S. Healthcare*,
No. 92-6345, 1993 U.S. Dist. LEXIS 8982 (E.D. Pa. Jul. 6, 1993) .................... 11

*Greer v. Richardson Indep. Sch. Dist.*,
471 Fed. Appx. 336 (5th Cir. 2012) ........................................... 9, 10

*Hyosung TNS, Inc. v. Diebold Nixdorf, Inc.*,
No. 3:16-CV-0364-N, 2021 WL 1597903 (N.D. Tex. Mar. 19, 2021) .................. 15

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
    No. 4:14-cv-371, 2018 U.S. Dist. LEXIS 56478 (N.D. Tex. Apr. 3, 2018), *rev'd on other grounds*, 757 F. App'x 974 (Fed. Cir. 2019) ..........................................................................15

*Jenkins v. Methodist Hosps. of Dallas, Inc.*,
    478 F.3d 255 (5th Cir. 2007) ..........................................................................................10

*La. Power & Light Co. v. Kellstrom*,
    50 F.3d 319 (5th Cir. 1995) ............................................................................................15

*Lighthouse Consulting Grp., LLC, v. BOK Fin.*,
    6:19-cv-00608-ADA, Dkt 47 (W.D. Tex., Feb. 4, 2021) ....................................................17

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
    420 F.3d 1369 (Fed. Cir. 2005)........................................................................................9

*Missed Call, LLC v. Freshworks, Inc.*,
    1:22-cv-00739 (D. Del. June 6, 2022), Dkt. 34 ..............................................................7

*Morrison v. Walker*,
    939 F.3d 633 (5th Cir. 2019) .....................................................................................9, 13

*NetSoc, LLC v. Chegg Inc.*,
    No. 18-CV-10262 (RA), 2020 U.S. Dist. LEXIS 232321 (S.D.N.Y. Dec. 10, 2020) ..............9

*NimitzTechs. LLC v. Cnet Media, Inc.*,
    No. 21-1247-CFC, 2022 U.S. Dist. LEXIS 215395 (D. Del. Nov. 30, 2022) ..........................9

*Ortiz & Assocs. Consulting, LLC v. Vizio, Inc.*,
    No. 3:23-CV-00791-N, 2024 U.S. Dist. LEXIS 33148 (N.D. Tex. Feb. 27, 2024) ................8

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986)........................................................................................................17

*Perdue v. Kenny A.*,
    559 U.S. 542 (2010)........................................................................................................15

*Raniere v. Microsoft Corp.*,
    No. 3:15-cv-0540-M, Dkt. 187 (N.D. Tex. Dec. 23, 2016) ..............................................15

*Raylon LLC v. Complus Data Innovations*,
    700 F.3d 1361 (Fed. Cir. 2012).................................................................................10, 11

*Raylon LLC v. Complus Data Innovations Co.*,
    6:09-cv-00355, 2015 WL 11121530 (E.D. Tex. May 4, 2015) ..........................................14

*Shipes v. Trinity Indus*,
    987 F.2d 311 (5th Cir. 1993) ......................................................................................16, 17

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
    5:19-cv-243-H (N.D. Tex. Feb. 9, 2022) ...............................................................18

*Sorkin v. Universal Bldg. Prods., Inc.*,
    1:08-cv-133, 2010 WL 519742 (E.D. Tex. Feb. 9, 2010)........................................15

*Travelers Ins. Co. v. St. Jude Hosp.*,
    38 F.3d 1414 (5th Cir. 1994) .................................................................................10

*Traxcell Techs, LLC v. AT&T Corp. & AT&T Mobility LLC*,
    2:17-cv-00718-RWS-RSP (E.D. Tex. Jan. 19, 2023), Dkt. 548 .................................7

*Traxcell Techs., LLC v. AT&T Corp.*,
    No. 2:17-cv-00718-RWS-RSP, 2022 U.S. Dist. LEXIS 56997 (E.D. Tex. Mar. 29, 2022)......8

*Trulis v. Barton*,
    107 F.3d 685 (9th Cir. 1996) .................................................................................11

*Verna IP Holdings, LLC v. Alert Media, Inc.*,
    No. 6:21-cv-00422-ADA, 2023 U.S. Dist. LEXIS 159961 (W.D. Tex. Sep. 11, 2023) ...........8

*WPEM, Inc. v. SOTI Inc.*,
    No. 2:18-CV-00156-JRG, 2020 U.S. Dist. LEXIS 17449 (E.D. Tex. Feb. 4, 2020), *aff'd*,
    *WPEM, LLC v. SOTI Inc.*, 837 F. App'x 773 (Fed. Cir. 2020) ................................8

*ZT IP, LLC v. VMware, Inc.*,
    No. 3:22-CV-0970-X, 2023 U.S. Dist. LEXIS 19165 (N.D. Tex. Feb. 6, 2023) ...............8, 17

## STATUTES AND RULES

28 U.S.C. § 1927 ....................................................................................... passim

35 U.S.C. § 285.................................................................................2, 14, 15

Fed. R. Civ. P. 11 ...................................................................................... passim

