**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **CTD NETWORKS LLC,** | |
| **Plaintiff,** | **Civil Action No. 6:22-cv-01049-XR** |
| **v.** | |
| **MICROSOFT CORPORATION,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## RAMEY LLP'S RESPONSE TO MICROSOFT'S RENEWED MOTION FOR SANCTIONS

# TABLE OF CONTENTS

I.     THE ELEPHANT IN THE MOTION – MOREHOUSE'S LATE DECLARATION .........1

II.    FACTUAL INTRODUCTION .........................................................................................4

III.   RELEVANT LAW ..........................................................................................................6

IV.   ARGUMENT ...................................................................................................................7

    A.  Microsoft's Renewed Motion Should be Denied Without Consideration.....................7

        1.  There is No Dispute Before This Court ................................................................7

        2.  Microsoft Failed to Comply with the 21-day Notice Period or Give Ramey LLP a Chance to Correct .................................................................................................8

    B.  Ramey LLP's Amended Complaint was not for an Improper Purpose .........................9

    C.  Ramey LLP's Infringement Charts Comply with View Engineering...........................11

    D.  There is Nothing Improper About Being a Non-Practicing Entity that Settles Cases for Money ......................................................................................................................13

    E.  Sanctions Under §1927, Rule 11 or the Court's Inherent Power are not Warranted ....15

V.     CONCLUSION..............................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353 (Fed. Cir. 2017)......................14

*Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633 (Fed. Cir. 2015) .........................13

*Askins v. Hagopian*, 713 F. App'x 380 (5th Cir. Mar. 1, 2018) (per curiam)........8, 9

*Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683 (Fed. Cir. 2008)......................13

Browning v. Kramer, 931 F.2d 340 (5th Cir.1991) .....................................................6

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011) ..........................................................................................................9, 11

*Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)................................................................................................ 6, 7, 17

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371 (Fed. Cir. 2017) .... 14, 16

*Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122 (1908)................................................................................13

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006) .......................................................................................... 13, 14

*Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir.1998)................ 6, 7, 15

*Eon-Net LP v. Flagstar Bancorp*, 249 F. App'x 189, 195 (Fed. Cir. 2007), *aff'd sub nom. Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011) ...13

*Evans v. Jeff D.*, 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) ...............15

*Fed. Deposit Ins. Co. v. Maxxam, Inc.,* 523 F.3d 566 (5th Cir. 2008) ......................7

*Fleming & Assocs. v. Newby & Tittle*, 529 F.3d 631 (5th Cir. 2008)............... 1, 2, 8

*Garcia v. Rauch-Milliken Int'l, Inc.*, No. 5-18-CV-01028-FB-RBF, 2020 WL 7495251 (W.D. Tex. Oct. 16, 2020)........................................................ 7, 8, 9

*Grecia v. McDonald's Corp.,*724 F. App'x 942 (Fed. Cir. 2018).............................9

*Jenkins v. Methodist Hosp. of Dallas,* 478 F.3d 255 (5th Cir. 2007) .........................7

*King Instruments Corp. v. Perego*, 65 F.3d 941 (Fed. Cir. 1995)...........................14

*Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360 (Fed. Cir. 2017)..........15

*Garcia v. Rauch-Milliken Int'l, Inc.*, No. 5-18-CV-01028-FB-RBF, 2020 WL 7495251 (W.D. Tex. Oct. 16, 2020) ........................................................... 7, 8, 9

*Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538 (Fed. Cir. 1995) ........................ 13

*SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344 (Fed. Cir. 2015) ............................ 14

*Stitt v. Williams,* 919 F.2d 516 (9th Cir.1990) ........................................................ 6

*Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347 (Fed. Cir. 2019) .............. 13, 14

*Tompkins v. Cyr*, 202 F.3d 770 (5th Cir. 2000) ........................................................ 7

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 208 F.3d 981 (Fed.Cir.2000) ........... 12

**Constitutional Provisions & Statutes**

28 U.S.C. § 1927 ................................................................................................. 6, 11

**Rules & Regulations**

Fed. R. Civ. P. Rule 11 ....................................................................................... 6, 7

Ramey LLP ("Ramey LLP") files this Response to Defendant Microsoft Corporation's ("Microsoft") Renewed Motion for Sanctions Against Ramey LLP[1]  ("Microsoft's Motion for Sanctions") showing the Court that it should be denied because Ramey LLP and its lawyers  did not multiply the proceedings in this case unreasonably and vexatiously nor did they improperly file and maintain the Second Amended Complaint.  The Second Amended Complaint was filed at the direction and with the authorization of Eric Morehouse and CTD.  Eric Morehouse is a member of AiPi, Inc ("AiPi"); a founding partner of Whitestone Law; and now allegedly also in-house counsel for CTD Networks, LLC ("CTD").   Morehouse provided the conclusory and uncorroborated late declaration that is the centerpiece of Microsoft's Renewed Motion for Sanctions only a few months ago.  Morehouse's late declaration on behalf of CTD is demonstrably false and independently sanctionable.  Ramey LLP respectfully requests an in-person evidentiary hearing on this matter where Eric Morehouse's veracity can be tested.  It is well-known that Eric Morehouse, through his company AiPi, is in a fee dispute with Ramey LLP that includes work on this case.[2]  However, and most importantly, the Court need not consider the Motion for Attorneys' Fees[3] or the Microsoft's Motion for Sanctions[4] as the motions are moot in light of Microsoft and CTD's settlement.[5]  Yes, CTD and Microsoft settled their dispute but have not informed this Court.[6]

