**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **CTD NETWORKS LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **MICROSOFT CORPORATION**, <br><br> Defendant. | No. 6:22-cv-01049-XR |

**MICROSOFT CORPORATION'S OPPOSITION TO RAMEY LLP'S MOTION FOR
SANCTIONS AGAINST MICROSOFT CORPORATION
<u>AND JONATHAN LAMBERSON</u>**

## **INTRODUCTION**

A Court in the Southern District of Texas recently criticized and sanctioned Ramey LLP for "doubling down" on improper conduct, rather than finding a way to avoid wasting party and court resources. *See VDPP, LLC v. Volkswagen Grp. of Am., Inc.*, No. H-23-2961, slip op. at 2 (S.D. Tex. July 11, 2024) ("VDPP renews arguments unsupported by the case law and the record in its motion . . . . VDPP doubled down, continuing to make the unsupported arguments it had made in earlier briefs."); *id*. at 6-7 ("The court finds VDPP and its counsel, William P. Ramey, III of Ramey LLP, jointly and severally liable for the reasonable attorney's fees that Volkswagen incurred in defending this case."). Time and again, Ramey LLP has done the same here: doubling down rather than backing away from meritless positions. Ramey LLP doubled down when it filed an amended complaint identifying dozens of accused products, rather than choosing a single product, as the Court instructed. Ramey LLP doubled down again when it advised to "stay the course" even though it "may get sanction[ed]" (Dkt. 76-15). Ramey LLP doubles down yet again here, filing a cross-motion for sanctions rather than reflecting on its own conduct.

Ramey LLP's cross-motion is just as meritless as the deficient complaints it filed in this case. As an initial matter, Ramey LLP lacks standing to bring this motion. Ramey LLP is not a party and withdrew from representing a party. Courts across various circuits consistently hold that attorneys do not have standing to file sanctions motions independently. More fundamentally, Ramey LLP's primary complaint is that Microsoft and its attorneys relied on a declaration sworn under penalty of perjury. There is nothing sanctionable about relying on such evidence. Declarations are frequently used for sanctions motions. *See, e.g., WPEM, Inc. v. SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 U.S. Dist. LEXIS 17449 (E.D. Tex. Feb. 4, 2020) (discussing declaration in fee decision against Ramey LLP client); *Bernstein v. Boies, Schiller & Flexner, L.L.P.*, 416 F. Supp. 2d 1329, 1331 (S.D. Fla. 2006) (discussing declarations filed in support of

1

fee award). Ramey LLP identifies no legal decision that has sanctioned a party or its attorneys for relying on sworn testimony.

Ramey LLP does not use the word perjury in its motion, but presumably that is the charge it is making—that the Morehouse Declaration is so patently false that Microsoft and its attorneys should never have relied on it. Ramey LLP gives no evidence to back such a serious claim. Mr. Morehouse only makes three factual statements: 1) CTD lacks sufficient funds to satisfy Microsoft's full fee award; 2) CTD did not authorize filing the amended complaint; and 3) CTD asked Ramey LLP to dismiss the amended complaint once Microsoft renewed its motion to dismiss. As to the first statement, Ramey LLP gives the Court four settlement agreements, but ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. There is no evidence CTD received or retained all or any of those funds. Regarding the next two statements, Ramey LLP provides confidential and privileged communications with AiPi, but is also adamant that AiPi was never Ramey LLP's client. In other words, Ramey LLP gives the Court no communications with its actual client (CTD) that rebut either assertion Mr. Morehouse makes.

This motion is frivolous. It has no valid legal basis, and Ramey LLP comes nowhere close to alleging the type of serious misconduct that might warrant sanctions against Microsoft or its attorneys. Microsoft respectfully requests that the Court deny Ramey LLP's motion. Microsoft further requests that the Court consider the additional costs involved in responding to this motion when it rules on Microsoft's co-pending motion for sanctions against Ramey LLP.