Fed. R. Civ. P. 11(b)...............................................................................1, 2, 9, 14

Fed. R. Civ. P. 12(b)(6)...............................................................................3

Fed. R. Civ. P. 12(c) ..................................................................................17

## INTRODUCTION

Microsoft respectfully renews its requests that the Court find CTD's former counsel of record, Ramey LLP, liable under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11(b) for fees Microsoft incurred in defending against this baseless lawsuit. While such sanctions should be used sparingly, they are necessary here given the facts of this case. After briefing on Microsoft's previously-filed motion for fees, and following the filing of CTD's appeal, CTD's replacement counsel, Joseph Zito, told Microsoft two alarming facts. First, he said that CTD never approved the filing of the amended complaint against Microsoft. Second, he stated that CTD instructed Ramey LLP to dismiss the complaint after Microsoft renewed its motion to dismiss, but Ramey LLP declined. Mr. Zito's client attested to these facts in a sworn declaration. These new facts confirm it was Ramey LLP that pursued baseless claims, ignoring its own client's instructions, and thus Ramey LLP should be held liable for the fees Microsoft incurred defending against these claims.

More generally, Ramey LLP rapidly built a business around filing frivolous patent lawsuits such as this one and then collecting nuisance-value settlements—settlements far less than the cost of reaching the merits. While Ramey LLP has only six lawyers, it has filed over 250 patent infringement lawsuits in the past year. Approximately 80 of those cases were filed in this judicial district. Of the 80 cases filed in this judicial district, 50 have already resolved, with an average pendency of just 3 months. Cases do not resolve that quickly if the plaintiff is seeking more than a nuisance-value settlement. This case is typical: Ramey LLP sought low-dollar-value settlements, which many defendants took. Ramey LLP has also sued Microsoft seven times in the past two years. Microsoft takes this request for sanctions seriously and files this motion only because it has

1

become necessary to deter Ramey LLP from repeatedly filing baseless, nuisance-value lawsuits against Microsoft and others.

Because Ramey LLP seeks quick, nuisance-value settlements for its clients, it need not worry about the merits. This has led district courts around the country to issue sanctions against Ramey LLP and its clients on multiple occasions. For example, a district court in Delaware wrote that it has had "numerous concerns" about the cases Ramey LLP handled. A recent decision from the Northern District of California held Ramey LLP liable under 28 U.S.C. § 1927 under facts nearly identical to those here. And at least eight published decisions awarded fees against Ramey LLP clients for pursuing claims that were objectively baseless.

Furthermore, because Ramey LLP represents shell companies with little or no assets, its clients do not need to worry about fee awards. During a hearing involving sanctions against other Ramey LLP clients, a Ramey LLP attorney explained that any money its clients receive (for example, through settlements) are paid out to litigation funders (the entities who provided funds to pursue to pursue the lawsuit) and to Ramey LLP, leaving nothing for the client itself. This means that even though CTD obtained some settlement money from other defendants, those funds are long gone. CTD's declarant confirms that CTD has insufficient assets to satisfy Microsoft's request for its attorneys' fees.

Ramey LLP had no concern about maintaining this case because it knew there were likely no consequences in doing so. Even if Microsoft obtained fees, CTD could simply refuse to pay, or declare bankruptcy. Under such circumstances, applying the fee award against Ramey LLP is the only way to accomplish the deterrent effect that a fee award under 35 U.S.C. § 285 is supposed to provide, and both 28 U.S.C. § 1927 and Rule 11(b) provide legal support for such an award. The Court should grant Microsoft's motion and sanction Ramey LLP in the amount of $100,000.

2

## STATEMENT OF FACTS

### I.      Procedural History

On October 6, 2022, Ramey LLP filed a patent infringement lawsuit against Microsoft on behalf of its client, CTD Networks LLC.  [Dkt. 1 ("Original Complaint").]  The Original Complaint contained a number of flawed legal theories, which Microsoft moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  [Dkt. 13 ("First MTD").]  These flaws included (1) a "mix and match" approach to infringement that accused multiple different pieces of Microsoft software of infringing, but that failed to map any piece of software to all the limitations of an asserted claim (*id.* at 6-12); (2) a failure to map certain claim limitations to any accused products (*id.* at 12-13); and (3) a failure to properly allege that Microsoft performed infringing acts under *Centillion Data Sys., LLC v. Qwest Commnc'ns Int'l Inc.*, 631 F.3d 1279 (Fed. Cir. 2011) (Dkt. 13 at 13-19).

On April 7, 2023, three months after Microsoft filed its first motion and one business day before the hearing, Ramey LLP informed Microsoft during a meet-and-confer that it wanted to seek leave to amend the complaint.  [*See* Dkt. 52-3, Ex. B ("April Letter") at 1-2.]  Microsoft responded that it would need to see the proposed amendment before it could take a position on whether it would oppose.  [*See id.*]  A few hours later, and without providing its proposed amendment to Microsoft or completing the meet-and-confer requirements of this Court, Ramey LLP filed with the Court a motion seeking leave to file an amended complaint. [Dkt. 31 (the "First Amended Complaint").]