## I.      THE ELEPHANT IN THE MOTION – MOREHOUSE'S LATE DECLARATION

Likely realizing that the Court would not entertain Microsoft's Motion for Attorneys' Fees or Microsoft's Motion for Sanctions now that the parties have settled, thus rendering the remaining

---

[1] See Doc. No. 65.
[2] Declaration of William P. Ramey, III ("Ramey Decl.") at ¶12-21; Ex. U at 7-10.
[3] Doc. No. 49.
[4] Doc. No. 65.
[5] *Fleming & Assocs. v. Newby & Tittle*, 529 F.3d 631, 640 (5th Cir. 2008).
[6] Ex. BB at 1 (Introduction).

motions moot,[7] the Morehouse Declaration[8] was created, containing conclusory, self-serving statements not previously made in any court filing.  However, in addition to that, the Morehouse Declaration is entitled to no weight as each of its statements are false. Morehouse's Declaration, filed as Document Number 65-8, makes 3 conclusory, uncorroborated, and demonstrably false sworn statements:

Paragraph 2 of the Morehouse Declaration is false as CTD can satisfy at least a portion of any judgment.  CTD has settled many lawsuits producing sufficient revenue for CTD to satisfy at least a portion of Microsoft's fee request. Sealed exhibits A-D to this declaration are true and correct copies of four redacted settlement agreements.  Due to confidentiality provisions in the settlement agreements, Ramey LLP is filing the settlement agreements heavily redacted and sealed.  However, upon Court Order, Ramey LLP can file sealed copies of the unredacted settlement agreements.[9]  The settlement agreements show revenue received by CTD.  Ramey LLP is prevented from disclosing the agreements without Court Order.

Paragraph 3 is demonstrably false as not only did Morehouse approve the filing of the Amended Complaint,[10] he and Erik Lund sent the claim charts to be included with the Second Amended Complaint in an e-mail on April 18, 2023.  Exhibit E is a true and correct copy of an April 18, 2023 e-mail from Erik Lund to Linda Saltiel (a former attorney at Ramey LLP), copying Morehouse, William Ramey, Kyril Talanov and Susan Kalra.   The e-mail address "elund@aipisolutions.com" is the e-mail address for Erik Lund.   The e-mail address "emorehouse@aipisolutions.com" is the e-mail address for Eric Morehouse.  Exhibits F-I are true

---

[7] *Fleming & Assocs.*, 529 F.3d at 640.
[8] Doc. No. 65-8.
[9] Ramey Decl. at ¶3(a).
[10] The Amended Complaint was filed as First Amended Complaint (Doc. No. 39).  The Court dismissed the First Amended Complaint but also mentioned Second Amended Complaint in the Order (Doc. No. 44 at 19). Morehouse's Late Declaration's reference to the Second Amended Complaint is believed to reference Doc. 39 as there was no amended complaint styled Second Amended Complaint.

and correct claim charts sent by Erik Lund and Eric Morehouse for the Amended Complaint against Microsoft filed April 21, 2023.  Exhibit J is a true and correct copy of an e-mail chain between Erik Lund, Eric Morehouse, and William Ramey wherein Erik Lund acknowledges that "we" (including Eric Morehouse) gave our best efforts to the Amended Complaint against Microsoft.[11]  This communication further shows Eric Morehouse's approval even after the Amended Complaint against Microsoft was filed.

Paragraph 4 is false as Eric Morehouse had many chances to dismiss the Amended Complaint but did not and in fact approved proceeding forward in the case even after the June 29, 2023 Hearing on Microsoft's Motion to Dismiss the Amended Complaint.  Exhibit K is a true and correct copy of an e-mail dated April 25, 2023 from Linda Saltiel to Eric Morehouse forwarding a settlement communication from Microsoft.  Exhibit L is a true and correct copy of the settlement communication attached to Exhibit K.  Microsoft offered a walk away at that point and Eric Morehouse did not accept.  On June 30, 2023, after the hearing on Microsoft's Motion to Dismiss, Morehouse approved CTD to "stay the course" even though Ramey counseled that CTD would likely need to appeal and may be sanctioned.  Morehouse specifically affirmed the instructions by saying "S[o]unds (sp) good" in response to Ramey's request for direction.  In subsequent phone conversations, Morehouse affirmed continuing through appeal but at some point, after Joe Zito became involved, Morehouse changed his position.[12]  In fact, William Ramey's e-mail discusses dismissing the amended complaint, but Morehouse directed not dismissing the Amended Complaint and proceeding on.[13]  It belies belief that Morehouse now claims that he directed Ramey LLP to dismiss the Amended Complaint.  The contemporaneous documents show otherwise.

---

[11] Ramey Decl. at ¶3(b).
[12] Joe Zito is an attorney who joined Whitestone Law in the late summer of 2023 and also works as an attorney for DNL Zito.  Joe Zito falsely publicized that Ramey LLP was not authorized to file the Second Amended Complaint
[13] Ramey Decl. at ¶3(c).