## **FACTUAL BACKGROUND**

CTD filed a notice of appeal on September 20, 2023. Dkt. 55. After filing the appeal, Ramey LLP filed an "Emergency Motion to Withdraw" as counsel at the Federal Circuit. Dkt. 65-1, Ex. 1. Ramey LLP filed a similar motion to withdraw here, and was replaced by Joseph Zito. Through Mr. Zito, CTD then engaged Microsoft in settlement negotiations, informing Microsoft

2

that Ramey LLP acted without client approval, and agreeing to provide the Morehouse Declaration confirming those facts, sworn under penalty of perjury. *See* Dkt. 65-8 (Morehouse Declaration). Given CTD's representations and sworn statement that it was not responsible for any misconduct, Microsoft agreed to dismiss CTD from the case, though Microsoft still insisted that CTD pay a small portion of Microsoft's fees ■■■■■. Microsoft also ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. To be clear, Microsoft did not pay CTD. CTD filed a notice of dismissal at the Federal Circuit on March 1, 2024, and Microsoft renewed its request for sanctions on June 14, 2024.

## LEGAL STANDARDS

"Under 28 U.S.C. § 1927, an 'attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Greer v. Richardson Indep. Sch. Dist.*, 471 Fed. Appx. 336, 339 (5th Cir. 2012). Regional circuit law governs fee shifting under § 1927. *See e.g., MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1382 (Fed. Cir. 2005). Conduct is "unreasonable and vexatious" if there is evidence of the "persistent prosecution of a meritless claim" and of a "reckless disregard of the duty owed to the court." *Morrison v. Walker*, 939 F.3d 633, 637–38 (5th Cir. 2019) (citations omitted); *Greer*, 471 Fed. Appx. at 339 (attorney's conduct is considered unreasonable and vexatious where there is evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court) (citing *Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir. 1998)).

District courts have discretion to award fees against attorneys if they announce the sanctionable conduct and make specific findings to permit effective appellate review of the validity and amount of fees. *Id.* (stating § 1927 rulings are reviewed for abuse of discretion); *see*

3

*also FDIC v. Calhoun*, 34 F.3d 1291, 1300 (5th Cir. 1994) ("[C]ourt must make a separate determination on both the issue of the reasonableness of the claims and the purpose of the purpose for which suit was instituted.").

Awards under § 1927 are punitive in nature. *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991). Even though the statute should be construed so that it does not "dampen the legitimate zeal of an attorney in representing his client," *Greer*, 471 Fed. Appx. at 339 (citing *Travelers Ins. Co. v. St. Jude Hosp.*, 38 F.3d 1414, 1416 (5th Cir. 1994)), it is warranted when counsel conducts litigation in an "irresponsible manner" leading to "multiple needless proceedings," *id.* at 340 (citations omitted).

Federal courts also have inherent power to sanction bad faith litigation conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). "Because of the potency of inherent powers and the limited control of their exercise, however, they must be used with great restraint and caution." *Id.* (*quoting Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996)). The standard for imposing sanctions using the court's inherent powers is extremely high. *See Goldin v. Bartholow*, 166 F.3d 710, 722-23 (5th Cir. 1999). "A court should invoke its inherent power to award attorney's fees only when it finds that 'fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995) (*quoting Chambers*, 501 U.S. 32 at 45).

## ARGUMENT

### A. Ramey LLP Lacks Standing to Bring This Motion

Ramey LLP does not have standing to bring a sanctions motion on its own behalf. Courts across multiple circuits have held that an attorney lacks standing to bring a motion for sanctions unless it is brought on behalf of a party to the case. *See Vesco v. Snedecker*, 80 Fed. Appx. 657, 659 (10th Cir. 2003) ("Generally, an attorney does not have standing to bring a Rule 11 motion on

4

his own behalf (as opposed to on behalf of his client-party)."); *Nyer v. Winterthur Int'l*, 290 F.3d 456, 459 (1st Cir. 2002) ("As a general rule, non-parties to a case may not bring a motion for sanctions pursuant to Rule 11."); *Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks*, 915 F.2d 1301, 1307 (9th Cir. 1990) (holding attorney for party cannot bring Rule 11 motion for sanctions on his own behalf). Here, Ramey LLP withdrew as counsel for CTD. *See* Dkt. 60, granted Dec. 13, 2023 via Text Order.[1] Because Ramey LLP no longer represents any party in this matter, it does not have standing to pursue a motion for sanctions.