During an April 10th hearing ("First MTD Hearing"), this Court explained that both CTD's Original Complaint and its First Amended Complaint were deficient at least because they failed to identify any single Microsoft product that allegedly practices all the limitations of an asserted claim.  [Dkt. 51-3, Ex. C ("First Hearing Tr."), at 43:21-44:9.]  The Court directed Ramey LLP to "pick one product for your amended complaint and see if you can get around the

3

deficiencies." *Id.* The Court also warned that, "[t]o the extent that the amended complaint fails to cure the deficiencies identified in Defendant's motion to dismiss [Dkt. 13], the Court will entertain a motion for the reasonable expenses Defendant incurs in responding to the pleading, including reasonable attorneys' fees." [Text Order Granting in Part and Denying in Part Docket 31 (Apr. 10, 2023).]

On April 21, 2023, Ramey LLP filed another amended complaint. [Dkt. 39 (the "Second Amended Complaint").] Unbeknownst to Microsoft, CTD ***never*** approved the filing of the Second Amended Complaint. [Morehouse Decl.,[1] ¶ 3.] The Second Amended Complaint failed to fix the deficiencies Microsoft and the Court identified in the prior complaints. Specifically, it maintained a "mix and match" theory of infringement, accusing at least ten different Microsoft software products of infringing but failing to allege that any single product alone or any set of programs when used in combination practiced all elements of any asserted patent claim. [*See* Dkt. 40 ("Second MTD") at 6-13.] While the Second Amended Complaint added an allegation that three Microsoft products were sold together as an "integrated suite," it never explained how those products allegedly operated in combination to perform all the elements of any patent claim. [*See id.* at 11-13.] In addition, the Second Amended Complaint still failed to address limitations of the '442 and '470 patents (*id.* at 13-14) and still failed to allege that Microsoft performed infringing acts under *Centillion*. [*Id.* at 14-18.] Finally, the Second Amended Complaint added a single boilerplate allegation of indirect infringement of the '442 Patent that lacked any recitation of relevant facts. [*Id.* at 18-20.]

On April 25, 2023, Microsoft sent a letter pointing out the deficiencies in the Second Amended Complaint. Microsoft asked Ramey LLP to dismiss, and said that if it did so by May 2,

---

[1] "Morehouse Decl." refers to the Declaration of Eric D. Morehouse, filed herewith.

2023, Microsoft would not seek its costs or attorneys' fees in bringing a second motion to dismiss. [April Letter at 3.]  Other than acknowledging receipt, Ramey LLP never substantively responded to Microsoft's letter.

On May 22, 2023, Microsoft filed the Second MTD, raising all of the above deficiencies. Ramey LLP's opposition largely repeated arguments that the Court had already rejected.  [*See* Dkt. 41.]  Only a single sentence of the opposition addressed the new theory that Microsoft's products were "integrated," but Ramey LLP never explained how those products operated together to practice any asserted claim.  [*Id*. at 5.]  Ramey LLP also failed to address indirect infringement, instead discussing willful infringement.  [*Id*. at 7-8.]  Ramey LLP even referenced a patent that is not at issue in this case, and that does not appear to be owned by CTD.  [*Id.* at 1 (discussing U.S. Patent No. 9,402,158).]  Ramey LLP also requested leave to amend, though it never said what it would change in a new amended complaint.  [*Id.* at 8.]  Unbeknownst to Microsoft, CTD had instructed Ramey LLP to ***dismiss*** the Second Amended Complaint after Microsoft filed its Second MTD, but Ramey LLP declined to do so.  [Morehouse Decl., ¶ 4.]

On June 29, 2023, at the hearing on the Second MTD, the Court found that the Second Amended Complaint had the same deficiencies as the Original Complaint, and the Court stated that it was "leaning to granting all the motions to dismiss."  [Dkt. 51-4, Ex. D ("Second Hearing Tr.") at 16:3-12.]  The Court reiterated that it would consider cost shifting related to "re-briefing of all these secondary motions to dismiss," and advised Ramey LLP to explore other options for resolving the case.  [*Id.* at 16:13-21 ("I caution you that if I do end up granting this motion to dismiss there could be cost shifting . . . . [Y]ou may want to consider your other options here in the interim.").]  Ramey LLP still did not dismiss the case, and on August 22, 2023, the Court

granted Microsoft's Second MTD, dismissing the case with prejudice.  [*See* Dkt. 44, 45.]  The dismissal order granted leave to seek reasonable attorneys' fees.  [Dkt. 44 at 19-20.]