Neither Ramey nor anyone else at Ramey LLP was instructed to dismiss the Amended Complaint. Exhibit N is an e-mail chain dated September 14, 2023 where Lund and Morehouse are asking what needs to be done in the cases after receiving Microsoft's request to meet and confer on the reasonableness of the requested fees.[14] There is no question that a dismissal was discussed but Morehouse chose the route of appeal and the documents show just that.

Exhibit O an e-mail chain dated October 23, 2023 concerning Morehouse, Lund and Joe Zito's proposed revisions to Ramey's declaration in our response to the motions for fees filed by Microsoft, Google and Cisco. Notably, in Sealed and redacted Exhibit O, Lund states, the 4:12 pm e-mail on October 23, 2023, that Morehouse is not counsel for any of AiPi clients/customers, which includes CTD, in direct contradiction to Paragraph 1 of Morehouse's declaration.[15]

This late assertion that Morehouse is counsel for CTD does not make sense. Morehouse appears to change his affiliation more than a chameleon walking across a multi-colored surface. Morehouse is first a member of AiPi, communicating with an AiPi e-mail address, then a founding partner of Whitestone Law, and now in-house counsel for CTD. Regardless of Morehouse's affiliation, he was working as AiPi when he provided direction to Ramey LLP on the CTD cases. Morehouse always interacted with Ramey on CTD issues as AiPi and not as in-house counsel.[16]

## II.    FACTUAL INTRODUCTION

Plaintiff CTD Networks LLC ("CTD") sued Defendant Microsoft on October 6, 2022, alleging that Microsoft infringes U.S. Pat. Nos. 8,327,442 ("the '442 Patent"), 9,438,614 ("the '614 Patent"), 9,503,470 ("the '470 Patent"), 11,171,974 ("the '974 Patent"), and 9,402,158 (collectively, the "Patents-in-Suit").[17] On December 30, 2022, Microsoft filed a Motion to Dismiss

---

[14] Ramey Decl. at ¶4.
[15] *Id.* at ¶5.
[16] *Id.* at ¶4.
[17] Doc. No. 1

CTD's Complaint for Failure to State a Claim ("Microsoft's Motion").[18]   The Court granted Microsoft's Motion with leave to amend.[19]   Microsoft filed a Motion to Dismiss the First Amended Complaint un May 22, 2023 ("Microsoft's Second Motion").[20]   The parties had a hearing on June 29, 2023 and the Court took Microsoft's Second Motion to Dismiss under advisement.[21]   On August 22, 2023, the Court granted Microsoft's Second Motion to Dismiss.[22] Microsoft's Motion for Fees followed.[23]   Microsoft also file a Motion for Sanctions against Ramey LLP.[24]   On September 21, 2023, the Court terminated Microsoft's Motion for Sanctions against Ramey LLP pending the resolution of Plaintiff's appeals.[25]   Plaintiff appealed the Court's dismissal.[26]   On November 6, 2023, the Court deferred ruling on Microsoft's Motion for attorneys' fees until CTD's appeals were concluded.[27]   After the case was dismissed, but prior to September 20, 2023, Ramey LLP received authority from Morehouse and Lund to file the Notice of Appeal in this matter.[28] Subsequently, but prior to December 27, 2023, Ramey LLP received authority from Joseph Zito of Whitestone Law during a phone conversation to file the Appeal Brief.[29]   On December 27, 2023, CTD filed its Opening Brief at the Federal Circuit in support of the appeal.[30]

Up until this point, the case was ordinary litigation.  However, what happened next defies logic and will be thoroughly discussed in the Argument Section.

## III.    RELEVANT LAW

---

[18] Doc. No. 13.
[19] April 10, 2023, Hearing Transcript at 43-44; Doc. No. 34, April 10, 2023 Minute Entry granting Doc. No. 31.
[20] Doc. No. 40.
[21] Doc. No. 43.
[22] Doc, No. 44.
[23] Doc. No. 49.
[24] Doc. No. 50.
[25] September 21, 2023, Text Order terminating Doc. No. 50.
[26] Ramey Decl. at ¶21 and Ex. E thereto.
[27] Ramey Decl. at ¶22; November 6, 2023 Minute Entry.
[28] Ramey Decl. at ¶23.
[29] *Id.* at ¶24.
[30] *Id.* at ¶25.

Section 1927 provides that a court may require an attorney to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred" when the attorney "multiplies the proceedings in any case unreasonably and vexatiously."[31]   However, a lawyer should not be sanctioned for failing to abandon his client's case at the drop of a motion, unless there is no colorable defense to the motion that can be advocated and no possible merit to any argument that can be advanced.[32]   The Supreme Court has cautioned that court's must find fraud or abuse of the judicial process sufficiently beyond 'exceptional' before it can invoke its inherent sanctioning power.[33]   The Fifth Circuit requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."[34]  Section 1927 only authorizes shifting fees that are associated with "the persistent prosecution of a meritless claim."[35]

Rule 11 expressly requires that an attorney presenting a pleading, motion, or other paper before a court certify that the attorney has performed "an inquiry reasonable under the circumstances" such that he can verify that (1) "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," (2) "the claims ... are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;" (3) "the factual contentions have evidentiary support or, ... will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."[36]  The Fifth Circuit "has been emphatic" that the Rule 11 analysis is a strictly objective inquiry and "expressly rejected any inquiries into the motivation behind a filing."[37]  The Fifth Circuit has

---

[31] 28 U.S.C. § 1927.