**B.     Microsoft's Reliance on the Morehouse Declaration Was Reasonable**

Ramey LLP asks that the Court sanction Microsoft and its attorneys under the Court's "inherent power" because they "gleefully accepted the Morehouse Declaration." Dkt. 76 at 12-13.[2] Sanctions would only be appropriate if Microsoft and its attorneys submitted the Morehouse Declaration to the Court in bad faith, for example knowing it to be false. *See Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 294 (5th Cir. 1997) ("Sanctions under the inherent power require a finding of bad faith."). There is no evidence of that here—Mr. Morehouse said he had authority to make his statements, he gave them under penalty of perjury, and his statements were consistent with prior representations by CTD's counsel.[3] Mr. Morehouse's statements were also consistent with what Microsoft knew about Ramey LLP from its own past dealings with the firm, and from multiple public sanctions decisions.[4] *See* Dkt. 65 at 8-9 (collecting cases). As for the

---

[1] Ramey LLP is responding to Microsoft's sanctions motion, but that motion was brought by a party (Microsoft).

[2] Ramey LLP also alleges that Microsoft gave statements to the news media, but the article it identifies only quotes from Microsoft's opening brief, which is publicly available. *See* Dkt. 76, footnote 30.

[3] *See* Dkt. 63 at 2-3 (indicating "Mr. Ramey's apparent inability to properly represent his clients" became apparent in September 2023, and "Mr. Ramey and Ramey LLP cannot withdraw wholly from the matter, as they remain responsible for their actions in this matter").

[4] Ramey LLP spends multiple paragraphs attempting to justify its nuisance litigation business

5

documents Ramey LLP discusses in its motion (discussed further below), Microsoft never had access to them.  All were presumably confidential or privileged, until Ramey LLP filed them publicly with its opening brief.  Ramey LLP argues Microsoft should have asked more questions, but when Microsoft asked Ramey LLP to provide the basis for its sanctions request, Ramey LLP declined to provide any evidence.  *See* Lamberson Decl., Ex. 1.  It is disingenuous for Ramey LLP to suggest it would have given Microsoft this information had Microsoft asked for it sooner.

C.  **Ramey LLP's New Evidence Raises More Questions Than It Answers**

Even if Ramey LLP had given Microsoft all the documents it gave to the Court, at most this new evidence shows a fact dispute between Ramey LLP and its former client, CTD.  That does not mean the Morehouse Declaration is irrelevant or that Ramey LLP escapes liability for its misconduct, let alone that Microsoft or its attorneys "defiled the temple of justice" by bringing it to the Court's attention.  Ramey LLP disputes all three substantive facts in the Morehouse Declaration using newly submitted evidence.  As discussed below, Ramey LLP's new evidence fails to prove these facts are false, let alone manifestly so.

Ramey LLP attacks the first statement of the Morehouse Declaration—"CTD does not have sufficient assets to satisfy Microsoft's full fee request"—contending it is false, relying on Exhibits A-D, which allegedly show CTD received $455,000 via four settlement agreements.  In fact, Exhibits A-D do not show that CTD received any money because ███████████████

---

model, but that has nothing to do with whether Microsoft or its attorneys should be sanctioned.  It also argues Microsoft knew Ramey LLP had authority to pursue an appeal.  First, the support Ramey LLP gives for that assertion (in footnote 57) does not say anything about Microsoft having such knowledge.  Second, this assertion is irrelevant because Microsoft has not asked that Ramey LLP be sanctioned for filing an appeal.

6

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████  Ramey LLP's declarant never states what happened to those funds after Ramey LLP received them.  Presumably they were paid to CTD's investors and attorneys, including Ramey LLP, promptly upon receipt.  Ramey LLP never says what portion of the funds actually went to CTD, if any.  Also, Ramey LLP says CTD would not or could not pay its bills, which undercuts Ramey LLP's argument that CTD was sufficiently funded.  *See* Dkt. 74-2 ¶¶ 14, 20 ("In August of 2023, I again told Morehouse I needed to withdraw from his matters if I was not going to be paid. . . . I wanted to get paid.").  The settlements thus do not contradict the Morehouse Declaration; if anything, they support Microsoft's request for sanctions against Ramey LLP.

Next, Ramey LLP argues that CTD authorized the second amended complaint, relying on Exhibits E-J.  Yet these exhibits are emails between Ramey LLP and AiPi, not between Ramey LLP and anyone it recognizes as its alleged former client, CTD.  To the contrary, Ramey LLP is clear that AiPi was not its client.  Dkt. 74-2 ¶ 8 ("Neither I nor Ramey LLP ever represented AiPi directly.").  AiPi was a "patent litigation funder and law firm." *Id.*  "Morehouse always interacted with me and Ramey LLP on CTD issues as AiPi *and not as in-house counsel for CTD*." *Id.*, ¶ 4 (emphasis added).  Thus Ramey LLP gives the Court no evidence anyone it recognized as its client ever authorized its actions.  At best, Ramey LLP raises questions about who authorized what, and who was actually the "client" here.  Mr. Morehouse says under penalty of perjury he has been in-house counsel for CTD since 2022.  Dkt. 65-8, ¶ 1.  Ramey LLP submits a declaration saying it never interacted with Morehouse as in-house counsel for CTD.  Dkt. 74-2, ¶ 4.  Perhaps both are correct—it may be that Ramey LLP was unaware of Morehouse's position, but that does not help its case, since that just underscores that Ramey LLP never believed it was communicating with