Ramey LLP filed a notice of appeal on September 20, 2023.  [Dkt. 55.]  This Court terminated Microsoft's prior fee motion and stayed consideration of attorneys' fees pending the resolution of the appeal.  [Text Order Terminating Dkt. 56, Dated August 22, 2023.]  After filing the appeal, Ramey LLP filed an "Emergency Motion to Withdraw" at the Federal Circuit, stating that a "party adverse to Ramey LLP controls CTD Networks."  [Lamberson Decl.,[2] Ex. 1.]  The Federal Circuit stayed briefing on the appeal while that motion was pending, but Ramey LLP ignored the stay order and filed an opening appeal brief on December 27, 2023.  The Federal Circuit granted Ramey LLP's motion to withdraw on February 2, 2024.  On March 1, 2024, CTD (through its replacement counsel Erik Lund) filed a motion to dismiss the appeal.  On March 15, 2024, Ramey LLP filed a "Motion for Miscellaneous Relief" at the Federal Circuit, arguing that "equity should require that this appeal progress so as not [to] unfairly harm Ramey LLLP's interests."  [Lamberson Decl., Ex. 2.]  The Federal Circuit denied that motion on May 24, 2024, and dismissed the appeal, returning the case to this Court.  [Lamberson Decl., Ex. 3.]

## II.     Ramey LLP

Ramey LLP is a law firm that lists as partners William P. Ramey III, Jeffrey E. Kubiak, and Daniel Krueger, along with three other attorneys who are listed as Counsel.[3]  Despite having only six total attorneys, Ramey LLP is one of the most prolific patent plaintiffs' firms in the United States, having filed approximately 250 patent cases in the past year.  [Lamberson Decl., ¶ 7 & Ex.

---

[2] "Lamberson Decl." refers to the declaration of Jonathan Lamberson, filed herewith.
[3] *See* https://www.rameyfirm.com/about

4.]  Approximately 80 of those cases were filed in this judicial district.  [*Id.*]  Ramey LLP has sued Microsoft seven times in the past two years.  [*Id.*, ¶ 8.]

Ramey LLP represents non-practicing entities seeking nuisance-value settlements—settlements for values far less than the cost of reaching the merits.  For example, of the 80 cases Ramey LLP filed in this district in the past year, 50 have already terminated, with an average case length of about 3 months.  [*Id.*, ¶ 7.]  In this case, Ramey LLP asked Microsoft to pay a lump-sum settlement far less than the cost of defending a patent infringement lawsuit.  [*See* April Letter.] Four other CTD cases (against AT&T, IBM, Akamai Technologies, and Palo Alto Networks) all settled quickly, prior to any meaningful litigation activity.[4]  This suggests Ramey LLP sought and obtained nuisance-value settlements from these defendants as well.

Moreover, Ramey LLP's demonstrated practice is to represent shell entities that have little or no assets other than the asserted patents.  For example, during a hearing involving another Ramey LLP client, a Ramey LLP attorney explained that any money received by its clients are paid to litigation funders (the entities who provide funds to pursue the lawsuit), as well as to Ramey LLP, with nothing left for the client itself.  *See Missed Call, LLC v. Freshworks, Inc.*, 1:22-cv-00739 (D. Del. June 6, 2022), Dkt. 34 at 17:16-18:5; *see also Traxcell Techs, LLC v. AT&T Corp. & AT&T Mobility LLC*, 2:17-cv-00718-RWS-RSP (E.D. Tex. Jan. 19, 2023), Dkt. 548 at 3, 9

---

[4] The AT&T case was dismissed prior to any filing responsive to the complaint, following a stay for settlement purposes.  [*See* Dkts. 12 and 13 in 6:22-cv-01038.]  The IBM case was dismissed via stipulation shortly after the filing of an answer.  [*See* Dkts. 26 and 27 in 6:22-cv-01044.]  The Akamai case was dismissed following a Notice of Settlement less than six weeks after the filing of a motion to dismiss.  [*See* Dkts. 18, 24, and 25 in 6:22-cv-01302.]  The Palo Alto Networks case was dismissed prior to any filing responsive to the complaint, following a stay for settlement purposes.  [*See* Dkts. 10 and 11 in 6:22-cv-01304.]

(Ramey LLP representing that its client Traxcell would be rendered insolvent by posting a bond for a fee award pending appeal).  This means Ramey LLP clients are effectively judgment-proof.[5]