[32] *Stitt v. Williams,* 919 F.2d 516, 528 (9th Cir.1990).

[33] *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

[34] *Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir.1998).

[35] *Browning v. Kramer,* 931 F.2d 340, 345 (5th Cir.1991).

[36] Fed.R.Civ.P. 11(b)(1)–(3).

[37] *Fed. Deposit Ins. Co. v. Maxxam, Inc.,* 523 F.3d 566, 580 (5th Cir. 2008) ; *Jenkins v. Methodist Hosp. of Dallas,* 478 F.3d 255, 264 (5th Cir. 2007).

affirmed that Rule 11 sanctions are appropriately denied when the moving party files the motion after judgment, when the alleged offending conduct cannot be corrected.[38]  Courts in this District have stated that denial of a rule 11 motion is proper when there is no way for the non-movant to take advantage of Rule 11's safe-harbor provision, such as waiting to file the motion until after a district court enters judgment.[39]  However, a district court need not provide 21-days notice and may use its inherent powers to sanction fraud or abuse of the judicial process sufficiently beyond 'exceptional.'[40]  The Fifth Circuit requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."[41]

## IV.   ARGUMENT

### A.  Microsoft's Renewed Motion Should be Denied Without Consideration

#### 1.   There is No Dispute Before This Court

CTD and Microsoft admit they settled their dispute.[42]  In opposing Ramey LLP's request to maintain the appeal at the Federal Circuit and have the underlying issue determined, Microsoft provided that

> **Allowing this appeal to proceed despite the parties' settlement would undermine the purpose of the settlement and result in wasted effort.** Specifically, Movant's request is unripe because the district court has not yet addressed whether it should award Microsoft its attorney's fees, and whether Ramey LLP should be sanctioned. If this appeal proceeds and Microsoft prevails, the district court might nonetheless deny the pending fee and sanctions motions, rendering this entire appeal an unnecessary exercise in futility. **If this appeal proceeds and Movant prevails, the case will *still* not reach the merits, since CTD licensed Microsoft under the asserted patents. Rather than maintaining this appeal, the Court should dismiss it in accordance with the stipulation filed by CTD. If Ramey LLP is sanctioned, it can file a new appeal challenging the**

---

[38] *See Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir. 2000) (sanctions properly denied where Rule 11 motion was filed after trial's conclusion).

[39] *Garcia v. Rauch-Milliken Int'l, Inc.*, No. 5-18-CV-01028-FB-RBF, 2020 WL 7495251, at *3 (W.D. Tex. Oct. 16, 2020), *report and recommendation adopted,* No. CV SA-18-CA-1028-FB, 2020 WL 7495242 (W.D. Tex. Nov. 3, 2020).

[40] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

[41] *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir.1998).

[42] Ex. BB at 1.

**sanctions award and disputing the underlying merits decision that triggered it**.[43]

What is the purpose of the Microsoft/CTD settlement?  If there remains a pending motion for fees, how is the matter settled?  Is the purpose solely to have the Court consider the Motion for Sanctions against Ramey LLP?  Is the settlement itself for an improper purpose demanding *sua sponte* sanctioning by the Court of both CTD and Microsoft?

The Fifth Circuit has spoken on this issue and any sanction award would be vacated as moot after the parties have settled.[44]  There is an exception for nonmonetary sanctions but Microsoft has not asked for those and the Court has not awarded any, nor is there believed a basis for such an award.[45]  Therefore, it is appropriate to render moot Microsoft's Motion for Sanctions as the parties have settled.  While Microsoft is surely to argue that the cited case concerned a sanction against a party, there is no carve out for former counsel.  If there were, any party who loses a case would be tempted to seek fees payable by its lawyers.  These motions are moot and should be dismissed.  The Fifth Circuit has spoken.

### 2.  Microsoft Failed to Comply with the 21-day Notice Period or Give Ramey LLP a Chance to Correct

The Fifth Circuit holds that "'[s]trict compliance'" with Rule 11 is required before sanctions may be assessed."[46]  Rule 11 Motions are denied as untimely when the movant fails to provide the non-movant a chance to correct the alleged offending pleading.[47]  Here, Microsoft filed its Renewed Motion for Sanctions without providing a 21-day period for correction.  Further,

---

[43] Exhibit BB at 1 (emphasis added); Ramey Decl. at ¶27.
[44] *Fleming & Assocs. v. Newby & Tittle*, 529 F.3d 631, 640 (5th Cir. 2008).
[45] *See id.*
[46] *Garcia v. Rauch-Milliken Int'l, Inc.*, No. 5-18-CV-01028-FB-RBF, 2020 WL 7495251, at *3 (W.D. Tex. Oct. 16, 2020), *report and recommendation adopted,* No. CV SA-18-CA-1028-FB, 2020 WL 7495242 (W.D. Tex. Nov. 3, 2020) *citing Askins v. Hagopian*, 713 F. App'x 380, 380-81 (5th Cir. Mar. 1, 2018) (per curiam).
[47] *See id.*

the Renewed Motion is a new motion not identical to what was previously filed.[48] Furthermore, Microsoft's First Motion for Sanctions was also filed after the case was closed and when the safe harbor provision was not available and therefore improper.[49]   Thus, the Court need not consider the Motion and can deny it for failing to strictly comply with the requirements for Rule 11 sanctions.[50]