7

anyone representing its actual client, CTD.  Regardless, one thing is clear: neither the Morehouse Declaration nor the Ramey Declaration exonerate Ramey LLP and its decision to "stay the course" in this flawed litigation against Microsoft.

Ramey LLP also relies on Exhibit J, another email from AiPi, not CTD.  Contrary to Ramey LLP's argument that this reflects work on CTD's pleadings, the email does not appear to relate to the second amended complaint.  Rather, it relates to settlement discussions—Mr. Lund says they gave settlement "our best shot" but that it was not good enough, and that they should just walk away before Microsoft seeks sanctions.  *See* Dkt. 74-12.  If anything, this communication is consistent with the fact that there were doubts over whether Ramey LLP should continue to pursue this case against Microsoft.

Lastly, Ramey LLP disputes the third statement in the Morehouse Declaration—"CTD instructed its prior counsel of record, William Ramey, to dismiss the Second Amended Complaint once Microsoft filed its renewed Motion to Dismiss"—again relying on communications with AiPi, not CTD.  *See* Dkt. 74-13; 74-14.  Specifically, Ramey LLP relies on Exhibits K and L, where it forwarded Microsoft's letter telling CTD to drop the amended complaint.  The e-mail and letter were sent *before* Microsoft's second MTD, so they have nothing to do with the third statement in the Morehouse Declaration, which references an instruction *after* Microsoft filed its second Motion to Dismiss.  Exhibit M is an ambiguous email between Mr. Ramey, Mr. Morehouse, and Mr. Lund.  It is unclear if Mr. Morehouse was authorizing Mr. Ramey to "stay the course," as Mr. Ramey contends, or simply providing authorization to re-form CTD in Texas.  But perhaps more importantly, the e-mail memorializes Ramey LLP's recognition that its advice "may get sanctions." Dkt. 76-15.

8

Ramey LLP and Mr. Morehouse clearly have different, conflicting recollections of the facts, but there is nothing unusual about that. Memories often differ, and this Court has likely seen competing declarations before. It was not sanctionable for Microsoft to give the Court the representations Mr. Morehouse made (on behalf of CTD) when CTD was negotiating to settle this case. While Microsoft regrets any imposition on this Court's limited resources, the issues raised here are important. As evidenced by the numerous sanctions awards against Ramey LLP, these issues will recur unless the Court steps in. There was a reason this Court repeatedly warned Ramey LLP. Ramey LLP ignored those warnings, and its own exhibits now show it did so willfully. It is thus Ramey LLP, not Microsoft or its attorneys, that should be sanctioned.

### D. There is No Basis for Sanctioning Microsoft's Attorneys Under Section 1927

Ramey LLP contends that Microsoft's Renewed Motion for Sanctions unreasonably and vexatiously extended this case pursuant to § 1927. This argument ignores that Microsoft's Motion for Sanctions was invited by the Court, and that invitation was made after Ramey LLP disregarded two clear warnings from the Court. Specifically, during the first motion to dismiss hearing on April 10, 2023, the Court warned CTD and its counsel that, "[t]o the extent that the amended complaint fails to cure the deficiencies identified in Defendant's motion to dismiss, the Court will entertain a motion for the reasonable expenses Defendant incurs in responding to the pleading, including reasonable attorneys' fees." Text Order Granting in Part and Denying in Part Dkt. 31 (Apr. 10, 2023). At the second motion to dismiss hearing on June 29, 2023, the Court reiterated that it would consider cost-shifting related to "re-briefing of all these secondary motions to dismiss," and advised Ramey LLP to explore other options for resolving the case. Dkt. 51-4, Ex. D at 16:13-21. Despite having another two months to explore dismissal, Ramey LLP did not dismiss and, on August 22, 2023, the Court granted Microsoft's Second MTD, dismissing the case with prejudice and granting Microsoft leave to seek reasonable attorneys' fees. Dkt. 44 at 19-20.