Ramey LLP and its clients have been the subject of multiple sanctions decisions issued by district courts around the country, including three new fee awards since Microsoft filed its original fee motions here.  *See Escapex IP LLC v. Google LLC*, No. 22-cv-08711-VC, 2024 U.S. Dist. LEXIS 26607 (N.D. Cal. Feb. 12, 2024) (awarding fees against Ramey LLP under 28 U.S.C. § 1927); *Ortiz & Assocs. Consulting, LLC v. Vizio, Inc*., No. 3:23-CV-00791-N, 2024 U.S. Dist. LEXIS 33148 (N.D. Tex. Feb. 27, 2024) (awarding fees because of plaintiffs "history of filing and dismissing suits involving the Asserted Patents … making a settlement demand below the cost of defense, as well as the substantive weakness of [plaintiff's] litigation position in the instant case"); *Verna IP Holdings, LLC v. Alert Media, Inc*., No. 6:21-cv-00422-ADA, 2023 U.S. Dist. LEXIS 159961 (W.D. Tex. Sep. 11, 2023) (awarding fees for failure to dismiss case following adverse claim construction decision); *see also Escapex IP LLC v. Google LLC*, No. 22-cv-08711-VC, 2023 U.S. Dist. LEXIS 143626 (N.D. Cal. Aug. 16, 2023) (awarding fees against Ramey LLP client because it "conducted no serious pre-suit investigation" and the case "was frivolous from the start"); *Traxcell Techs., LLC v. AT&T Corp.*, No. 2:17-cv-00718-RWS-RSP, 2022 U.S. Dist. LEXIS 56997, at *16 (E.D. Tex. Mar. 29, 2022) (awarding fees against Ramey LLP client for "pursuit of objectively baseless infringement theories"); *ZT IP, LLC v. VMware, Inc*., No. 3:22-CV-0970-X, 2023 U.S. Dist. LEXIS 19165, at *7 (N.D. Tex. Feb. 6, 2023) (finding Ramey LLP client "had ample opportunities to recognize the frivolousness of its position"); *WPEM, Inc. v. SOTI Inc*., No. 2:18-CV-00156-JRG, 2020 U.S. Dist. LEXIS 17449 (E.D. Tex. Feb. 4, 2020), *aff'd*,

---

[5] Ramey LLP will sometimes act as both funder and law firm, providing "non-recourse funding" for clients.  *See Missed Call*, Dkt. 34 at 18:14-19:22.  CTD's Certificate of Interested Parties identified Ramey LLP as an entity "financially interested in the outcome of the case."  [Dkt. 4.]

*WPEM, LLC v. SOTI Inc*., 837 F. App'x 773 (Fed. Cir. 2020) (awarding fees against Ramey LLP client based on the "frivolous nature of WPEM's infringement position . . . an issue that could have easily been foreseen with an adequate pre-suit investigation"); *NetSoc, LLC v. Chegg Inc*., No. 18-CV-10262 (RA), 2020 U.S. Dist. LEXIS 232321, at \*18 (S.D.N.Y. Dec. 10, 2020) (awarding fees against Ramey LLP client based on "a considerable flaw in their filings"); *Emed Techs. Corp. v. Repro-Med Sys., Inc*., 2019 U.S. Dist. LEXIS 196994, at \*13 (S.D.N.Y. Nov. 12, 2019) (awarding fees against Ramey LLP client for an infringement case that was "objectively unreasonable"); *NimitzTechs. LLC v. Cnet Media, Inc*., No. 21-1247-CFC, 2022 U.S. Dist. LEXIS 215395, at \*20 (D. Del. Nov. 30, 2022) ("I had numerous concerns with respect to the cases being handled by Messrs. Chong and Ramey.").

## ARGUMENT

Microsoft respectfully renews its requests that the Court sanction plaintiff's counsel, Ramey LLP, under 28 U.S.C. § 1927 and Rule 11(b).

### I.   Legal Standards

"Under 28 U.S.C. § 1927, an 'attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Greer v. Richardson Indep. Sch. Dist.*, 471 Fed. Appx. 336, 339 (5th Cir. 2012).  Regional circuit law governs fee shifting under § 1927. *See e.g., MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1382 (Fed. Cir. 2005).  Conduct is "unreasonable and vexatious" if there is evidence of the "persistent prosecution of a meritless claim" and of a "reckless disregard of the duty owed to the court." *Morrison v. Walker*, 939 F.3d 633, 637–38 (5th Cir. 2019) (citations omitted); *Greer*, 471 Fed. Appx. at 339 (attorney's conduct is considered unreasonable and

vexatious where there is evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court) (citing *Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir. 1998)).

District courts have discretion to award fees against attorneys if they announce the sanctionable conduct giving rise to its order and make specific findings to permit effective appellate review of the validity and amount of fees. *Id.* (stating § 1927 rulings are reviewed for abuse of discretion); *see also FDIC v. Calhoun*, 34 F.3d 1291, 1300 (5th Cir. 1994) ("[C]ourt must make a separate determination on both the issue of the reasonableness of the claims and the purpose of the purpose for which suit was instituted.").

Awards under § 1927 are punitive in nature. *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991). Even though the statute should be construed so that it does not "dampen the legitimate zeal of an attorney in representing his client," *Greer*, 471 Fed. Appx. at 339 (citing *Travelers Ins. Co. v. St. Jude Hosp.*, 38 F.3d 1414, 1416 (5th Cir. 1994)), it is warranted when counsel conducts litigation in an "irresponsible manner" leading to "multiple needless proceedings," *id.* at 340 (citations omitted).

Regarding Rule 11, the Supreme Court has stated that its "central purpose [] is to deter baseless filings . . . . Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact [and] legally tenable . . . ." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). This rule requires litigants to stop and think before making any legal or factual contention. *Raylon LLC v. Complus Data Innovations*, 700 F.3d 1361, 1366-67 (Fed. Cir. 2012); *see also Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 265 (5th Cir. 2007). In the Fifth Circuit, the rule follows an objective standard. *Raylon*, 700 F.3d at 1366-67 (citing *FDIC v. Maxxam*, 523 F.3d 566, 580 (5th Cir. 2012)). The rule can also be imposed on pleadings brought for an improper

purpose such as causing unnecessary delay or needless increase in the cost of litigation, even if they have some merit. *Maxxam*, 523 F.3d at 577.