### B.  Ramey LLP's Amended Complaint was not for an Improper Purpose

CTD's Complaint was dismissed with leave to amend at the hearing on April 10, 2023. Ramey LLP informed the Court that it was relying on *Grecia v. McDonald's Corp.*[51] for its position that the hardware components were "merely part of the environment" and not necessary for direct infringement.[52]   The Court provided instructions for CTD should it file an amended complaint.[53] Based on those instructions, CTD substantially revised its claim charts and identified what Microsoft sold as an integrated product for infringement.[54]   For example, with reference to claim 1 of the '442 patent, CTD originally proposed that Microsoft provides various cloud products that were the accused product for element [1a].

---

[48] *Compare* Doc. No. 65 with Doc. No. 50.

[49] *Garcia v. Rauch-Milliken Int'l, Inc.*, No. 5-18-CV-01028-FB-RBF, 2020 WL 7495251, at *3 (W.D. Tex. Oct. 16, 2020), *report and recommendation adopted,* No. CV SA-18-CA-1028-FB, 2020 WL 7495242 (W.D. Tex. Nov. 3, 2020).

[50] *Garcia v. Rauch-Milliken Int'l, Inc.*, No. 5-18-CV-01028-FB-RBF, 2020 WL 7495251, at *3 (W.D. Tex. Oct. 16, 2020), *report and recommendation adopted,* No. CV SA-18-CA-1028-FB, 2020 WL 7495242 (W.D. Tex. Nov. 3, 2020).

[51] 724 F. App'x 942, 946 (Fed. Cir. 2018) ("We concluded in *Uniloc* that a single party can still use, and thus directly infringe under § 271(a), a claimed system even when that system requires multiple parties to function. 632 F.3d at 1309 ("That other parties are necessary to complete the environment in which the claimed element functions does not necessarily divide the infringement between the necessary parties. For example, a claim that reads 'An algorithm incorporating means for receiving e-mails' may require two parties to function, but could nevertheless be infringed by a single party who uses an algorithm that receives emails.")).

[52] April 10, 2023, Hearing Transcript at 32-34.

[53] *Id.* at 43-46.

[54] Doc. No. 39-1 at 69/148: https://www.microsoft.com/en-us/security/business/solutions/siem-xdr-threat-protection.

Microsoft Corporation ("Microsoft") provides various cloud products and services with a focus on security, through their Microsoft Azure and Microsoft Security services. *See* https://azure.microsoft.com/en-us/ and https://www.microsoft.com/en-us/security.

Microsoft Defender for Endpoint is an endpoint security platform that contains behavioral sensors. These sensors are the agents that are distributed across the endpoints in the network. Microsoft Defender for Identity also contains proprietary sensors.

55

However, after the hearing, CTD substantially revised the claims charts and limited the allegation to what Microsoft described as an integrated entity, providing a web link:

Microsoft Corporation ("Microsoft") provides an integrated SIEM and XDR solution suite comprising Microsoft Sentinel, Microsoft 365 Defender, and Microsoft Defender for Cloud, known as Microsoft SIEM and XDR. *See* https://www.microsoft.com/en-us/security/business/solutions/siem-xdr-threat-protection.

Our combined SIEM and XDR solution enables SecOps teams to detect, investigate, respond to, and defend against threats with a fully integrated and comprehensive set of capabilities—including security information and event management (SIEM), security orchestration, automation, and response (SOAR), behavioral analytics (UEBA), extended detection and response (XDR), and global threat intelligence.

56.

In total, CTD made 239 changes[57] to the chart of claim 1 of the '442 patent.[58] CTD substantially modified the claim chart in an attempt to comply with the Court's Order. CTD completely removed reference to the multiple Microsoft products. Similar changes were made to the chart for claim 10 of the '614 patent, limiting the accused product to what Microsoft describes as an integrated entity.[59] In total, 169 changes were made to the chart of claim 10 of the '614 patent.[60] Likewise, similar changes were made to the chart for claim 1 of the '470 patent, limiting the accused product to what Microsoft describes as an integrated entity.[61] In total, 224 changes were made to the chart of claim 1 of the '470 patent.[62] Lastly, similar changes were made to the chart for claim 1 of the '974 patent, limiting the accused product to what Microsoft describes as a single entity.[63] In total, 225 changes were made to the chart of claim 1 of the '974 patent.[64]

---

[55] Doc. No. 1-1 at 69/152.
[56] Doc. No. 39-1 at 69/148.
[57] Comprising replacements, insertions, and additions.
[58] Doc. No. 58-3 at 1.
[59] Compare Doc. No. 39-1 at 91/148 with Doc. No. 1-1 at 92/152.
[60] Doc. No. 58-5 at 1.
[61] Compare Doc. No. 39-1 at 108/148 with Doc. No. 1-1 at 109/152.
[62] Doc. No. 58-4 at 1.
[63] Compare Doc. No. 39-1 at 129/148 with Doc. No. 1-1 at 132/152.
[64] Doc. No. 58-6 at 1.