9

Ramey LLP ignored the Court's warnings, and it ignored Microsoft's offer to walk away from this case in return for Microsoft withdrawing its fee request. *See* Dkt. 52-3, Ex. B.  Indeed, we now know that Ramey LLP advised to "stay the course."  Dkt. 76-15, Ex. M.  Ramey LLP fully recognized that sanctions were acutely possible and should be held liable for its decision.  Bringing a fee motion under these circumstances is entirely justified and not "vexatious."

The remainder of Ramey LLP's argument repeats its attacks against the Morehouse Declaration, which are addressed above.  In any event, Mr. Morehouse's sworn declaration is just one piece of evidence supporting Microsoft's sanctions request.  The Court can grant Microsoft's motion regardless of what weight it places on the Morehouse Declaration.

### E. There is No Basis for Sanctions Under Rule 11

Ramey LLP's "Relevant Law" section discusses Rule 11, but it does not raise or discuss Rule 11 in the body of its motion.  Ramey LLP likely violated the safe harbor provision of Rule 11 by submitting its motion to the Court the same day it served it on Microsoft.  *See* Fed. R. Civ. P. 11(c)(2) (stating a motion should not be "presented to the court" within 21 days of service on the opposing party).[5]  Regardless, Ramey LLP makes the same unfounded arguments about Microsoft and its attorneys in its Rule 11 motion.  The Court should reject those arguments for the same reasons discussed above.

### F. The Court Can Obtain Any Necessary Information Directly From Ramey LLP

In addition to launching its own motion for sanctions, Ramey LLP also requests discovery regarding the statements in the Morehouse Declaration.  But Ramey LLP should already have access to any necessary information.  For example, Ramey LLP must know what happened to the

---

[5] As noted in Microsoft's reply brief, this is different from Microsoft's motion, which was made after the Court and Microsoft gave Ramey LLP repeated warnings to withdraw its amended complaint.

funds it received that were meant for its client. *See* Texas Rule of Professional Responsibility 1.14 ("Safekeeping Property"). Ramey LLP also likely has copies of its communications with CTD/AiPi, which appear to have occurred via e-mail. Ramey LLP could make this information available to the Court, if the Court wishes to review it.

As for depositions, Microsoft does not believe they are necessary, but it also does not oppose allowing Ramey LLP to depose Mr. Morehouse if the Court finds it appropriate.[6] Microsoft respectfully requests that the Court consider fee shifting, since Microsoft should not bear the costs associated with sorting out an acrimonious dispute between Ramey LLP and its former client over who is ultimately liable for the decision to continue pursuing this baseless case against Microsoft.

Finally, in lieu of a deposition, the Court could simply question Messrs. Ramey and Morehouse at a hearing, if the Court feels it necessary. Both are apparently lawyers, so they owe a duty of candor to this Court. *See* Texas Rule of Professional Conduct 3.03 ("Candor Toward the Tribunal").

## CONCLUSION

For the above reasons, Microsoft respectfully requests this Court deny Ramey LLP's Motion for Sanctions.

---

[6] To be clear, Microsoft does not represent Mr. Morehouse, and it is not clear whether he has been notified of this discovery request or even Ramey LLP's request that he be sanctioned for signing his declaration.

| | |
|---|---|
| Dated:  August 7, 2024 | Respectfully submitted,<br>*/s/ Jonathan Lamberson*<br>Jonathan J. Lamberson<br>Henry Huang<br>White & Case LLP<br>3000 El Camino Real<br>2 Palo Alto Square, Suite 900<br>Palo Alto, CA  94306<br>Tel:  (650) 213-0300<br>Fax: (650) 213-8158<br>lamberson@whitecase.com<br>henry.huang@whitecase.com<br><br>Melissa R. Smith<br>State Bar No. 24001351<br>GILLAM & SMITH, LLP<br>303 South Washington Avenue<br>Marshall, TX  75670<br>Tel:  (903) 934-8450<br>Fax: (903) 934-9257<br>melissa@gillamsmithlaw.com<br><br>*Attorneys for Defendant Microsoft Corporation* |

**CERTIFICATE OF SERVICE**

    The undersigned certifies that on August 7, 2024, the foregoing was served by e-mail on all counsel of record.

                                                          */s/ Jonathan Lamberson*
                                                          Jonathan Lamberson