## II.        Ramey LLP Unreasonably and Vexatiously Multiplied Proceedings

Disregarding a client's express instruction to dismiss a case is a reckless act warranting sanctions. *See Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1996) (finding district court abused its discretion by not awarding Section 1927 sanctions where attorney refused client's request to dismiss case); *Greenfield v. U.S. Healthcare*, No. 92-6345, 1993 U.S. Dist. LEXIS 8982 (E.D. Pa. Jul. 6, 1993) (awarding Rule 11 sanctions after lawyer disregarded client's instruction to dismiss case). Here, a representative of CTD gave a sworn declaration stating that CTD never approved filing the Second Amended Complaint against Microsoft and, once Microsoft filed its Second MTD, CTD told Ramey LLP to dismiss that complaint. [Morehouse Decl., ¶¶ 3 & 4.] Ramey LLP ignored its client and did not dismiss the case. Under these circumstances, the act of filing and then refusing to withdraw the Second Amended Complaint warrants sanctions.

## III.        The Second Amended Complaint Was Meritless

An attorney that willfully continues a lawsuit that they know to be meritless acts in bad faith under 28 U.S.C. § 1927. *Edwards*, 153 F.3d at 247. Likewise, sustaining litigation where no reasonable litigant could expect success is sanctionable under Rule 11. *Raylon*, 700 F.3d at 1371. Here, during the First MTD Hearing, this Court clearly instructed Ramey LLP to "**pick one product** for your amended complaint and see if you can get around the deficiencies." [Dkt. 51-3., Ex. C at 43:21-44:9 (emphasis added).] Ramey LLP did not pick "one product," it picked ten. [*See* Dkt. 39-1.] While Ramey LLP added an allegation that some Microsoft products (namely Microsoft Sentinel, Microsoft 365 Defender, and Microsoft Defender for Cloud) were sold together as an "integrated suite", this supposedly "integrated suite" only covered three of the ten

products accused of infringing, and even those three products did not cover all the claim limitations.  [*See id*.]

Ramey LLP also made no effort to support direct infringement theories against Microsoft. Specifically, while the Second Amended Complaint asserted only direct infringement for three of the four asserted patents, it never identified any purported act of direct infringement that Microsoft itself performed (such as making, using, selling, or importing the infringing system).  [*See* Second Amended Complaint ¶¶ 20, 29, 36, 43.]  Ramey LLP also made no effort to support an indirect infringement theory; the Second Amended Complaint never identified any actual act of indirect infringement.  [*See id.* ¶ 24.]  Indeed, during the briefing on Microsoft's Second MTD, Ramey LLP never even addressed indirect infringement.  Instead, it addressed willful infringement—a different legal doctrine.  [Second MTD at 7-8.]  Ramey LLP also ignored the Court's clear guidance not to include willful infringement in the Second Amended Complaint, and to avoid broad accusations using language such as "by way of example and without limitation."  [Dkt. 44 ("Dismissal Order") at 5-6.]

Ramey LLP knew of all these deficiencies when filing the Second Amended Complaint, since they were all raised in the First MTD and discussed in the First MTD Hearing.  But if there were any doubt about knowledge, Microsoft sent Ramey LLP a letter pointing out the deficiencies in the Second Amended Complaint shortly after it was filed.  Microsoft asked Ramey LLP to dismiss, and said that if it did so by May 2, 2023, Microsoft would not seek its costs or attorneys' fees in bringing a second motion to dismiss.  [April Letter at 3.]  Ramey LLP never responded to Microsoft's letter.  Accordingly, Ramey LLP knew, and certainly should have known, that the Second Amended Complaint had no hope of succeeding on the merits.  Much like the plaintiff's

counsel in *Edwards,* Ramey LLP "knew that [it] had no case as a matter of fact," but "kept [the suit] alive, hoping to extort a nuisance-value settlement."  153 F.3d at 246-47.

**IV.     CTD's Counsel Displayed a Reckless Disregard of The Duty to Investigate**

An attorney acts with "reckless disregard" of his duty to investigate when that attorney advances a baseless claim despite clear evidence undermining their factual contentions.  *Morrison*, 939 F.3d at 638.  Here, that failure to investigate is reflected in the failure to plead even the most basic facts required for patent infringement, and in a clear lack of understanding of Microsoft's software products.