In short, CTD went to great lengths to comply with the Court's Order after the First Amended Complaint was dismissed, even providing a weblink to show the products are integrated.[65]

At the Hearing on the Second Motion to Dismiss, counsel for CTD emphasized that the parties are only at the pleading stage, that two of the four patents have method claims and that CTD fully intended to present infringement contentions with all asserted claims from the patent, but this is the pleading stage:[66]

```
6          Right now we're merely at the period in the
7    litigation where we provide notice to the defendants on what
8    we're accusing them of infringing and we think we've done
9    that.                                                          67
```

Counsel for CTD further provided that while the *Centillion*[68] case made clear what it takes to infringe a system claim, it did not change the pleading standard.[69]  *Centillion* was at the summary judgment phase, after discovery of evidence.[70] At the close of the hearing, the Court took the motions under advisement.[71]      On August 22, 2023, the Court dismissed CTD's complaint.[72]  In short, Ramey LLP exercised extreme diligence in addressing the Court's prior Order and there simply is no showing that Ramey LLP multiplied the proceedings unreasonably and vexatiously.[73]

### C.  Ramey LLP's Infringement Charts Comply with *View Engineering*

Microsoft claims Plaintiff's claim charts attached to the First Amended Complaint failed

---

[65] Doc. No. 39-1 at: https://www.microsoft.com/en-us/security/business/solutions/siem-xdr-threat-protection.
[66] June 29, 2023, Hearing Transcript at 5-6.
[67] *Id.* at 6.
[68] *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).
[69] June 29, 2023, Hearing Transcript at 10.
[70] *Centillion Data Sys., LLC*, 631 F.3d at 1284.
[71] June 29, 2023, Hearing Transcript at 16, 18.
[72] Doc. No. 44.
[73] 28 U.S.C. § 1927.

to identify each and every element of the claimed invention.[74]  However, Plaintiff made over 800 changes to the 4 claim charts in an effort to comply, showing that Microsoft referred to the products as integrated[75] and Microsoft does not adequately identify what elements are missing such that it would not know what is being accused of infringing.  Plaintiff's amended claims charts attempted to identify Microsoft's "integrated products"[76] of Microsoft SIEM and XDR as supplying all of the elements.  For the '442 patent, CTD attempted and intended to chart Microsoft's fully integrated SIEM and XDR solution for each element.[77]  For the '614 patent, CTD attempted and intended to chart Microsoft's fully integrated SIEM and XDR solution for each element.[78]  For the '470 patent, CTD attempted and intended to chart Microsoft's fully integrated SIEM and XDR solution for each element.[79]  For the '974 patent, CTD attempted and intended to chart Microsoft's fully integrated SIEM and XDR solution for each element.[80]  The Federal Circuit has found that such an analysis is evidence of compliance with Rule 11.[81]  Further, Microsoft failed to provide a 21 day notice period for CTD's First Amended Complaint and therefore cannot use an alleged rule

---

[74] Doc. No. 49 at 8.

[75] *Compare*, Ex. C at 1; D at 1; E at 1; and, E at 1.

[76] https://www.microsoft.com/en-us/security/business/solutions/siem-xdr-threat-protection.

[77] For element [1a], Doc. No. 39-1 at 69/148; For element [1b], Doc. No. 39-1 at 74/148; For element [1c], Doc. No. 39-1 at 75/148; For element [1d], Doc. No. 39-1 at 78-79/148; For element [1e], Doc. No. 39-1 at 79-80/148; For element [1f], Doc. No. 39-1 at 83-84/148; For element [1g], Doc. No. 39-1 at 85/148; For element [1h], Doc. No. 39-1 at 86/148; and, For element [1i], Doc. No. 39-1 at 87/148.

[78] For element [1a], Doc. No. 39-1 at 91/148; For element [1b], Doc. No. 39-1 at 93-94/148; For element [1c], Doc. No. 39-1 at 97-97/148; For element [1d], Doc. No. 39-1 at 100/148; For element [1e], Doc. No. 39-1 at 101/148; and, For element [1f], Doc. No. 39-1 at 105/148.

[79] For element [1a], Doc. No. 39-1 at 108/148; For element [1b], Doc. No. 39-1 at 110/148; For element [1c], Doc. No. 39-1 at 113-114/148; For element [1d], Doc. No. 39-1 at 117/148; For element [1e], Doc. No. 39-1 at 118-119/148; For element [1f], Doc. No. 39-1 at 119-120/148; For element [1g], Doc. No. 39-1 at 120/148; For element [1h], Doc. No. 39-1 at125 /148; For element [1i], Doc. No. 39-1 at 126/148; and, For element [1i], Doc. No. 39-1 at 127/148.