Both the Original Complaint and the Second Amended Complaint rely on mixing and matching distinct Microsoft software products to assert infringement.  For example, focusing on the asserted '470 patent, the Original Complaint relied on portions of 10 different Microsoft software applications, without alleging that any single application met every limitation of the asserted claim.  [Dkt. 1-1, Ex. G.]  In the Second Amended Complaint, even though the Court told Ramey LLP to focus on a single accused product, Ramey LLP merely changed the list of 10 accused products.  [Dkt. 39-1, Ex. G.]  Again, no single product was alleged to meet every limitation.  Ramey LLP brought these deficient infringement allegations despite clear descriptions of the accused products in public documents available on Microsoft's website.  In fact, both of Microsoft's motions to dismiss relied on the evidence cited in the complaints to show that Ramey LLP was mixing and matching multiple unrelated products to make its infringement allegations. [*See* First MTD at 11; Second MTD at 12.]  Had Ramey LLP performed even a minimum amount of pre-suit investigation and diligence, and had it heeded the warnings from this Court during the First MTD Hearing, and from Microsoft in its Rule 11 letter, it would have seen that it was not presenting a coherent infringement theory.

13

## V.       CTD is Judgment-Proof

Sanctions against an attorney are important in situations where the plaintiff is judgment-proof and proceeds to file baseless pleadings with no fear of sanctions.  For example, in *Raylon LLC v. Complus Data Innovations Co.*, 6:09-cv-00355, 2015 WL 11121530 (E.D. Tex. May 4, 2015), the plaintiff sued multiple defendants over patent infringement, relying on a particular construction of the patent claims that was objectively unreasonable.  *Id.* at *1.  The defendants sought sanctions under 35 U.S.C. § 285, 28 U.S.C. § 1927, and Rule 11(b).  On a remand from the Federal Circuit, reversing an initial denial of sanctions, the district court was left with assessing sanctions under Rule 11 and 35 U.S.C. § 285.[6]  *Id.* at *2.  However, by then, "Defendants abandoned their § 285 claims against Raylon because Raylon was insolvent."  *Id.*

Raylon conducted a patent assertion campaign that netted its counsel a profit of around $300,921.25, obtained from settlements.  *Id.* at *6.  The lawsuits that originated those settlements "were based on the same frivolous infringement theories."  *Id.* at *7.  The district court reasoned that, "at minimum, Raylon's counsel should not be permitted to profit from their pursuit of frivolous claims.  Any sanction that would allow Raylon's counsel to walk away in a better financial position than when they started risks encouraging others to file baseless lawsuits."  *Id.*  The sanctions awarded by that court was a disgorgement of profits plus a 50% penalty, totaling about $450,000.  *Id.*

While Microsoft seeks attorneys' fees instead of disgorgement, the same facts supporting the fee award in *Raylon* are present here.  Ramey LLP initiated a patent assertion campaign against multiple parties with the purpose of extracting nuisance value settlement amounts.  Moreover,

---

[6] The Federal Circuit did not review the denial of sanctions under § 1927 noting that it "implicates a higher level of culpability than Rule 11."  *Id.* at *2 n.3.

following the First Hearing, Ramey LLP knew CTD's legal theories were objectively unreasonable, but decided to pursue those claims anyway. CTD has no assets other than the patents themselves, which are effectively worthless since no company uses that technology and since they are expired. CTD's declarant confirms it has insufficient assets to satisfy Microsoft's fee request. [Morehouse Decl., ¶ 2.] That is likely why Ramey LLP had no concern about refusing to dismiss the case despite the Court's warning—because there were no consequences in maintaining it. In this particular case, applying the fee award to Ramey LLP is the only way to accomplish the deterrent function that a fee award under § 285 is meant to provide.

### VI.   Microsoft's Fee Request is Reasonable

The Supreme Court has established a "strong presumption" that the lodestar figure represents a reasonable attorney's fee. *Perdue v. Kenny A.*, 559 U.S. 542, 553–54 (2010); *see also Sorkin v. Universal Bldg. Prods., Inc.*, 1:08-cv-133, 2010 WL 519742, at *4 (E.D. Tex. Feb. 9, 2010) (employing lodestar for calculating fees under § 285). The lodestar is calculated by multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

Here, Microsoft's attorneys' hourly rates range from roughly $500 for a junior associate to approximately $1000 for an experienced partner. [Lamberson Decl., ¶¶ 12-14.] Courts have found similar rates reasonable for attorneys handling patent litigation matters. *See Hyosung TNS, Inc. v. Diebold Nixdorf, Inc.*, No. 3:16-CV-0364-N, 2021 WL 1597903, at *2 & n.2 (N.D. Tex. Mar. 19, 2021) (in 2021, finding rates up to $950 per hour reasonable); *Raniere v. Microsoft Corp.*, No. 3:15-cv-0540-M, Dkt. 187 at 3-4, 6 (N.D. Tex. Dec. 23, 2016) (finding rates between $375/hr and $1,100/hr reasonable); *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-cv-371, 2018 U.S. Dist. LEXIS 56478, at *19-20 (N.D. Tex. Apr. 3, 2018) (finding rates of $430/hr

up to $1,100/hr reasonable), *rev'd on other grounds*, 757 F. App'x 974, 975 (Fed. Cir. 2019).  In addition, these rates are in line with billing rates for attorneys for intellectual property cases in the Texas area whose IP technical specialization is electrical engineering or computer science.  [*See* Dkt. 51-7, Ex. G ("AIPLA Economic Survey") at I-37 (partner hourly rates); I-49 and I-50 (associate hourly rates).]