[80] For element [1a], Doc. No. 39-1 at 129/148; For element [1b], Doc. No. 39-1 at 131-132/148; For element [1c], Doc. No. 39-1 at 134-135/148; For element [1d], Doc. No. 39-1 at 138/148; For element [1e], Doc. No. 39-1 at 139-140/148; For element [1f], Doc. No. 39-1 at 140-141/148; For element [1g], Doc. No. 39-1 at 141-142/148; For element [1h], Doc. No. 39-1 at 145-146/148; and, For element [1i], Doc. No. 39-1 at 148/148.

[81] *See, e.g., View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 208 F.3d 981, 986 (Fed.Cir.2000).

11 violation.[82]

### D.  There is Nothing Improper About Being a Non-Practicing Entity that Settles Cases for Money

Much of Microsoft's Motion reads like a hit piece, big on accusation, but little on fact. Ramey admits that Ramey LLP has been sanctioned under §1927, but that Order is under appeal and therefore capable of modification.  Further, Ramey LLP admits that §285 awards have been made in cases where Ramey LLP was counsel.  However, the facts of those cases are different than the facts of this case and it is improper to consider the facts of other cases in deciding Microsoft's Motion for Sanctions as the courts in the other cases have already decided the issue. Further, there is nothing improper in being a nonpracticing entity ("NPE") or a lawyer representing an NPE.  As Justice Kennedy explained:

> An industry has developed in which firms use patents not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees.[83]

In fact, the Federal Circuit has commented on the business of a nonpracticing entity, specifying that "[w]here the patentee is an entity that uses patents primarily to obtain licensing fees, its business objectives are premised on monetary relief being sufficient to compensate for infringement."[84] NPE's are subject to the same rules as other parties, not more stringent rules, and the patent statute does not restrict enforceable patent rights to those who practice the patent, even for soon to expire patents as six years of past infringement damages are potentially available.[85] The Federal Circuit and the Supreme Court have recognized the role that NPE's play.[86]

---

[82] *Eon-Net LP v. Flagstar Bancorp*, 249 F. App'x 189, 195 (Fed. Cir. 2007), *aff'd sub nom. Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011) (relying on Ninth Circuit law but no difference in Fifth Circuit law).

[83] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 396, 126 S. Ct. 1837, 1842, 164 L. Ed. 2d 641 (2006).

[84] *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 650 (Fed. Cir. 2015).

[85] *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1362 (Fed. Cir. 2019).

[86] *See id citing See Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405, 424–25, 28 S.Ct. 748, 52 L.Ed. 1122 (1908); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 703 (Fed. Cir. 2008); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1547 (Fed. Cir. 1995); *cf. eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393,

Microsoft alleges that Ramey LLP should be sanctioned for filing multiple lawsuits. However, such a finding would not show misconduct on its own.[87] While it is true that "[a] pattern of litigation *abuses* characterized by the repeated filing of patent infringement actions *for the sole purpose of forcing settlements*, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285" (not 1927).[88] The Federal Circuit has emphasized "that filing a large number of suits does not, by itself, justify an inference of such an improper motive."[89] In this case, CTD believed the claims of Patents-in-Suit applied "to the activities of numerous persons, such as numerous sellers of similar products, and [CTD believed it had] a legitimate interest in pressing reasonably grounded claims against all [] of them."[90]

As Federal Circuit has stated, "there is no minimum damages requirement to file a patent infringement case," and "[a]sserting seemingly low damages against multiple defendants—or settling with defendants for less than the cost of litigation—does not necessarily make a case [sanctionable]."[91] The Federal Circuit has recognized that a patent plaintiff is able to make patent litigation more affordable by distributing common costs over many suits, thus making each suit worthwhile on lower terms.[92] Moreover, as for settlement amounts, a low figure might simply reflect the small size of an individual defendant's potential liability. Indeed, the figure may result from what the Supreme Court has recognized as the normal, legitimate settlement calculus, which includes consideration of litigation costs: specified as a prediction of the amount of liability,

---

126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

[87] *Thermolife Int'l LLC*, 922 F.3d at 1362

[88] *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015); *see Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324–28 (Fed. Cir. 2011).

[89] *SFA Sys.*, 793 F.3d at 1351.

[90] *Thermolife Int'l LLC*, 922 F.3d at 1363 *citing Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1375 (Fed. Cir. 2017) (distinguishing legitimate "motivation to implement the statutory patent right by bringing suit based on a reasonable belief in infringement" from motivation "to harass or burden an opponent"); *and King Instruments Corp. v. Perego*, 65 F.3d 941, 950 (Fed. Cir. 1995) (recognizing deterrence value of enforcement actions).

[91] *Thermolife Int'l LLC*, 922 F.3d at 1363-4 *citing AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1361 (Fed. Cir. 2017).

[92] *See Id.*

discounted by its probability, plus the transaction costs of further litigation.[93] However, in today's patent infringement world, another factor that should be considered by the courts are the high costs of patent infringement litigation, which are high enough to take away most patent plaintiff's access to legal representation and the courts.  Liability and damages experts alone can be several hundred thousand dollars with the costs of even small cases getting into the 7 figures.  As such, patent litigation has become so expensive as to make it almost impossible for most patent owners to enforce their patents, in large part due to the litigation tactics of parties like Microsoft who commonly make the costs higher than necessary, including by filing frivolous sanctions motions. A court should consider these factors in making a finding of frivolousness to force a modest settlement.  Also, there is no evidence, or anything in the record, that CTD sought nuisance value settlements while pressing baseless infringement contentions.  In fact, as redacted Exhibits A – D indicate, CTD's settlements have been anything but frivolous.