Microsoft is also being judicious in assessing the hours for this fee request.  First, Microsoft has limited its request to fees incurred in connection with the Second Motion to Dismiss and fee motions, even though the entire case has been meritless from its inception.  Second, attorneys for Microsoft re-used applicable portions of the First MTD in preparing the Second MTD, but none of the time spent on the First MTD is included in Microsoft's request.  Third, Microsoft does not seek fees charged by local counsel.  Fourth, Microsoft reduced certain time entries that included travel time, and removed entries for timekeepers who did not contribute meaningfully to the outcome of the Second MTD.  [Lamberson Decl., ¶ 12.]  Fifth, Microsoft has not included the fees it incurred in defending against Ramey LLP's appeal.  Finally, Microsoft has rounded down the amount of its fees to $100,000.  This amount is well within the boundaries of typical costs to defend intellectual property cases in Texas.  [*See* AIPLA Economic Survey at I-144 (cost of litigation by region); I-150 (cost of litigation by type of practice).][7]

"After determining the lodestar amount, the district court may adjust the lodestar up or down in accordance with the relevant *Johnson* factors not already included in the lodestar." *Shipes v. Trinity Indus*, 987 F.2d 311, 320 (5th Cir. 1993).  Of the *Johnson* factors, time and labor required is captured directly by the lodestar calculation discussed above.  The *Johnson* factors relating to

---

[7] Microsoft has increased the amount it seeks from its prior motion (Dkt. 50) to account for the passage of time and the additional work required to prepare, file and argue this renewed motion.

"the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation [] are [also] presumably fully reflected in the lodestar amount." *Shipes*, 987 F.2d at 320; *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

Four other factors (customary fee, fee arrangement, the nature and length of the professional relationship, and preclusion of other employment) are captured in the discounted fees negotiated between White & Case LLP and Microsoft, with one clarification: White & Case billed Microsoft for the motions to dismiss and this fee motion on a fixed-fee basis, rather than on an hourly basis. [Lamberson Decl., ¶ 11.] The amount of the fixed fee was more than Microsoft seeks here (*see id*.), further supporting the reasonableness of Microsoft's request.[8]

Of the two remaining factors, factor 10 (the undesirability of the case) is inapplicable in patent cases. *See, e.g.*, *Dunkin' Donuts, Inc. v. Mercantile Ventures, Inc.*, 1994 WL 720236, at *5 (W.D. Tex. Aug. 11, 1994). That leaves factor 12 (awards in similar cases). Courts have ordered similar fee awards under similar circumstances, including in other cases involving clients of Ramey LLP. *See, e.g., EscapeX, LLC v. Google LLC*, No. 3:22-cv-08711-VC, Dkt. 57 (N.D. Cal. Aug. 16, 2023) (awarding $140,615 in fees, plaintiff represented by Ramey LLP); *Lighthouse Consulting Grp., LLC, v. BOK Fin.*, 6:19-cv-00608-ADA, Dkt 47 (W.D. Tex., Feb. 4, 2021) (awarding $86,931 for a Rule 12(c) dismissal, $20,000 for fee motion, and $25,000 for efforts to collect award); *WPEM, LLC v. SOTI Inc.*, (awarding $179,622 in case with dismissal shortly after answer, plaintiff represented by Ramey LLP), *aff'd*, No. 2020-1483 (Fed. Cir. Dec. 9, 2020) (non-precedential); *ZT IP, LLC v. VMWare, Inc.*, 3:22-cv-0970-x (N.D. Tex. Feb. 6, 2023) (awarding

---

[8] While White & Case billed Microsoft on a fixed-fee basis, White & Case nonetheless maintained records of the time spent on this matter, both for internal accounting purposes and for use in the event of a fee motion such as this. [Lamberson Decl., ¶ 10.]

17

$92,130.35 in case dismissed by plaintiff after motion to dismiss was filed, plaintiff represented by Ramey LLP); *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, 5:19-cv-243-H (N.D. Tex. Feb. 9, 2022) (awarding $107,616.50 for fees incurred due to improper pre-suit investigation).

## **CONCLUSION**

For these reasons, Microsoft respectfully requests that pursuant to 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11 that this Court sanction plaintiff's counsel, Ramey LLP, in the amount of $100,000.

Dated: June 14, 2024

Respectfully submitted,

*/s/ Jonathan Lamberson*
Jonathan J. Lamberson
Henry Huang
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94306
Tel:  (650) 213-0300
Fax: (650) 213-8158
lamberson@whitecase.com
henry.huang@whitecase.com

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX  75670
Tel:  (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

*Attorneys for Defendant Microsoft Corporation*

## <u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on June 14, 2024, the foregoing was filed with the Clerk of Court via the Court's CM/ECF system, which will send notification of such filing to all counsel of record, all of whom have consented to electronic service in this action.

*/s/ Jonathan Lamberson*
Jonathan Lamberson