### E.  Sanctions Under §1927, Rule 11 or the Court's Inherent Power are not Warranted.

Microsoft has made no showing that counsel for CTD should be independently sanctioned. There is simply no "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."[94]  Here, the case it at the pleading stage.  The Court dismissed the pleading.  Two law firms[95] got together and revised the claim charts in an effort to comply with the Court's Order.[96] However, the Court decided that the amended charts were not sufficient.[97]  Plaintiff appealed that order,[98] but CTD and Microsoft colluded and dismissed the appeal. Except for the

---

[93] *Evans v. Jeff D.*, 475 U.S. 717, 734, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986); *see Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1369 (Fed. Cir. 2017).
[94] *Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir.1998).
[95] Ramey LLP worked with Lund and Morehouse who were lawyers at Whitestone Law and AiPi.
[96] Doc. No. 58-2 at ¶¶11-16.
[97] Doc. No. 49.
[98] Doc. No. 58-2 at ¶19.

collusion, this is routine litigation and there is no evidence to the contrary.  Microsoft's request for sanctions against counsel for CTD is designed to have a chilling effect on Ramey LLP and its ability to file lawsuits, is inappropriate and without legal basis.  Microsoft has presented no evidence to the Court that Ramey LLP's conduct (or the conduct of its lawyers) warrants sanction under Section 1927, the inherent power of the Court or Rule 11.  There simply is no evidence to overcome the presumption that the lawsuit was filed in good faith.[99]

Ramey LLP believes that it has sufficiently shown that the Morehouse Declaration is false. However, if the Court disagrees, Ramey LLP requests discovery on this new evidence and a deferral by the Court in ruling on Microsoft's Motion for Sanctions until that discovery is concluded.  Joe Zito and Eric Morehouse have a habit of filing false documents concerning Ramey LLP.[100]  In a case styled *California Innovations, Inc. v. Ice Rover, Inc.*, Cause No. 1:22-cv-1986, Joe Zito while at Whitestone Law, filed a motion falsely alleging that Ramey LLP failed to discharge its duty to its client by not timely serving discovery.[101]  However, the evidence showed that it was Whitestone Law that failed to serve the discovery and that Ramey had specifically reminded attorneys at Whitestone Law that discovery needed to be sent out before withdrawing from the case.[102]  Joe Zito has a habit of making false accusations in court concerning Ramey LLP.

The Morehouse Declaration was created on February 28, 2024 only after Ramey refused to sign a declaration created by Morehouse that sought to change Ramey's prior declarations, including the declarations in the *California Innovations* case.[103]  Morehouse offered to pay AiPi's past due accounts if Ramey would sign the declaration,[104] but the declaration Morehouse sought

---

[99] *Checkpoint Sys., Inc.*, 858 F.3d at 1376.
[100] Ramey Decl. at ¶¶ 15-19.
[101] *Id.* at ¶16.
[102] *Id.* at ¶¶ 17-19.
[103] *Id.* at ¶¶ 20-21.
[104] *Id.* at ¶20.

Ramey to sign was false and Ramey told Morehouse he would not sign.[105]   Only then was the Morehouse Declaration created.   Yes, you read this correctly, Morehouse tried to bribe Ramey for a false statement and he put it in an e-mail, which is evidence of an abuse of the judicial process warranting sanctions, a fact that should serve as a specific finding of bad faith by Morehouse, CTD and Microsoft and its counsel.[106]

Ramey LLP has a mission of making patent litigation available to all patent owners with valid infringement claims.   Ramey LLP is able to level the playing field by efficiently litigating patent infringement cases .   Ramey LLP tries to make patent infringement litigation affordable for those patent infringement cases where the potential damages make the case unattractive to most firms.   Ramey LLP believes all meritorious claims can be pursued and all intellectual property owners deserve representation.   Far too many patent plaintiffs are denied access to courts because of the costs.   Ramey LLP does what it can to remedy that fact.   That Microsoft finds itself accused of infringing patents is not a commentary on Ramey LLP but rather the business practices of Microsoft.   Microsoft's scandalous comment concerning Ramey LLP's clients being shell companies illustrates Microsoft's lack of respect for the patent rights of others.   If Microsoft is owed money by an improper shell company, it can seek recovery from the principals of that company.   Attacking the law firms representing proper companies will simply further deny access to the court for patent plaintiffs, a result Microsoft seems to endorse.

## V.    CONCLUSION

For all the foregoing reasons, Microsoft's Motion for Sanctions should be denied.

Respectfully submitted,

**RAMEY LLP**

---

[105] Ramey Decl. at ¶¶ 20-21.
[106] *See, e.g., Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

*/s/ William P. Ramey, III*
William P. Ramey, III
Texas State Bar No. 24027643
wramey@rameyfirm.com
5020 Montrose Blvd., Suite 800
Houston, TX 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)

**Attorneys for Ramey LLP**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 17, 2024, a true and correct copy of the foregoing document was served electronically, via ECF on all counsel of record.

By: */s/ William P. Ramey, III*
William P. Ramey, III